UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ZL TECHNOLOGIES, INC.,

Case No. _____

                Plaintiff,

**JURY TRIAL DEMANDED**

-against-

SHIELD FINANCIAL COMPLIANCE, LTD.;
SHIELD FINANCIAL COMPLIANCE, INC.;
KLDISCOVERY ONTRACK, LLC and
AARON GARDNER,

                Defendants.
---------------------------------------------------------x

## COMPLAINT

      Plaintiff, ZL Technologies, Inc. ("Plaintiff" or "ZL"), by its attorneys, Wuersch & Gering LLP, hereby alleges for its Complaint against Defendants Shield Financial Compliance, Ltd., organized under the laws of Israel, ("Shield Israel"), Shield Financial Compliance, Inc., organized under the laws of the State of Delaware ("Shield Delaware"), KLDiscovery Ontrack, LLC and Aaron Gardner ("Gardner")(collectively "Defendants"), as follows:

### Preliminary Statement

      1.      This dispute arises out of Shield Israel's and Shield Delaware's systematic misappropriation through Defendant Gardner of ZL's big data unified platform and scaled software architectural solutions and technology, which caused and may further cause damages to ZL's business, and Defendants' unfair competition whereby Shield Israel and Shield Delaware palm off ZL's technology solutions as its/their own. For years, KLDiscovery Ontrack LLC and its predecessor entities (collectively, "KLD") acted as general contractor to and offering its clients a license to ZL's solutions and technology, as its subcontractor. Over the years, ZL and

KLD formed a close partnership in the provision of software services to one particular client, a multinational financial institution referred to hereinafter as the "Client." KLD is Defendant Gardner's former employer and directly responsible for the misappropriation from ZL, and is also believed to be benefiting from the theft of ZL's confidential and proprietary information. KLD has further materially breached its contractual duties to ZL by failing to pay ZL substantial sums due ZL while KLD instead works with the Shield Defendants using the technology stolen from ZL. The Client, following the misappropriation, has begun migrating data from the ZL-KLD partnership, and presumably intends to seek software development and services from KLD and Shield instead.

## PARTIES

2. Plaintiff ZL Technologies, Inc. is a corporation organized in accordance with the laws of the State of California with its principal place of business located at 860 N. McCarthy Boulevard, Suite 100, Milpitas, CA 95035.

3. Defendant Aaron Gardner is a former employee of KLD, and upon information and belief is a resident and citizen of the State of New York with a residential address in Manhattan, New York.

4. Defendant KLDiscovery Ontrack LLC is a limited liability corporation organized under the laws of the State of Delaware with its principal place of business at 9023 Columbine Road Eden Prairie, Minnesota, 55347. KLD maintains an office in this Judicial District.

5. Defendant Shield Financial Compliance, Ltd. is a corporation organized under the laws of Israel, and a resident and citizen of Israel. Its principal place of business is located at Z'butinski 7, Ramat Gan, Tel Aviv, Israel.

6. Defendant Shield Financial Compliance, Inc. is a corporation organized under the laws of the State of Delaware, and upon information and belief is a citizen of the State of Delaware and a resident of New York.

## JURISDICTION AND VENUE

7. This action arises under the Lanham Act of 1946 (as amended), 15 U.S.C. § 1051 *et seq.*, and under related state common law.

8. Subject matter jurisdiction over this action is conferred upon this Court by 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338.

9. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. § 1367.

10. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons. Defendant KLD maintains an office and does substantial business in this Judicial District. Defendant Gardner is also located in this Judicial District. Defendants Shield Israel and Shield Delaware are doing and transacting business in this Judicial District, have substantial contacts with this Judicial District, and Defendants KLD and Shield Israel and Shield Delaware have advertised in this Judicial District. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this Judicial District.

11. In addition, the theft of Plaintiff's technology giving rise to each of the claims is governed under New York law and subject to the exclusive jurisdiction of the state and federal courts of New York, pursuant to the Software Development License and Services Agreement ("SDLSA"), executed between Plaintiff and Renew Data Corporation, one of KLD's predecessors. As noted, disclosure of ZL's technology to KLD pursuant to and governed by the

confidentiality provisions of the SDLSA ultimately enabled ZL's technology to be misappropriated by Defendants. *Id.*

12. This Court has personal jurisdiction over Defendants because, upon information and belief, Defendant Gardner and Defendant Shield Delaware have their principal place of business in this Judicial District. Defendant KLD conducts substantial business in this Judicial District, and has availed itself of New York law and the New York courts to govern its contract with ZL. Moreover, this Court has personal jurisdiction over Defendants by virtue of their acts and omissions which have taken place in the State of New York, which are designed to, and are, causing substantial confusion and deception among users in New York and irreparable injury to ZL's invaluable reputation and goodwill.

