UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZL TECHNOLOGIES, INC.,<br>     Plaintiff,<br><br>-against-<br><br>SHIELD FINANCIAL COMPLIANCE, LTD.;<br>SHIELD FINANCIAL COMPLIANCE, INC.;<br>KLDISCOVERY ONTRACK, LLC and<br>AARON GARDNER,<br>     Defendants. | Case No. 1:25-cv-2673-JPO |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT AARON GARDNER'S MOTION TO DISMISS
### <u>PLAINTIFF'S COMPLAINT</u>

GROVE LAW PC

*/s/ Hannah Sholl*
Hannah Sholl
GROVE LAW PC
1460 Broadway
New York, New York 10036
Tel: (646) 480-6408
hsholl@grove.law

*Attorney for Defendant Aaron Gardner*

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ............................................................................................... 1

**ARGUMENT** ............................................................................................................................... 2

I. Plaintiff Fails to State Claims Against Gardner for False Designation of Origin (Count I), False Advertising (Count II) and Unfair Competition by Creation of Confusion or Mistake (Count IV). ............................................................... 3

    A. ZL Does Not Plausibly Allege That Gardner Has Engaged in False Designation of Origin ............................................................................................ 4

    B. Plaintiff Fails to State a Claim for False Advertising Against Gardner. ................ 7

    C. ZL's Claim for Unfair Competition by Creation of Confusion or Mistake Must be Dismissed as Insufficiently Pled and Duplicative of Its Other Claims ............................................................................................... 10

II. Plaintiff Has Not Plausibly Alleged That Gardner Misappropriated Any of Its Proprietary and Confidential Information (Count III) ......................................... 11

**CONCLUSION** ........................................................................................................................ 15

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Broad. Cos., Inc. v. Flying J, Inc.*, 06-CV-2967 (DAB), 2007 WL 583176
(S.D.N.Y. Feb. 22, 2007) .................................................................................................. 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................... 3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................. 3

*Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429 (E.D.N.Y. 2011) ................................. 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .............................................................. 3

*Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586 (E.D.N.Y. 2017) ............................... 15

*CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205 (S.D.N.Y. 2023) ....... 11, 14

*Converged Compliance Solutions, Inc. v. XOP Networks, Inc.*, 21-CV-5482
(PGG/OTW), 2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024) ......................................... 12

*Elsevier Inc. v. Doctor Evidence, LLC*, 17- CV-5540 (KBF),
2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ................................................................ 3, 14

*Empower Fed. Credit Union v. Empower Annuity Ins. Co. of Am.*, 23-CV-941
(BKS/MJK), 2024 WL 3639440 (N.D.N.Y. Aug. 2, 2024) ........................................... 13

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ....................... 3

*Fizz Soc. Corp. v. Flower Ave, Inc.*, 23-CV-8840 (LA/BCM), 2024 WL 4264842
(S.D.N.Y. Aug. 5, 2024) ................................................................................................... 5

*Geigtech East Bay LLC v. Lutron Elecs. Co., Inc.*, 18-CV-5290 (CM),
2019 WL 1768965 (S.D.N.Y. April 4, 2019) ............................................................. 9, 10

*I Candy by JW LLC v. Spin Master Ltd.*, 17-CV-3131 (SJF/SIL), 2018 WL 11697440
(E.D.N.Y. June 19, 2018) .............................................................................................. 5, 6

*ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467 (N.Y. 2007) ................................................... 14

*Lieb v. Korangy Publ'g Inc.*, 15-CV-40 (AKT), 2016 WL 8711195
(E.D.N.Y. Sept. 30, 2016) ............................................................................................. 4, 9

*Lopez v. Nike, Inc.*, 20-CV-905 (PGG/JLC), 2021 WL 128574
(S.D.N.Y. Jan. 14, 2021) .................................................................................................. 4

*SCE Grp. Inc. v. City of New York*, 18-CV-8909 (AT), 2020 WL 1033592
(S.D.N.Y. March 3, 2020) .............................................................................................. 10

*SimplexGrinnel LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167 (S.D.N.Y. 2009) .................................................................................................. 8

*Skyline Risk Mgmt., Inc. v. Legakis*, 733 F. Supp. 3d 316 (S.D.N.Y. 2024) ..................... 12

