UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZL TECHNOLOGIES, INC.,<br>     Plaintiff,<br><br>-against-<br><br>SHIELD FINANCIAL COMPLIANCE, LTD.;<br>SHIELD FINANCIAL COMPLIANCE, INC.;<br>KLDISCOVERY ONTRACK, LLC and<br>AARON GARDNER,<br>     Defendants. | Case No. 1:25-cv-2673-JPO |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT AARON GARDNER'S MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

                     GROVE LAW PC

                     <u>*/s/ Hannah Sholl*</u>
                     Hannah Sholl
                     GROVE LAW PC
                     1460 Broadway
                     New York, New York 10036
                     Tel: (646) 480-6408
                     hsholl@grove.law

                     *Attorney for Defendant Aaron Gardner*

# **TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ................................................................................................... 1

**ARGUMENT** .................................................................................................................................. 3

I. Plaintiff Fails to State a Claim Against Gardner for
False Designation of Origin (Count I)) ......................................................................... 4

II. Plaintiff Has Not Plausibly Alleged That Gardner
Misappropriated Any of Its Proprietary and Confidential
Information (Count II) .................................................................................................. 10

III. ZL's Claim for Unfair Competition by Creation of
Confusion or Mistake Must be Dismissed as
Insufficiently Pled and Duplicative of Plaintiff's Other Claims ................................. 15

**CONCLUSION** ........................................................................................................................... 16

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Broad. Cos., Inc. v. Flying J, Inc.*, 06-CV-2967 (DAB),
  2007 WL 583176 (S.D.N.Y. Feb. 22, 2007) .................................................................. 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 3, 4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ............................ 3

*Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429 (E.D.N.Y. 2011) ............................... 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................ 3

*Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586 (E.D.N.Y. 2017) ............................. 14

*Camelot SI, LLC v. ThreeSixty Brands Group LLC*, 632 F. Supp. 3d 471
  (S.D.N.Y. 2022) ............................................................................................................ 6

*CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205
  (S.D.N.Y. 2023) .................................................................................................... 10, 13

*Converged Compliance Solutions, Inc. v. XOP Networks, Inc.*, 21-CV-5482
  (PGG/OTW), 2024 WL 4665114 (S.D.N.Y. Sept. 25, 2024) ....................................... 11

*Elsevier Inc. v. Doctor Evidence, LLC*, 17- CV-5540 (KBF),
  2018 WL 557906 (S.D.N.Y. Jan. 23, 2018) ............................................................ 4, 12

*Empower Fed. Credit Union v. Empower Annuity Ins. Co. of Am.*, 23-CV-941
  (BKS/MJK), 2024 WL 3639440 (N.D.N.Y. Aug. 2, 2024) .......................................... 11

*Engine Capital Mgmt., LP v. Engine No. 1 GP LLC*, 21-CV-149 (VM),
  2021 WL 1372658 (S.D.N.Y. April 12, 2021) .............................................................. 7

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ....................... 4

*I Candy by JW LLC v. Spin Master Ltd.*, 17-CV-3131 (SJF/SIL),
  2018 WL 11697440 (E.D.N.Y. June 19, 2018) ......................................................... 5, 7

*ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467 (N.Y. 2007) .................................................. 12

*Lieb v. Korangy Publ'g Inc.*, 15-CV-40 (AKT),
  2016 WL 8711195 (E.D.N.Y. Sept. 30, 2016) .............................................................. 5

*Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666 (S.D.N.Y. 2017) ........................... 13

*Lopez v. Nike, Inc.*, 20-CV-905 (PGG/JLC), 2021 WL 128574
  (S.D.N.Y. Jan. 14, 2021) ........................................................................................... 4, 6

*Mosher v. Veyda*, 22-CV-9632 (CS), 2024 WL 4932621
    (S.D.N.Y. Dec. 2, 2024) .................................................................................... 6

*SCE Grp. Inc. v. City of New York*, 18-CV-8909 (AT),
    2020 WL 1033592 (S.D.N.Y. March 3, 2020) ................................................. 9

*Skyline Risk Mgmt., Inc. v. Legakis*, 733 F. Supp. 3d 316 (S.D.N.Y. 2024) .................... 10

*Smartix Intern. Corp. v. MasterCard Intern. LLC*, 06-CV-5174 (GBD),
    2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) ......................................... 5, 7–8