## FACTS COMMON TO THE COUNTS

13. ZL is in the business of providing "big data" software services to its clients so that each client can meet standard judicial, regulatory and compliance requirements, such as the SEC 17a-4 preservation rules, the European Union's General Data Protection and Regulation (GDPR) and the California Consumer Privacy Act (CCPA) privacy requirements, despite each client's accumulation of prodigious amounts of data. Demands are even more strict on those ZL clients who find themselves in litigation or preparing for litigation, which requires maintaining large amounts of sensitive data, increasing risk of court sanctions, regulatory fines and potential cybersecurity breaches.

14. ZL, founded in April 1999, has invested hundreds of thousands of man-hours in software development and engineering to put in place a singular, unified architecture solution that offers its clients many governance capabilities including: 1) scalable storage, management, searching and culling of very large datasets; 2) compliance, surveillance and monitoring

4

capabilities; 3) litigation support for e-discovery; 4) data connectors to popular sources of data; 5) the lifecycle management of data from preservation to defensible disposition, and many other critical data governance functions. The unified architecture solution is known as ZL UA (Unified Archive), now in version 9.1.

15. Without access to such a unified architecture solution, a competitor is forced to offer customers big data functionalities through multiple, separately licensable off-the-shelf products that may not be compatible with each other and are not capable of scaling effectively in comparison to the same or similar solutions ZL provides to the marketplace.

16. ZL UA is relied upon by multinational corporations and the United States government. Among its clients are major financial institutions with global reach, such as the Client.

17. In 2021, ZL UA 9.1 was named the best offering for content analytics, gleaning insight from text in unstructured data sources, such as emails, files and collaboration platforms. The award in the Content Analytics Category is known as the Gold Stevie and was presented to ZL at the 19th Annual American Business Awards.

18. The ZL UA 9.1 architecture, and all previous versions, is proprietary and maintained in the strictest confidence as a trade secret, access to which is reserved to persons who have executed non-disclosure agreements. Access is further restricted through multi-layered levels of encryption.

19. ZL goes to great lengths to protect its information and clients because it would suffer catastrophic and irreparable damage if ZL's proprietary information were disclosed and used to interfere with ZL's business interests.

## ZL's Collaboration with KLD

20. On or about March 7, 2006, ZL (then known as ZipLip, Inc.) entered as a named subcontractor into the SDLSA with Renew Data Corp. Under the SDLSA, ZL provided to Renew Data Corp. a unified solution for the management of over 22,000 employee email boxes for its common Client and licensed use of its software to Renew Data Corp. for Renew Data Corp.'s provision of services using ZL architecture and software to the Client.

21. Renew Data Corp. recognized that all ZL software and confidential and proprietary information notwithstanding the license was owned by ZL.

22. Renew Data Corp. further recognized that all proprietary data ZL provided to Renew Data Corp. under the SDLSA or to the Client or to any employee, contractor or advisor was to be held in strict confidence.

23. The Client accepted the terms of the SDLSA.

24. The SDLSA was amended therefore on multiple occasions. None of the amendments altered Renew's or the Client's obligations of confidentiality.

25. In November 2014, LDiscovery, LLC merged with Renew Data Corp. LDiscovery, LLC began doing business as KLDiscovery. Upon information and belief, KLDiscovery owns and operates Defendant KLD as a subsidiary. KLD was formerly known as LDiscovery LLC, Tx.

26. By 2021, Defendant KLD succeeded Renew Data Corp. as general contractor to the Client under the SDLSA.

27. In 2012, upon information and belief, LDiscovery, LLC or LDiscovery LLC, Tx acquired Turnstone Solutions ("Turnstone"), an e-Discovery platform based in Manhattan whose

6

Chief Operating Officer was Defendant Gardner. Following acquisition of Turnstone, Defendant Gardner became its Vice-President Legal Technology Consulting.

28. Upon information and belief, Defendant Gardner entered into a non-disclosure agreement with one or more of the LDiscovery entities in 2012, and with Defendant KLD thereafter.

29. On information and belief, following the acquisition of Turnstone, Defendant Gardner became privy to ZL's proprietary information, including ZL UA. What's more, Defendant Gardner became a point of contact for the Client account under the SDLSA.