*Smartix Intern. Corp. v. MasterCard Intern. LLC*, 06-CV-5174 (GBD), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) ........................................................................... 4, 6

*SS&C Tech. Holdings, Inc. v. Arcesium LLC*, 22-CV-02009 (TMR/OTW), 2024 WL 5186530 (S.D.N.Y. Dec. 20, 2024).............................................................. 14

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) ........................................ 3

*Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258 (E.D.N.Y. 2014) .... 11

*Vedder Software Grp. Ltd., v. Ins. Servs. Offices, Inc.*, 11-CV-00369 (GTS/CFH), 2013 WL 12121098 (N.D.N.Y. March 22, 2013)......................................................... 12

## **Statutes**

§ 43(a) of the Lanham Act ................................................................................................ 4, 6

15 U.S.C. § 1125(a)(1)(A)-(B) ............................................................................................. 4

15 U.S.C. § 1125(a)(1)(B) .................................................................................................... 8

## **Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................................... 1, 2

Fed. R. Civ. P. 8 ................................................................................................................. 10

Defendant Aaron Gardner ("Gardner") respectfully submits this memorandum of law in support of his motion to dismiss the claims brought by Plaintiff ZL Technologies, Inc. ("Plaintiff" or "ZL") against him, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

ZL attempts to transform ordinary employee mobility and lawful business conduct into a sweeping tale of purloined technology and unfair competition. Based on blatant conjecture and speculative timelines, Plaintiff brings an action (the "Action") against three corporate defendants—Shield Financial Compliance, Ltd., ("Shield Israel"), Shield Financial Compliance, Inc., ("Shield Delaware," and together the "Shield Defendants"), KLDiscovery Ontrack, LLC ("KLD")—as well as one individual, Aaron Gardner, a former compliance executive at KLD who purportedly joined a Shield entity in a strategy role later.

Boiled down, the Complaint alleges that (i) ZL created and offers to its clients a unified architecture technology ("ZL UA"); (ii) ZL licensed use of its technology to KLD; (iii) during his employment at KLD, Gardner somehow acquired knowledge of ZL's "proprietary information"; (iv) Shield Israel hired Gardner in January 2022; (v) a few months later, Shield Israel, in partnership with KLD, released a new version of its own technology (the "Nebula Intelligent Archive"); (vi) a few months after that, Shield Israel also announced a big data solution ("Hybrid Cloud Solutions") which, according to ZL, "could not have been legitimately researched, developed, validated and launched" in less than a year. According to ZL, the only possible explanation for Shield Israel's ability to launch these products is that the Shield Defendants and KLD, with the help of Gardner,

1

misappropriated ZL's technology to incorporate it in their own and sell the resulting solution as their own. ZL further surmises that KLD and the Shield Defendants jointly pushed ZL out of an existing contractual arrangement and "palmed off" ZL's technology as their own. This stack of inferences fails to string together a coherent story, much less a sufficiently-pled complaint.

The Complaint is devoid of any allegations that Gardner took, transmitted, or used ZL's confidential information. It does not allege that he had access to proprietary technical documentation or source code, let alone that he shared or implemented it. Instead, ZL relies on vague job descriptions, a faulty timeline, and speculative assumptions about what Gardner must have known during his tenure at KLD, all the while insisting that ZL "restricted access to its platform and technology using a range of means."

ZL fails to plead the elements of any of its claims with respect to Gardner. Counts I and II (false designation of origin and false advertising) rest entirely on purported statements that Gardner is not alleged to have made, approved, or disseminated—and which do not qualify as breaches of the Trademark Act of 1946 (the "Lanham Act") in any event. Count IV (unfair competition by confusion) repeats the same conclusory theories. Count III (misappropriation) fails to identify any proprietary asset that Gardner misappropriated or used, and contains no facts to support the necessary inference of bad faith. The Court should grant Gardner's motion in its entirety and dismiss Counts I through IV for failure to state a claim on which relief can be granted.[1]

## ARGUMENT

It is well established that, in order to survive a Rule 12(b)(6) motion to dismiss, a

---

[1] ZL also brings a breach of contract claim against KLD. Since this claim does not concern Gardner, it is not addressed in the present motion (the "Motion").