*SS&C Tech. Holdings, Inc. v. Arcesium LLC*, 22-CV-02009 (TMR/OTW),
    2024 WL 5186530 (S.D.N.Y. Dec. 20, 2024) ................................................ 13

*Starr v. Sony BMG Music Entm't*, 592 F.3d 314 (2d Cir. 2010) ........................................ 3

*Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258
    (E.D.N.Y. 2014) .............................................................................................. 15

*Vedder Software Grp. Ltd., v. Ins. Servs. Offices, Inc.*, 11-CV-00369 (GTS/CFH),
    2013 WL 12121098 (N.D.N.Y. March 22, 2013) .......................................... 10

**<u>Statutes</u>**

§ 43(a) of the Lanham Act .............................................................................................. 5, 7

15 U.S.C. § 1125(a)(1)(A)-(B) ........................................................................................... 4

**<u>Rules</u>**

Fed. R. Civ. P. 12(b)(6) ................................................................................................. 1, 3

Fed. R. Civ. P. 8 ................................................................................................................ 9

Defendant Aaron Gardner ("Gardner") respectfully submits this memorandum of law in support of his motion to dismiss the claims brought by Plaintiff ZL Technologies, Inc. ("Plaintiff" or "ZL") against him, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Based on blatant conjecture and speculative timelines, Plaintiff brought an action (the "Action") against three corporate defendants—Shield Financial Compliance, Ltd., ("Shield Israel"), Shield Financial Compliance, Inc., ("Shield Delaware," and together the "Shield Defendants"), KLDiscovery Ontrack, LLC ("KLDiscovery")—as well as one individual, Aaron Gardner, a former compliance executive at KLDiscovery who purportedly joined a Shield entity in a strategy role. With respect to Gardner, ZL attempts to transform ordinary employee mobility and lawful business conduct into a sweeping tale of purloined technology and unfair competition. But this dispute has nothing to do with Gardner, and ZL has utterly failed to carry its burden to show that Gardner engaged in any misconduct.

After KLDiscovery and Gardner moved to dismiss ZL's Complaint, Plaintiff effectively conceded that its pleading did not adequately state claims against the two defendants and eventually filed an Amended Complaint. Despite the opportunity to address the deficiencies identified in the motions, Plaintiff did not inject a single factual allegation in support of its claims against Gardner. The Amended Complaint therefore remains insufficient.

Boiled down, the Amended Complaint alleges in relevant part that (i) ZL created and offers to its clients a unified architecture solution ("ZL UA"); (ii) ZL licensed use of

its technology to KLDiscovery's parent company; (iii) during his employment at KLDiscovery and as "point of contact" for one of ZL's and KLD's clients, Gardner somehow acquired knowledge of ZL's "proprietary information," such as updates and revisions to ZL UA; (iv) Shield Israel hired Gardner in January 2022; (v) a few months later, Shield Israel, in partnership with KLDiscovery, announced the release of a new version of its own technology (the "Nebula Intelligent Archive"), which—Plaintiff alleges—incorporates "data and architecture specific to ZL's unified platform"; (vi) a few months after that, Shield Israel also announced a big data solution ("Hybrid Cloud Solutions").  According to ZL, the solutions announced by the Shield Defendants "could not have been legitimately researched, developed, validated and launched" in less than a year; the only possible explanation for Shield Israel's ability to launch these products, then, is that the Shield Defendants and KLDiscovery, with the help of Gardner, misappropriated ZL's technology to incorporate it in their own and sell the resulting solution as their own. ZL further surmises that KLDiscovery and the Shield Defendants jointly pushed ZL out of an existing contractual arrangement and "palmed off" ZL's technology as Shield Israel's own.

      This stack of inferences fails to string together a coherent story, much less a sufficiently-pled complaint.  The Amended Complaint is devoid of any allegations that Gardner took, transmitted, or used ZL's confidential information.  It does not allege that he had access to ZL's proprietary technical documentation or source code, let alone that he shared or implemented it.  It does not even provide any factual basis for Plaintiff's "belief" that ZL's technology was incorporated into the Shield Defendants' product.  Instead, ZL relies on vague job descriptions, a faulty timeline, and speculative assumptions about (i)

2

what Gardner must have known during his tenure at KLDiscovery and (ii) the attributes of the Shield Defendants' software, all the while insisting that ZL "restricted access to its platform and technology using a range of means."