30. As point of contact, Defendant Gardner regularly received updates concerning the ZL architecture and software, and was privy to its revisions and the solutions ZL generated over time for KLD and the Client. In 2015, Defendant Gardner was appointed Vice-President, Compliance, Information Governance and Archiving. Defendant Gardner's new title reflected the skills he had obtained while working closely with ZL.

31. The communications, updates and joint work Defendant Gardner became privy to were meant to assist ZL and KLD in servicing their common, highly-valued Client.

**The Founding of Shield Israel**

32. In 2018, Shield Israel was founded as an electronic communications ("eComms") provider.

33. In 2020, Shield Israel was promoting end-to-end compliance and e-discovery services to its customers but upon information and belief was not offering a unified big-data platform to do so. Shield variously called its big data services "Nebula Big Data," "Nebula Archive" and "Nebula Legal Hold."

34. In 2021, Shield Israel was recognized as providing the best eComms surveillance solution but was not recognized for offering any of the types of big-data solutions available from companies such as ZL.

35. On or about December 7, 2021, Shield Delaware was formed.

36. On or about January 13, 2022, Shield Israel received its first Series A funding of 15 million dollars. Shield announced that it would use the funding to expand its New York City presence and develop its communication compliance platform.

37. In January 2022, Shield Israel used its Series A funding to hire Defendant Gardner as a Compliance Strategist. As noted, his previous title while employed by KLD and working closely with ZL was Vice-President of Compliance, Information Governance and Archiving.

38. Shield actually hired Defendant Gardner to gain access to ZL's solutions and architecture and appropriate for itself ZL's competitive advantages in the marketplace.

39. In June 2022, Shield Israel announced its partnership with KLD for the release of the Nebula Intelligent Archive. According to Defendant Gardner, the platform meant that its customers could enjoy a "comprehensive solution to a host of challenges related to data volumes and complex requirements across the entire compliance, investigations and litigation life style."

40. Gardner in fact appropriated his knowledge of ZL's unified platform in an attempt to achieve the same or similar results for KLD and his new employer, Shield.

41. In October 2022, mere months from receiving its Series A funding, Shield Israel was in a position to release version 3.2 of its software.

42. By December 2022, Shield Israel's misappropriation from ZL further enabled it to secure a further 20 million dollars in Series B funding. Included as an investor in that funding round was the Client.

43. In December 2022, Shield Israel announced Hybrid Cloud Solutions, which was designed to provide financial institutions with "flexible, scalable data solutions," providing data flow with faster speeds, richer data and an award-winning user experience.

44. Scalability is an endemic problem in big data. The solutions Shield Israel announced could not have been legitimately researched, developed, validated and launched within the short time frame of less than one (1) year, too little time indeed for Shield Israel to even effectively use its Series A or Series B funding.

### Shutting Down ZL's Commercial Opportunities

45. The Client, as a major institutional investor into Shield Israel and the technology Defendants purloined presaged serious damage for ZL.

46. On or about January 17, 2023, a senior account manager of KLD revealed to ZL that the Client had issued a request for proposal for a front-end discovery solution, and that Defendant KLD had replied to the request some time before the meeting. The subject matter of the request was squarely covered by the SDLSA, yet Defendant KLD did not inform ZL. Upon information and belief, the request for proposal was responded to by Defendant KLD in conjunction with Shield, and ZL's purloined technology is being used to satisfy the request.

47. On December 6, 2023, a technical manager at the Client inadvertently revealed to ZL employees that the Client had issued a recent request for proposal relating to compliance and assumed ZL had been invited to bid. However, when ZL employees noted it was not made

9

aware of the Client's request for proposal and asked for more detail, the Client's technical manager made no further comment on the matter and switched the subject.

48.     In 2024, Defendant KLD began to fall behind in its payment of licensing amounts due under the SDLSA for software services and support to the Client, including agreed-upon royalties, maintenance and technical support. Ultimately, by February 2025, KLD had failed to pay over Five Million Eight Hundred Thirty-Eight Thousand Eight Hundred Eight-Two Dollars and Ninety-Two cents ($5,838,882.92) million owed to ZL. KLD disputed ZL's invoices but no offered no bona fide excuses for its non-payment. When KLD threatened termination of the SDLSA for KLD's material breach, ZL made but one payment in the amount of Nine Hundred Fifty Thousand Sixty-six Dollars and Eight Cents ($950,066.08,) and refused to make further payments.