2

plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Simply put, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "If the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not 'nudged plaintiff's claims across the line from conceivable to plausible'—dismissal is appropriate." *Elsevier Inc. v. Doctor Evidence, LLC*, 17- CV-5540 (KBF), 2018 WL 557906, at *2 (S.D.N.Y. Jan. 23, 2018) (quoting *Twombly*, 550 U.S. at 570).

Additionally, although a court ruling on a motion to dismiss must presume the truth of the plaintiff's allegations, "conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). *See also Ashcroft*, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

**I.    Plaintiff Fails to State Claims Against Gardner for False Designation of Origin (Count I), False Advertising (Count II) and Unfair Competition by Creation of Confusion or Mistake (Count IV)**

Not only is the Complaint a hodge-podge of overlapping legal claims, it also brings several causes of action predicated on the same flimsy allegations. Crucially, Counts I, II and IV, in addition to being inadequately pled, are completely devoid of allegations

3

concerning Gardner.  They should be dismissed as to him.

### A. ZL Does Not Plausibly Allege That Gardner Has Engaged in False Designation of Origin

The Lanham Act imposes liability for "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that:

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities.

15 U.S.C. § 1125(a)(1)(A)-(B).  To succeed on a claim for false designation of origin under the Lanham Act, a plaintiff must establish that "(1) he owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Lopez v. Nike, Inc.*, 20-CV-905 (PGG/JLC), 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021) (citations omitted).  Although a registered mark is presumed valid, an "unregistered mark is [also] entitled to protection when it is inherently distinctive." *Id*.

In practice, section 43(a) of the Lanham Act "prohibits misrepresentations as to the source of a product through two types of practices: 'passing off' (also called palming off) in which A sells its product under B's name[,] and reverse passing off, in which A sells B's product under A's name." *Lieb v. Korangy Publ'g Inc.*, 15-CV-40 (AKT), 2016 WL 8711195, at *6 n.2 (E.D.N.Y. Sept. 30, 2016); *see also Smartix Intern. Corp. v. MasterCard Intern. LLC*, 06-CV-5174 (GBD), 2008 WL 4444554, at *5 (S.D.N.Y. Sept. 30, 2008) ("Reverse palming off (also known as 'reverse passing off') occurs when a producer

4

misrepresents someone else's goods or services as his own.") (internal citations omitted).

Here, the Complaint's references to "ZL's purloined technology" (Compl. at ¶ 46) and the purported "palming off [of] ZL's technology as Shield Israel's own" (Compl. at ¶ 50) leave no doubt that the misconduct ZL intends to allege is reverse passing off. A reverse palming off claim requires allegations "(1) that the product at issue originated with the plaintiff; (2) that the origin of the product was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *I Candy by JW LLC v. Spin Master Ltd.*, 17-CV-3131 (SJF/SIL), 2018 WL 11697440, at *20 (E.D.N.Y. June 19, 2018) (quotation marks and citations omitted). Plaintiff's allegations miss the mark.

First, ZL fails to allege that it has either a registered mark or an unregistered mark that is entitled to protection under the Lanham Act. The Complaint generally asserts that ZL has invested "man-hours" into the development and implementation of ZL UA, that its technology was "named the best offering for content analytics," and that it is "maintained in the strictest confidence as a trade secret," but it does not offer any information on the possible registration of a mark. ZL also does not assert that any of the "'big data' software services" it provides, Compl. ¶ 13, are associated with a mark, let alone one that is "sufficiently distinctive" to distinguish it from others. *See Fizz Soc. Corp. v. Flower Ave, Inc.*, 23-CV-8840 (LA/BCM), 2024 WL 4264842, at *4 (S.D.N.Y. Aug. 5, 2024). The absence of *any* allegations concerning a possible mark and its protectability is fatal to Plaintiff's first cause of action.

Second, ZL does not allege that the origin of ZL UA was falsely designated by any of the Defendants—especially not Gardner. As this Court explained in *Smartix*, "[t]he

5

phrase 'origin of goods,' under § 43(a) of the Lanham Act, refers to the producer of the goods or services that are offered for sale, and not to the originator of any idea, concept or communications incorporated or embodied in those goods or services." 2008 WL 4444554, at *5–6. As a result, "the unattributed copying of another's designs and ideas does not give rise to a reverse palming off claim." *Id*. (dismissing reverse palming off claim where challenged card programs were "not created by plaintiff, but rather [were] the alleged embodiment of plaintiff's ideas, concepts, designs and technology"); *see also I Candy*, 2018 WL 11697440, at *21 ("Since defendant was the origin of the products it sold as its own, plaintiff cannot prevail on its Lanham Act claim.") (quotation marks and citations omitted). Here, ZL alleges generally that Shield Israel and KLD used ZL's proprietary information to develop their own unified big-data platform and "palm[ed] off ZL's technology as Shield Israel's own." Compl. ¶ 50. In other words, Plaintiff claims that the Shield Defendants and KLD copied ZL's technology to create their own. Consistent with the *Smartix* decision, that is not a proper basis for a claim for false designation of origin through reverse palming off.