ZL fails to plead the elements of any of its claims with respect to Gardner. Count I (false designation of origin) rests entirely on purported representations and hypothetical statements that Gardner is not alleged to have made, approved, or disseminated—and which do not qualify as breaches of the Trademark Act of 1946 (the "Lanham Act") in any event. Count II (misappropriation) fails to identify any proprietary asset that Gardner might have misappropriated or used, and contains no facts to support the necessary inference of bad faith. Count III (unfair competition by confusion) repeats the same conclusory theories. The Court should grant Gardner's motion in its entirety and dismiss Counts I through III for failure to state a claim on which relief can be granted.[1]

## ARGUMENT

It is well established that, in order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Simply put, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009). "If the Court can infer no more than

---

[1] ZL also brings a breach of contract claim against KLDiscovery. Since this claim does not concern Gardner, it is not addressed in the present motion (the "Motion").

3

the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not 'nudged plaintiff's claims across the line from conceivable to plausible'—dismissal is appropriate." *Elsevier Inc. v. Doctor Evidence, LLC*, 17- CV-5540 (KBF), 2018 WL 557906, at *2 (S.D.N.Y. Jan. 23, 2018) (quoting *Twombly*, 550 U.S. at 570).

Additionally, although a court ruling on a motion to dismiss must presume the truth of the plaintiff's allegations, "conclusions of law or unwarranted deductions of fact are not admitted." *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). *See also Ashcroft*, 556 U.S. at 663 ("the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

### I. Plaintiff Fails to State a Claim Against Gardner for False Designation of Origin (Count I)

The Lanham Act imposes liability for "any false designation of origin, false or misleading description of fact, or false or misleading representation of fact" that:

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities.

15 U.S.C. § 1125(a)(1)(A)-(B). To succeed on a claim for false designation of origin under the Lanham Act, a plaintiff must establish that "(1) he owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Lopez v.*

4

*Nike, Inc.*, 20-CV-905 (PGG/JLC), 2021 WL 128574, at *4 (S.D.N.Y. Jan. 14, 2021) (citations omitted). Although a registered mark is presumed valid, an "unregistered mark is [also] entitled to protection when it is inherently distinctive." *Id*.

In practice, section 43(a) of the Lanham Act "prohibits misrepresentations as to the source of a product through two types of practices: 'passing off' (also called palming off) in which A sells its product under B's name[,] and reverse passing off, in which A sells B's product under A's name." *Lieb v. Korangy Publ'g Inc.*, 15-CV-40 (AKT), 2016 WL 8711195, at *6 n.2 (E.D.N.Y. Sept. 30, 2016); *see also Smartix Intern. Corp. v. MasterCard Intern. LLC*, 06-CV-5174 (GBD), 2008 WL 4444554, at *5 (S.D.N.Y. Sept. 30, 2008) ("Reverse palming off (also known as 'reverse passing off') occurs when a producer misrepresents someone else's goods or services as his own.") (internal citations omitted).

Here, the Amended Complaint's references to "ZL's purloined technology" (Am. Compl. at ¶ 60) and the purported "palming off [of] ZL's technology as Shield Israel's own" (Am. Compl. at ¶ 62) leave no doubt that the misconduct ZL intends to allege is reverse passing off. A reverse palming off claim requires allegations "(1) that the product at issue originated with the plaintiff; (2) that the origin of the product was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *I Candy by JW LLC v. Spin Master Ltd.*, 17-CV-3131 (SJF/SIL), 2018 WL 11697440, at *20 (E.D.N.Y. June 19, 2018) (quotation marks and citations omitted). Plaintiff's allegations miss the mark.

As a threshold matter, although ZL now claims that it owned the registered "Unified Archive" mark from 2010 until its cancellation in 2020, Am. Compl. at ¶ 24, Plaintiff does

5

not allege that it had a valid mark at the time of the purported false designation of origin, nor does it show that its unregistered mark is sufficiently distinctive to distinguish it from other marks, such that it should be entitled to protection under the Lanham Act.