49.     As a result, on or about March 26, 2025, ZL terminated the SDLSA with KLD.

50.     Based on the facts and circumstances, ZL is entitled to injunctive relief enjoining and restraining the Defendants from (a) continuing to interfere with ZL's business with the Client, (b) using any ZL confidential and proprietary information, or information derived therefrom to support Shield Israel or Shield Delaware, or any affiliated entity or further assist in developing a unified big-data platform, (c) palming off ZL's technology as Shield Israel's own, and (d) requiring the return all misappropriated materials in Defendants' possession, custody, or control as the Court shall direct. ZL is further entitled to an award of Defendant's profits and/or Plaintiff's damages, including lost profits resulting from Defendants' unlawful acts set forth herein, in an amount to be proven at the time of trial, together with legal interest from the date of accrual thereof; punitive damages; pre-judgment and post-judgment interest, at the maximum rate allowed by law or rule; and an award of Plaintiff's reasonable costs and expenses incurred

in this action, including, without limitation, an award of its reasonable attorneys' fees; and such other and further relief as the Court deems just and proper.

**FIRST CAUSE OF ACTION
UNFAIR COMPETITION, AND
FALSE DESIGNATION OF ORIGIN (FEDERAL)**

51. ZL repeats and realleges each of the foregoing allegations as if fully set forth therein.

52. Defendants' unlawful actions, as set forth above, are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, association or sponsorship of Shield Israel and Shield Delaware's services and to falsely mislead consumers into believing that ZL and its services originate from, are affiliated or connected with, or approved by, ZL.

53. Defendants' conduct has resulted in actual confusion as to these services in at least two instances.

54. Accordingly, Defendants' conduct constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

55. Defendants' acts of unfair competition have caused ZL to sustain monetary damage, loss, and injury, in an amount to be determined by the Court.

56. Defendants have engaged in these activities willfully, so as to justify the assessment of treble damages and or attorneys' fees under 15 U.S.C. § 1117.

57. Defendants' acts of unfair competition, unless permanently enjoined by this Court, will continue to cause ZL to sustain irreparable damage, loss and injury, for which it has no adequate remedy at law.

58. Defendants' acts were committed with reckless, willful and/or callous disregard for ZL's rights, thereby entitling ZL to an award of punitive damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## FALSE ADVERTISING (FEDERAL)

59. ZL repeats and realleges each of the foregoing allegations as if fully set forth herein.

60. Defendants' unlawful and improper actions as set forth above constitute false or misleading descriptions of fact, and/or false or misleading representations of fact in commercial advertising or promotion which misrepresent the nature, characteristics, and qualities of Defendants' services or commercial activities.

61. Defendants' conduct creates the false impression and/or are likely to mislead consumers to believe, *inter alia,* that Shield Israel independently created a unified architecture solution comparable to ZL, thereby misleading the public, including but not limited to the Client.

62. Accordingly, Defendants' conduct constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B).

63. Defendants' acts of false advertising have materially injured and continue to injure ZL's business, including depriving it of sales and customers, as well as injuring ZL's reputation and goodwill, and have caused it to sustain monetary damages, loss, and injury in an amount to be determined by the Court.

64. Defendants have engaged in these activities willfully, so as to justify the assessment of treble damages under 15 U.S.C. § 1117.

65. Defendant's willful and deliberate acts described above have caused irreparable injury to ZL, and, unless enjoined, will cause further irreparable injury, whereby ZL has no adequate remedy at law.

66. Defendant's acts were committed with reckless, willful and/or callous disregard for ZL's rights, thereby entitling ZL to an award of punitive damages in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## UNFAIR COMPETITION (Misappropriation)

67. ZL repeats and realleges each of the foregoing allegations as if fully set forth herein.

68. Defendants were aware that ZL's platform was superior to Shield Israel's. Accordingly, the Shield Defendants sought out and hired Defendant Gardner to secure access to ZL proprietary information and trade secrets.

69. Defendant Gardner had full access to, and full knowledge of ZL's unified architecture solution, and improvements made to that solution from at least 2012 to 2022.

70. ZL restricted access to its platform and technology using a range of means, including multilayered access on a need-to-know basis, authentication, encryption, and the use of nondisclosure agreements.

71. Following the misappropriation, Defendants incorporated ZL's intellectual property, including ZL's confidential and proprietary information into Defendants' Nebula platform, and elsewhere.