Third, ZL does not allege that any of its actual or prospective clients were, or are likely to be, confused or misled as to the origin of Shield Israel's technology. Plaintiff declares that "Defendants' unlawful actions … are likely to cause confusion, mistake or deception as to the source, origin, affiliation, association or sponsorship of Shield Israel and Shield Delaware's services" and that "Defendants' conduct has resulted in actual confusion as to these services in at least two instances." Compl. ¶¶ 52–53. But the "two instances" referenced by ZL do not come close to showing consumer confusion. To be clear: Plaintiff infers from communications with employees of a client and KLD that the

6

Shield Defendants and KLD used "ZL's purloined technology" to respond to two requests for proposal. Compl. ¶¶ 46–47. The Complaint says nothing about the client's understanding of the origin of Shield Israel's technology. In fact, it does not even claim that ZL's technology and Shield Israel's were similar or in competition. ZL's allegations therefore do not suffice to support Plaintiff's claim.

Fourth, ZL does not even attempt to quantify or provide support for its bald assertion that "Defendants' acts of unfair competition have caused ZL to sustain monetary, damage, loss, and injury." Compl. ¶ 55. All the Complaint does is recite the elements of a reverse passing off cause of action.

Critically, Plaintiff does not mention Gardner even once in reference to the purported false designation of origin. According to the Complaint, Gardner joined Shield Israel in January 2022 as Compliance Strategist. Compl. ¶ 37. Nothing indicates that, in that role, he was involved in responding to the requests for proposal mentioned in the Complaint, or that he presented ZL's technology as Shield Israel's to the public or ZL and KLD's client. Gardner's only discernible wrongdoings according to the Complaint are (i) that he allegedly had access, in his prior employment, to unnamed information regarding "the ZL architecture and software" and (ii) he was later hired by Shield Israel. Plaintiff fails to plead a false designation of origin claim against Gardner.

### B. Plaintiff Fails to State a Claim for False Advertising Against Gardner

In Count II, ZL alleges that Defendants' conduct "creates the false impression and/or are likely to mislead consumers to believe, *inter alia*, that Shield Israel independently created a unified architecture solution comparable to ZL," that the alleged misconduct "constitutes false advertising in violation of 15 U.S.C. § 1125(a)(1)(B)," and that it has "materially injured and continue[s] to injure ZL's business." Compl. ¶¶ 60–63.

7

As stated *supra*, *see* Section I.A., the Lanham Act forbids false advertising, which it describes as a "false or misleading description of fact, or false or misleading representation of fact" concerning "the nature, characteristics, qualities, or geographic origin of ... goods, services, or commercial activities," that appear in "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). Courts recognize that to prevail on a false advertising claim under the Lanham Act, "a plaintiff must demonstrate that the message in the challenged advertisement is false," that the alleged misrepresentation is "of an inherent quality or characteristic of the product," and that it was "part of an organized campaign to penetrate the relevant market." *SimplexGrinnel LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 201–02 (S.D.N.Y. 2009) (citations omitted).

Applying these factors to the case at bar, Plaintiff's claim fails for several reasons.

First, ZL does not allege that any of the Defendants made a false or misleading description or representation of fact. The Complaint vaguely references communications between KLD and a client to whom both KLD and ZL provided services, *see* Compl. ¶¶ 46–47, but it falls short of alleging that any specific (and false) statement was made or otherwise published by any of the Defendants.