Second, ZL fails to allege that Gardner used, or had a hand in any purported decision to use, the protected mark in commerce without Plaintiff's consent. *See Camelot SI, LLC v. ThreeSixty Brands Group LLC*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022) ("To state a claim under the Lanham Act for trademark infringement, unfair competition, and false designation of origin, a plaintiff must establish that: (1) plaintiff owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods.") (citing *Lopez*, 2021 WL 128574, at *4); *see also Mosher v. Veyda*, 22-CV-9632 (CS), 2024 WL 4932621, at *5–6 (S.D.N.Y. Dec. 2, 2024) (granting motion to dismiss Plaintiff's claims for trademark infringement and false designation of origin with prejudice, due *inter alia* to Plaintiff's failure to "adequately plead[], or even address[] the [question of] whether Defendants are using the mark without permission and whether such use is likely to cause confusion as to origin or sponsorship"). The Amended Complaint states that "[b]y using information purloined from ZL to create Shield's [technology,] Defendants created a false designation of origin and a misleading representation of fact as to the origin and sponsorship." Am. Compl. at ¶ 66. Even setting aside the fact that Plaintiff's now-cancelled registration only protected, for a time, the "Unified Archive" *name* (as opposed to the associated technology, which appears to be ZL's main concern), the Amended Complaint does not allege that Gardner specifically was involved in any "use in

6

commerce," or that he acted as a driving force behind any purported decision by the corporate Defendants to use the mark. *See Engine Capital Mgmt., LP v. Engine No. 1 GP LLC*, 21-CV-149 (VM), 2021 WL 1372658, at *13 (S.D.N.Y. April 12, 2021) (granting motion to dismiss claim against individual based on absence of "nonconclusory factual allegations suggesting that [individual defendant] authorized or controlled Defendants' allegedly infringing conduct.").

Third, ZL does not allege that the origin of ZL UA was falsely designated by Gardner. As this Court explained in *Smartix*, "[t]he phrase 'origin of goods,' under § 43(a) of the Lanham Act, refers to the producer of the goods or services that are offered for sale, and not to the originator of any idea, concept or communications incorporated or embodied in those goods or services." 2008 WL 4444554, at *5–6. As a result, "the unattributed copying of another's designs and ideas does not give rise to a reverse palming off claim." *Id*. (dismissing reverse palming off claim where challenged card programs were "not created by plaintiff, but rather [were] the alleged embodiment of plaintiff's ideas, concepts, designs and technology"); *see also I Candy*, 2018 WL 11697440, at *21 ("Since defendant was the origin of the products it sold as its own, plaintiff cannot prevail on its Lanham Act claim.") (quotation marks and citations omitted). Here, the Amended Complaint does not assert that Gardner promoted ZL's solution using the corporate Defendants' name, nor does it claim that Gardner represented to anyone that the corporate Defendants were the sole inceptors of the technology underlying their solution. Rather, ZL alleges that the Shield Defendants and KLDiscovery "used" ZL's "proprietary information" to develop their own unified big-data platform and "palm[ed] off ZL's technology as Shield Israel's own." Am. Compl. ¶ 62. In other words, Plaintiff claims that the Shield Defendants and KLDiscovery

7

copied ZL's technology and "incorporated" it into their own. Am. Compl. at ¶¶ 54, 66, 76, 79. Consistent with the *Smartix* decision, that is not a proper basis for a claim for false designation of origin through reverse palming off.[2]

Fourth, ZL does not allege that any of its actual or prospective clients were, or are likely to be, confused or misled as to the origin of Shield Israel's technology. Plaintiff declares that "Defendants' unlawful actions … are likely to cause confusion, mistake or deception as to the source, origin, affiliation, association or sponsorship of Shield Israel and Shield Delaware's services" and that "Defendants' conduct has resulted in actual confusion as to these services in at least two instances." Am. Compl. ¶¶ 64–65. But the "two instances" referenced by ZL do not come close to showing consumer confusion. To be clear: Plaintiff infers from communications with employees of a client and KLDiscovery that the Shield Defendants and KLDiscovery used "ZL's purloined technology" to respond to two requests for proposal. Am. Compl. ¶¶ 60–61. The Amended Complaint says nothing about representations made or the client's understanding of the origin of Shield Israel's technology. It does not even claim that ZL's solution and Shield Israel's were similar, competed for the client's business, or relied on the same technical processes—which might cause some confusion. ZL's allegations therefore do not suffice to support Plaintiff's claim.

ZL does not even attempt to quantify or provide support for its bald assertion that "Defendants' acts of unfair competition have caused ZL to sustain monetary, damage, loss,

---

[2] In an apparent attempt to circumvent the *Smartix* ruling, Plaintiff claims that the information "purloined from ZL" is "not simply ideas or designs derived from ZL UA but concerns specific data connectors and software allowing the reconstruction and lifecycle management of data." Am. Compl. at ¶ 66. That distinction is of no importance when the Amended Complaint also alleges that the Shield Defendants produced and sold the Nebula Intelligent Archive and "other products of Shield" as their own solutions.