72. Defendants acted not in any effort to create a better big-data platform but instead to purloin information not belonging to the Defendants and to steer ZL's opportunities to the Shield Defendants and others.

73. Defendants acted with malice and bad faith.

74. Defendants claimed that ZL's technology was Shield Israel's, incorporated that technology and palmed off alleged the technology as Shield's own.

75. Defendants' conduct constitutes unfair competition.

76. ZL was damaged as a result of that unfair competition.

77. ZL is entitled to damages in an amount to be proven at trial, plus punitive damages in any amount necessary to deter future misconduct by the Defendants.

## FOURTH CAUSE OF ACTION
## UNFAIR COMPETITION (Creating Confusion or Mistake)

78. ZL repeats and realleges each of the foregoing allegations as if fully set forth herein.

79. Defendants' actions have caused confusion with, and have been mistaken for ZL's activities and achievements in the mind of the public, and are likely to cause such confusion or mistake.

80. Defendants have acted unfairly and with bad faith.

81. Defendants' conduct undermines the goodwill and commercial advantage of ZL in New York and beyond.

82. ZL is entitled to damages in an amount to be proven at trial, plus punitive damages in any amount necessary to deter future misconduct by the Defendants.

## FIFTH CAUSE OF ACTION
## BREACH OF CONTRACT (as to KLD)

83. ZL repeats and realleges each of the foregoing allegations as if fully set forth herein.

84. ZL entered contracts, including the SDLSA, with Renew Data Corporation or about March 7, 2006 and earlier.

85. Once Defendant KLD assumed or was assigned all of Renew Data Corp.'s duties of performance under the contracts with ZL, Defendant KLD agreed to preserve ZL's confidential and proprietary information in the strictest confidence, and to pay ZL's annual maintenance, royalties and technical support costs. From 2021, KLD generally performed under the contract, making its payments to ZL in a timely manner.

86. Beginning in 2023, as a result of the misappropriation of ZL's confidential proprietary information, and the launch of unified platform by Defendant KLD, and the Shield Defendants, KLD determined to thwart its joint obligations to serve the Client under the SDLSA, allowed the use of ZL's confidential and proprietary information and otherwise refuse to abide by its payment obligations to ZL.

87. At all times relevant hereto, ZL honored its obligations under the SDLSA.

88. By failing to pay the monies owed to ZL timely, thwarting further business opportunities with respect to a joint client of the parties, and refusing the pay the bulk of the Four Million Eight Hundred Eighty-Eight Thousand Eight Hundred Eight Two Dollars and Ninety-Two Cents ($4,888,882.92) owed ZL, KLD materially breached the terms of the SDLSA, relieving ZL of any further obligations thereunder.

89. ZL is entitled to damages in an amount to be proven at trial.

**PRAYER FOR RELIEF**

WHEREFORE, ZL Technologies, Inc. respectfully seeks the following relief from this Court:

(a) Injunctive relief enjoining and restraining the Defendants from:

(i) continuing to interfere with ZL's business with the Client and other clients;

(ii) using any ZL confidential and proprietary information, or information derived therefrom to support the Shield Defendants or further assist the Shield Defendants in developing a unified big-data platform or unified architecture solution;

(iii) palming off ZL's technology as Shield's own, and engaging in further acts of unfair competition, and requiring

(iv) the return all misappropriated ZL materials in Defendants' possession, custody, or control as the Court shall direct.

(b) an award of Defendants' profits and ZL's damages resulting from Defendants' unlawful acts set forth herein, in an amount to be proven at the time of trial, together with legal interest from the date of accrual thereof;

(c) an award of damages for KLD's breach of contract of at least the unpaid monies owed ZL;

(d) punitive damages;

(e) pre-judgment and post-judgment interest, at the maximum rate allowed by law or rule;

(f) an award of ZL's reasonable costs and expenses incurred in this action, including, without limitation, an award of its reasonable attorneys' fees; and

(g) such other and further relief as the Court deems just and proper.

## JURY DEMAND

Trial by jury is hereby demanded as to all issues so triable.

Dated: New York, New York
        March 31, 2025

Respectfully submitted,

/s/ Kevin Murphy
Kevin Murphy
Wuersch & Gering LLP
100 Wall Street, 10th Floor
New York, New York 10005
Tel. (212) 509-5050
Fax. (212) 509-9559
kevin.murphy@wg-law.com
*Attorneys for Plaintiff ZL Technologies, Inc.*