Second, even if ZL had adequately alleged a misrepresentation, it would not concern "an inherent quality or characteristic" of ZL UA. In support of its claim, Plaintiff asserts that "Defendants' conduct creates the false impression and/or [is] likely to mislead consumers to believe, *inter alia*, that Shield Israel *independently* created a unified architecture solution comparable to ZL." Compl. ¶ 61 (emphasis added). As the rest of the Complaint shows, ZL is not concerned with the possible existence of a competing or comparable architecture solution; ZL's issue is the origin of the technology used by KLD

8

and Shield.  ZL's only preoccupation is that Defendants be barred from using technology which it alleges is a replica of its own.  Of course, the origin of Defendants' solution has nothing to do with an "inherent quality or characteristic of the product."  *See Lieb v. Korangy Publ'g Inc.*, 2016 WL 8711195, at *11 ("[A] failure to attribute authorship to Plaintiff does not amount to misrepresentation of the nature, characteristics, qualities, or geographic origin of Defendant's goods.") (cleaned up).  ZL simply wishes to take another bite at the "designation of origin" apple by tacking on the terms "comparable to ZL" to a single allegation in its Complaint.

Third, Plaintiff does not allege that any misrepresentation was made in "commercial advertising or promotion."  As this Court recognized in 2019, "commercial advertising or promotion" is "limited to speech that is (i) commercial, (ii) made for the purpose of influencing consumers to buy defendant's goods or services, and (iii) disseminated sufficiently to the relevant purchasing public."  *Geigtech East Bay LLC v. Lutron Elecs. Co., Inc.*, 18-CV-5290 (CM), 2019 WL 1768965, at *10 (S.D.N.Y. April 4, 2019) (dismissing false advertising claim where press release "did not contain core commercial information, including price and product information" and "was not part of an organized campaign to penetrate the relevant market.").  Here, ZL merely speculates and implies that the Shield Defendants and KLD represented to one of Plaintiff's clients that Shield Israel's technology was its own, not ZL's. Compl. at ¶¶ 46–47.  Even setting aside the fact that the Complaint does not allege that Defendants actually represented to the client that the technology was theirs, and reading the Complaint in the light most favorable to ZL, any such misrepresentation does not qualify as one made "in commercial advertising or promotion," as it is not alleged to have been "disseminated sufficiently to the relevant

9

purchasing public" or "part of an organized campaign the penetrate the relevant market." *Geigtech*, 2019 WL 1768965, at *10.

Finally, Count II, like Count I, makes no mention of Gardner in relation to the alleged false advertising. Although ZL uses the term "Defendants" in its second cause of action, this Court has recognized that "[w]here allegations lump[] all the defendants together in each claim and provide no factual basis to distinguish their conduct," a complaint "fails to meet [Rule 8's] minimum requirement," which may warrant dismissal. *SCE Grp. Inc. v. City of New York*, 18-CV-8909 (AT), 2020 WL 1033592, at *3 (S.D.N.Y. March 3, 2020). Additionally, a review of the Complaint shows that the only misconduct attributed to Gardner is his alleged participation in the purported misappropriation of Plaintiff's technology. *See* Compl. at ¶¶ 1, 29–31, 37–38, 40. Any suggestion by ZL that Gardner made any false or misleading description or representation of fact would therefore be wholly unsupported by the allegations in the Complaint. Plaintiff's false advertising claim against Gardner must be dismissed.

### C. ZL's Claim for Unfair Competition by Creation of Confusion or Mistake Must be Dismissed as Insufficiently Pled and Duplicative of its Other Claims

Plaintiff's fourth cause of action fares no better than Counts I and II.

Apparently concerned that its other unfair competition claims would not succeed, Plaintiff brings a generic claim for "creating confusion or mistake." But ZL fails to provide *any* color on the legal or factual basis for this claim, settling for conclusory statements instead.[2] *See* Compl. at ¶¶ 78–82.

---

[2] Assuming *arguendo* that ZL intends Count IV to be a claim for unfair competition under New York common law, that claim must be dismissed due to the Complaint's failure to allege bad faith *inter alia*. As courts in this circuit "clearly articulated," "an element of bad faith is essential to establishing liability on a claim of unfair competition." *Am. Broad. Cos., Inc. v. Flying J, Inc.*, 06-CV-2967 (DAB), 2007 WL 583176, at *9 (S.D.N.Y. Feb. 22, 2007).