8

and injury." Am. Compl. ¶ 68. All the Amended Complaint does is recite the elements of a reverse passing off cause of action.

Critically, Plaintiff does not mention Gardner even once in reference to the purported false designation of origin. According to the Amended Complaint, Gardner joined Shield Israel in January 2022 as Compliance Strategist. Am. Compl. ¶ 50. Nothing indicates that, in that role, he was involved in responding to the requests for proposal mentioned in the Amended Complaint, or that he presented ZL's technology as Shield Israel's to the public or to ZL and KLDiscovery's client. Gardner's only discernible wrongdoings, according to the Amended Complaint, are (i) that he allegedly had access, in his prior employment, to unnamed information regarding "the ZL architecture and software," and (ii) he was later hired by Shield Israel. Any implication by ZL that Gardner made any false or misleading description or representation of fact would therefore be wholly unsupported by the allegations in the Amended Complaint. Additionally, any inference that Gardner was involved in the conduct attributed to "Defendants" in ZL's First Cause of Action is barred. As this Court has recognized, "[w]here allegations lump[] all the defendants together in each claim and provide no factual basis to distinguish their conduct," a complaint "fails to meet [Rule 8's] minimum requirement," which may warrant dismissal. *SCE Grp. Inc. v. City of New York*, 18-CV-8909 (AT), 2020 WL 1033592, at *3 (S.D.N.Y. March 3, 2020). Plaintiff fails to plead a false designation of origin claim against Gardner.[3]

---

[3] To the extent applicable, Gardner adopts and joins the arguments raised in motions to dismiss the Amended Complaint filed by the other Defendants in this Action.

9

## II.     <u>Plaintiff Has Not Plausibly Alleged That Gardner Misappropriated Any of Its Proprietary and Confidential Information (Count II)</u>

New York law recognizes "two theories of common law unfair competition: palming or passing off, and misappropriation." *CDC Newburgh Inc. v. STM Bags, LLC*, 692 F. Supp. 3d 205, 225 (S.D.N.Y. 2023) (cleaned up). Courts define palming off as the "sale of the goods of one manufacturer as those of another," while misappropriation prohibits the taking and use of "the results of the skill, expenditures and labors of a competitor." *Id.* at 225–26. "Although unfair competition often involves misappropriation of trade secrets or ideas, a claim may be based on misappropriation of client lists, internal company documents, and business strategies if wrongful or fraudulent tactics are employed." *Barbagallo v. Marcum LLP*, 820 F. Supp. 2d 429, 447 (E.D.N.Y. 2011) (citation omitted).

To prevail on an unfair competition claim involving misappropriation, a plaintiff must "establish that the defendant: (1) misappropriated the plaintiff's labors, skills, expenditures, or good will; and (2) displayed some element of bad faith in doing so." *Skyline Risk Mgmt., Inc. v. Legakis*, 733 F. Supp. 3d 316, 326 (S.D.N.Y. 2024) (citing *Barbagallo*, 820 F. Supp. 2d at 447). In addition, "[i]n order to state a claim of unfair competition . . . under either a misappropriation or a palming off theory, a plaintiff must allege a likelihood of confusion or deception of the consuming public as to the source of the allegedly infringing product or service." *Vedder Software Grp. Ltd., v. Ins. Servs Offices, Inc.*, 11-CV-00369 (GTS/CFH), 2013 WL 12121098, at *7 (N.D.N.Y. March 22, 2013) (internal quotation marks omitted).

While Plaintiff's second cause of action is labelled as one for unfair competition by misappropriation, ZL appears to rely interchangeably on both palming off and

misappropriation. *Compare* Am. Compl. at ¶¶ 1, 62, 79 (alleging that Defendants "palmed off" ZL's technology "as Shield's own"), *with* Compl. at ¶¶ 1, 62, 76 (alleging that "[f]ollowing the misappropriation, Defendants incorporated ZL's intellectual property, including ZL's confidential and proprietary information, into Defendants' Nebula platform"). Regardless, Plaintiff's claim against Gardner fails.