10

Even if it was adequately pled, and it is not, Plaintiff's fourth claim should be dismissed as duplicative of Counts I and II. In the absence of any supporting allegations, Defendants must assume that ZL's claim relies on the same facts and seeks the same relief as its Counts I and II. *See* Compl. at ¶¶ 78 (incorporating by reference the preceding allegations), 82 (reiterating that Plaintiff is "entitled to damages in an amount to be proven at trial, plus punitive damages"). In the interest of efficiency, the cause of action should therefore be dismissed with prejudice. *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272–73 (E.D.N.Y. 2014) (dismissing plaintiff's claims for "unfair competition" under the Lanham Act and New York State common law as duplicative of plaintiff's trademark infringement and false advertising claims, and holding that "there is no specific Federal cause of action for unfair competition.").

## II. Plaintiff Has Not Plausibly Alleged That Gardner Misappropriated Any of Its Proprietary and Confidential Information (Count III)

New York law recognizes "two theories of common law unfair competition: palming or passing off, and misappropriation." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 225 (S.D.N.Y. 2023) (cleaned up). Courts define palming off as the "sale of the goods of one manufacturer as those of another," while misappropriation prohibits the taking and use of "the results of the skill, expenditures and labors of a competitor." *Id*. at 225–26. "Although unfair competition often involves misappropriation of trade secrets or ideas, a claim may be based on misappropriation of client lists, internal company documents, and business strategies if wrongful or fraudulent tactics are employed." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 447 (E.D.N.Y. 2011) (citation omitted).

To prevail on an unfair competition claim involving misappropriation, a plaintiff

11

must "establish that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Skyline Risk Mgmt., Inc. v. Legakis*, 733 F. Supp. 3d 316, 326 (S.D.N.Y. 2024) (citing *Barbagallo*, 820 F. Supp. 2d at 447). In addition, "[i]n order to state a claim of unfair competition . . . under either a misappropriation or a palming off theory, a plaintiff must allege a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing product or service." *Vedder Software Grp. Ltd., v. Ins. Servs Offices, Inc.*, 11-CV-00369 (GTS/CFH), 2013 WL 12121098, at *7 (N.D.N.Y. March 22, 2013) (internal quotation marks omitted).

While Plaintiff's third cause of action is labelled as one for unfair competition by misappropriation, ZL appears to rely interchangeably on both palming off and misappropriation. *Compare* Compl. at ¶¶ 1, 50, 74 (alleging that Defendants "palmed off" ZL's technology "as Shield's own"), *with* Compl. at ¶¶ 1, 50, 71 (alleging that "[f]ollowing the misappropriation, Defendants incorporated ZL's intellectual property, including ZL's confidential and proprietary information, into Defendants' Nebula platform"). Regardless, Plaintiff's claim against Gardner fails.

First, although the Complaint uses the term "palming off," ZL explicitly pleads that the Shield Defendants released *their own* software. *See e.g.*, Compl. at ¶¶ 39, 41, 43. In the absence of any allegation that Defendants substituted their technology for Plaintiff's, a palming off claim cannot survive. *See Converged Compliance Solutions, Inc. v. XOP Networks, Inc.*, 21-CV-5482 (PGG/OTW), 2024 WL 4665114, at *14 (S.D.N.Y. Sept. 25, 2024) (finding that "Plaintiff fail[ed] to allege that [defendant] palmed off any of [plaintiff's] goods as their own; in fact, Plaintiff explicitly pleads that [defendant] sold

12

their *own* product," and dismissing unfair competition claim) (emphasis in the original); *see also Empower Fed. Credit Union v. Empower Annuity Ins. Co. of Am.*, 23-CV-941 (BKS/MJK), 2024 WL 3639440, at *4–5 (N.D.N.Y. Aug. 2, 2024) ("Plaintiff's allegations regarding Defendant's alleged deception do not contain any facts indicating Defendant has attempted to sell its products as the products of Plaintiff. Failure to allege such facts has previously led to the dismissal of a palming off claim.") (internal citations omitted).