First, although the Amended Complaint uses the term "palming off," ZL explicitly pleads that the Shield Defendants released *their own* software. *See e.g.*, Am. Compl. at ¶¶ 52, 55, 57. In the absence of any allegation that Defendants substituted their technology for Plaintiff's, a palming off claim cannot survive. *See Converged Compliance Solutions, Inc. v. XOP Networks, Inc.*, 21-CV-5482 (PGG/OTW), 2024 WL 4665114, at *14 (S.D.N.Y. Sept. 25, 2024) (finding that "Plaintiff fail[ed] to allege that [defendant] palmed off any of [plaintiff's] goods as their own; in fact, Plaintiff explicitly pleads that [defendant] sold their *own* product," and dismissing unfair competition claim) (emphasis in the original); *see also Empower Fed. Credit Union v. Empower Annuity Ins. Co. of Am.*, 23-CV-941 (BKS/MJK), 2024 WL 3639440, at *4–5 (N.D.N.Y. Aug. 2, 2024) ("Plaintiff's allegations regarding Defendant's alleged deception do not contain any facts indicating Defendant has attempted to sell its products as the products of Plaintiff. Failure to allege such facts has previously led to the dismissal of a palming off claim.") (internal citations omitted).

Second, even setting aside the palming off theory, Plaintiff fails to adequately allege that Gardner took and used the purportedly misappropriated information. The Amended Complaint merely claims that Gardner had access to general categories of information and skips over any purported misappropriation. *See* Am. Compl. at ¶ 74

11

("Defendant Gardner had full access to, and full knowledge of ZL's unified architecture solution, and improvements made to that solution from at least 2012 to 2022."), ¶ 76 ("Following the misappropriation…"). Crucially, the Amended Complaint falls short of pleading that Gardner had access to the *specific* information necessary to replicate ZL UA (without which Plaintiff's entire narrative—*i.e.*, that Defendants incorporated ZL's technology and sold the resulting technology as their own—necessarily falls). To be clear, the Amended Complaint does not assert that Gardner was ever employed as an engineer or product manager; instead, it states that Gardner served as "a point of contact for the Client account" and was later appointed to Vice-President, Compliance, Information Governance and Archiving. Plaintiff does not allege that either of these roles would have given Gardner access to the code underlying ZL's technology.

Moreover, Plaintiff does not allege that Gardner actually took and used ZL's information. *See ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478–79 (N.Y. 2007) ("Under New York law, an unfair competition claim involving misappropriation usually concerns the taking and use of the plaintiff's property to compete against the plaintiffs own use of the same property.") (quotation marks omitted). It is not sufficient that Gardner allegedly had knowledge of the ZL UA architecture; to be able to misappropriate that information, Gardner would have needed the expertise to either recreate ZL's technology himself or, at the very least, to instruct and guide the Shield Defendants' engineering teams. Without factual allegations—not legal conclusions—to that effect, Plaintiff's claim does not cross "the line from conceivable to plausible." *Elsevier*, 2018 WL 557906, at *2. Plaintiff's bald assertion that "[u]pon information and belief, data and architecture specific to ZL's unified platform … was incorporated into one or more versions of Nebula Intelligent

12

Archive, and other Shield Programs" (Am. Compl. at ¶ 54) does not help. Without any factual basis or suggestion that Plaintiff will ever be able to corroborate its "belief," such statement is nothing more than empty words. *See Lankau v. Luxoft Holding, Inc.*, 266 F. Supp. 3d 666, 673 (S.D.N.Y. 2017) ("While a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, such allegations must be accompanied by a statement of the facts upon which the belief is founded.") (quotation marks omitted).

In reality, Plaintiff has not and cannot allege misappropriation. ZL simply infers foul play from the alleged poaching of Gardner by the Shield Defendants and the purportedly suspicious timeline of Shield Israel's release of its technology. Even if the timeline ZL relies on was accurate—which it is not—the barebones allegations are insufficient. *See SS&C Tech. Holdings, Inc. v. Arcesium LLC*, 22-CV-02009 (TMR/OTW), 2024 WL 5186530, at *12 (S.D.N.Y. Dec. 20, 2024) (finding that plaintiff did not allege that defendant lacked expertise or "was incapable of independently developing [its own technology] in the timeframe that it took," and concluding that plaintiff's allegations did not "allow the court to draw a reasonable inference that the development timeline of [defendant's technology] was truncated as a result of any [trade secret] misappropriation.").