Second, even setting aside the palming off theory, Plaintiff fails to adequately allege that Gardner took and used the purportedly misappropriated information. The Complaint merely claims that Gardner had access to general categories of information and skips over any purported misappropriation. *See* Compl. at ¶ 69 ("Defendant Gardner had full access to, and full knowledge of ZL's unified architecture solution, and improvements made to that solution from at least 2012 to 2022."), ¶ 71 ("Following the misappropriation…"). Crucially, the Complaint falls short of pleading that Gardner had access to the *specific* information necessary to replicate ZL UA (without which Plaintiff's entire narrative—*i.e.*, that Defendants incorporated ZL's technology and palmed off the resulting technology as their own—necessarily falls). To be clear, the Complaint does not assert that Gardner was ever employed as an engineer or product manager; instead, it states that Gardner served as "a point of contact for the Client account" and was later appointed to Vice-President, Compliance, Information Governance and Archiving. Plaintiff does not allege that either of these roles would have given Gardner access to the code underlying ZL's technology. Moreover, Plaintiff does not allege that Gardner actually took and used that information. *See ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478–79 (N.Y. 2007) ("Under New York law, an unfair competition claim involving misappropriation usually

13

concerns the taking and use of the plaintiff's property to compete against the plaintiffs own use of the same property.") (quotation marks omitted). It is not sufficient that Gardner allegedly had knowledge of the ZL UA architecture; to be able to misappropriate that information, Gardner would have needed the expertise to either recreate ZL's technology himself or, at the very least, to instruct and guide Shield's engineering team. Without factual allegations—not legal conclusions—to that effect, Plaintiff's claim does not cross "the line from conceivable to plausible." *Elsevier*, 2018 WL 557906, at *2.

In reality, Plaintiff has not and cannot allege misappropriation. ZL simply infers foul play from the alleged poaching of Gardner by Shield and the purportedly suspicious timeline of Shield's release of its technology. Even if the timeline ZL relies on was accurate—which it is not—the barebones allegations are insufficient. *See SS&C Tech. Holdings, Inc. v. Arcesium LLC*, 22-CV-02009 (TMR/OTW), 2024 WL 5186530, at *12 (S.D.N.Y. Dec. 20, 2024) (finding that plaintiff did not allege that defendant lacked expertise or "was incapable of independently developing [its own technology] in the timeframe that it took," and concluding that plaintiff's allegations did not "allow the court to draw a reasonable inference that the development timeline of [defendant's technology] was truncated as a result of any [trade secret] misappropriation.").

Third, the Complaint's conclusory accusations that Defendants "acted with malice and bad faith," Compl. at ¶ 73, absent supporting factual allegations, are plainly deficient. *See CDC Newburgh Inc*, 692 F. Supp. 3d at 226 ("[E]ven if the Court agreed with Plaintiff that Defendant committed misappropriation, Plaintiff's conclusory accusations that Defendants … 'acted with actual malice or with reckless disregard for the truth of [the Reports]' and submitted the Reports … "with the intent to injure Plaintiff without regard

14

for the accuracy of the statements" are, absent supporting factual allegations, conclusory, and thereby plainly insufficient to show that Defendant did so in 'bad faith,' as is necessary to state a plausible claim for misappropriation."); *see also Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 602 (E.D.N.Y. 2017) (finding that conclusory language was insufficient to support an inference of bad faith).

Finally, Plaintiff fails to plausibly allege a likelihood of confusion or deception of the consuming public. In conclusory fashion, the Complaint states that the alleged unlawful acts "are designed to, and are, causing substantial confusion and deception among users in New York." Compl. at ¶ 12. In relation to Plaintiff's fourth claim, the Complaint also alleges that "Defendants' actions have caused confusion with, and have been mistaken for ZL's activities and achievements in the mind of the public, and are likely to cause such confusion or mistake." Compl. at ¶ 79. As the Complaint does not provide any example of confused "users" or members of the "public," the only possible factual basis for these legal conclusions is the allegation that the Shield Defendants and KLD used "ZL's purloined technology … to satisfy [a] request [for proposal from ZL and KLD's client]." Compl. at ¶ 46. However, the Complaint does not address the client's understanding of the source of the technology used to respond to the request. And stating that the public, or a specific consumer, is likely to be confused does not make it so.

## CONCLUSION

For the foregoing reasons, the Court should enter an Order granting Gardner's motion to dismiss the Complaint with prejudice, and such further relief as the Court deems just and proper.

Dated: New York, New York
      June 17, 2025

GROVE LAW PC

*/s/ Hannah Sholl*
Hannah Sholl
GROVE LAW PC
1460 Broadway
New York, New York 10036
Tel: (646) 480-6408
hsholl@grove.law

*Attorney for Defendant Aaron Gardner*