Third, the Amended Complaint's conclusory accusations that Defendants "acted with malice and bad faith," Am. Compl. at ¶ 78, absent supporting factual allegations, are plainly deficient. *See CDC Newburgh Inc*, 692 F. Supp. 3d at 226 ("[E]ven if the Court agreed with Plaintiff that Defendant committed misappropriation, Plaintiff's conclusory accusations that Defendants … 'acted with actual malice or with reckless disregard for the

13

truth of [the Reports]' and submitted the Reports … "with the intent to injure Plaintiff without regard for the accuracy of the statements" are, absent supporting factual allegations, conclusory, and thereby plainly insufficient to show that Defendant did so in 'bad faith,' as is necessary to state a plausible claim for misappropriation."); *see also Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 602 (E.D.N.Y. 2017) (finding that conclusory language was insufficient to support an inference of bad faith).

Finally, Plaintiff fails to plausibly allege a likelihood of confusion or deception of the consuming public. In conclusory fashion, the Amended Complaint states that the alleged unlawful acts "are designed to, and are, causing substantial confusion and deception among consumers in New York." Am. Compl. at ¶ 13. In relation to Plaintiff's third claim, the Amended Complaint also alleges that "Defendants' actions have caused confusion with, and have been mistaken for ZL's activities and achievements in the mind of the public, and are likely to cause such confusion or mistake." Am. Compl. at ¶ 84. As the Amended Complaint does not provide any example of confused "consumers" or members of the "public," the only possible factual basis for these legal conclusions is the allegation that the Shield Defendants and KLDiscovery used "ZL's purloined technology … to satisfy [a] request [for proposal from ZL and KLDiscovery's client]." Am. Compl. at ¶ 60. However, the Amended Complaint does not address the client's understanding of the source of the technology used to respond to the request. And stating that the public, or a specific consumer, is likely to be confused does not make it so.

### III. ZL's Claim for Unfair Competition by Creation of Confusion or Mistake Must be Dismissed as Insufficiently Pled and Duplicative of Plaintiff's Other Claims

Plaintiff's third cause of action fares no better than Counts I and II.

Apparently concerned that its other claims would not succeed, Plaintiff brings a generic claim for "creating confusion or mistake." But ZL fails to provide *any* color on the legal or factual basis for this claim, settling for conclusory statements instead. *See* Am. Compl. at ¶¶ 83–87. To be clear, all the Amended Complaint does is recite the possible elements of an unspecified violation committed by "Defendants" as a group, with no reference whatsoever to Gardner.[4]

Even if it was adequately pled, and it is not, Plaintiff's third claim should be dismissed as duplicative of Counts I and II. In the absence of any supporting allegations, Defendants must assume that ZL's third claim relies on the same hodge podge of facts and speculation, and seeks the same relief, as its Counts I and II. *See* Am. Compl. at ¶¶ 83 (incorporating by reference the preceding allegations), 87 (reiterating that Plaintiff is "entitled to damages in an amount to be proven at trial, plus punitive damages"). In the interest of efficiency, the cause of action should therefore be dismissed with prejudice. *See Sussman-Automatic Corp. v. Spa World Corp.*, 15 F. Supp. 3d 258, 272–73 (E.D.N.Y. 2014) (holding that "there is no specific Federal cause of action for unfair competition[, as] unfair competition under the Lanham Act is a category of claims consisting primarily of causes of action for false designation of origin and false advertising" and dismissing plaintiff's

---

[4] Assuming *arguendo* that ZL intends Count III to be a claim for unfair competition under New York common law, that claim must be dismissed due to the Complaint's failure to adequately allege bad faith *inter alia*. As courts in this circuit "clearly articulated," "an element of bad faith is essential to establishing liability on a claim of unfair competition." *Am. Broad. Cos., Inc. v. Flying J, Inc.*, 06-CV-2967 (DAB), 2007 WL 583176, at *9 (S.D.N.Y. Feb. 22, 2007).

claims for "unfair competition" under the Lanham Act and New York State common law as duplicative of plaintiff's trademark infringement and false advertising claims).

## CONCLUSION

For the foregoing reasons, the Court should enter an Order granting Gardner's motion to dismiss the Amended Complaint with prejudice, and such further relief as the Court deems just and proper.

Dated: New York, New York
August 7, 2025

                GROVE LAW PC

                */s/ Hannah Sholl*
                Hannah Sholl
                GROVE LAW PC
                1460 Broadway
                New York, New York 10036
                Tel: (646) 480-6408
                hsholl@grove.law

                *Attorney for Defendant Aaron Gardner*