UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZL TECHNOLOGIES, INC.,<br><br>     Plaintiff,<br><br> - against -<br><br>KLDISCOVERY ONTRACK, LLC; SHIELD FINANCIAL COMPLIANCE, LTD.; SHIELD FINANCIAL COMPLIANCE, INC.; and AARON GARDNER,<br><br>     Defendants. | Case No. 1:25-cv-02673-JPO<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT SHIELD FINANCIAL COMPLIANCE, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT WITH PREJUDICE PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(2) and 12(b)(6)**

ZEICHNER ELLMAN & KRAUSE LLP
730 Third Avenue
New York, New York 10017
Telephone: (212) 223-0400

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................... III

PRELIMINARY STATEMENT ...................................................................... 1

STATEMENT OF RELEVANT ALLEGATIONS AND FACTS ................................. 2

THE ALLEGED WRONGDOING BY DEFENDANTS AND RELATED FACTS ............................................................................................................ 2

OTHER FIRST AMENDED COMPLAINT (FAC) ALLEGATIONS AND FACTS RELEVANT TO THIS MOTION ............................................................. 5

I. THE COURT SHOULD DISMISS SHIELD ISRAEL FROM THIS ACTION WITH PREJUDICE UNDER FED. R. CIV. P. 12(B)(2) BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER SHIELD ISRAEL ................................................................................................................ 6

    A.    The Court Lacks General Personal Jurisdiction Over Shield Israel Because Shield Israel Is Neither a New York Corporation Nor Headquartered In New York ................................................................. 7

    B.    The Court Lacks Specific Personal Jurisdiction Over Shield Israel Because ZL Cannot Satisfy the Requirements of New York's Long-Arm Statute and Exercising Personal Jurisdiction Over Shield Israel Would Offend Due Process ............................................. 8

    1.    ZL Does Not Satisfy the Requirements of CPLR § 302(a)(1) Because the FAC Does Not Demonstrate Shield Israel Transacts Business or Contracts to Supply Goods or Services Within New York ................................................................................................... 10

    2.    ZL Does Not Satisfy the Requirements of CPLR § 302(a)(2) Because the FAC Does Not Demonstrate Shield Israel Committed Any Tortious Act Within New York ................................................. 11

    3.    Exercising Personal Jurisdiction Over Shield Israel Would Violate Due Process Because Shield Israel Has No Minimum Contacts With New York and Doing So Would Be Unreasonable ................... 12

        (i)    ZL Cannot Demonstrate Shield Israel has Minimum Contacts with New York ........................................................... 13

        (ii)    Exercising Jurisdiction Over Shield Israel Would Not Comport with Traditional Notions of Fair Play and Substantial Justice ..................................................................... 14

II. THE COURT SHOULD DISMISS ZL'S LANHAM ACT CLAIM
AGAINST SHIELD ISRAEL (COUNT ONE OF THE FAC) WITH
PREJUDICE UNDER RULE 12(B)(6) BECAUSE ZL FAILS TO ALLEGE
FACTS SHOWING THAT SHIELD ISRAEL COMMITED ACTS OF
INFRINGEMENT IN THE UNITED STATES, AND THE COURT
SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE TWO
REMAINING NEW YORK STATE CLAIMS ......................................................... 16

CONCLUSION ............................................................................................................ 18

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page(s)**

*Abitron Austria GmbH v. Hetronic International, Inc.*,
   600 U.S. 412 (2023) .........................................................................................2, 16, 17

*Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*,
   1 F.3d 848 (9th Cir. 1993) ...................................................................................15

*AmTrust Fin. Servs. v. Lacchini*,
   260 F. Supp. 3d 316 (S.D.N.Y. 2017) ................................................................11

*Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*,
   916 F. Supp. 1324 (S.D.N.Y. 1996) ....................................................................15

*Asahi Metal Indus. Co. v. Superior Court of Cal.*,
   480 U.S. 102 (1987) ..............................................................................13, 14, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .............................................................................................16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................16

*Bergrin v. U.S.*,
   2022 U.S. Dist. LEXIS 56029 (S.D.N.Y. Mar. 28, 2022) ..................................12

*Bonhac World Corp. v. Mellin Works LLC*,
   2023 U.S. Dist. LEXIS 10309 (S.D.N.Y. Jan. 20, 2023) ...................................11

*Brown v. Lockheed Martin Corp.*,
   814 F.3d 619 (2d Cir. 2016) ..............................................................................7, 8

*Celine S.A. v. Hongkong CSSBuy E-Commerce Co.*,
   2024 U.S. Dist. LEXIS 197474 (S.D.N.Y. Oct. 30, 2024) ...........................16, 17

*Charles Schwab Corp. v. Bank of Am. Corp.*,
   883 F.3d 68 (2d Cir. 2018) ..............................................................................12, 13

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ...............................................................................................7

*Green Earth Enter., LLC v. Sana Bens., Inc.*,
   2025 U.S. Dist. LEXIS 93795, *11 (S.D.N.Y. May 16, 2025) ..............................8

*Helio Logistics, Inc. v. Mehta*,
   2023 U.S. Dist. LEXIS 502 (S.D.N.Y. Jan. 3, 2023) ..........................................10

*Int'l Shoe Co. v. Wash.*,
   326 U.S. 310 (1945) .............................................................................................12

*J. McIntyre Mach., Ltd. v. Nicastro*,
 564 U.S. 873 (2011) ..............................................................................13

*JAPNA, Inc. v. Selfx Innovations Inc.*,
 2024 U.S. Dist. LEXIS 52774 (S.D.N.Y. Mar. 22, 2024) ......................6, 9

*JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*,
 828 F. App'x 740 (2d Cir. 2020) ............................................................9

*Jazini by Jazini v. Nissan Motor Co.*,
 148 F.3d 181 (2d Cir. 1998)..............................................................11, 13

*Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*,
 2018 U.S. Dist. LEXIS 152237 (S.D.N.Y. Sep. 4, 2018) ......................10

*Kee v. Det. Lions, Inc.*,
 2025 U.S. Dist. LEXIS 59545 (S.D.N.Y. Mar. 30, 2025) ......................7

*Kernan v. Kurz-Hastings, Inc.*,
 175 F.3d 236 (2d Cir. 1999) ..................................................................14

*King Cnty. v. IKB Deutsche Industriebank AG*,
 769 F. Supp. 2d 309 (S.D.N.Y. 2011) ..........................................7, 11, 15

*Kravitz v. Binda*,
 2020 U.S. Dist. LEXIS 10893 (S.D.N.Y. Jan. 21, 2020) ......................15

*MacDermid v. Deiter*,
 702 F.3d 725 (2d Cir. 2012) ..................................................................1

*McGowan v. Smith*,
 52 N.Y.2d 268 (1981) ............................................................................9

*Merck Eprova AG v. Gnosis S.p.A.*,
 2008 U.S. Dist. LEXIS 104712 (S.D.N.Y. Dec. 12, 2008) ....................7

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*,
 84 F.3d 560 (2d Cir. 1996) ..............................................................13, 15

*Nelson v. Mass. Gen. Hosp.*,
 2007 U.S. Dist. LEXIS 70455 (S.D.N.Y. Sep. 20, 2007) ......................9

*Raad v. Bank Audi S.A.L.*,
 2025 U.S. App. LEXIS 10087 (2d Cir. Apr. 28, 2025) ..........................10

*Nat'l Union Fire Ins. Co. of Pitt., P.A. v. UPS Supply Chain Sols., Inc.*,
 74 F.4th 66 (2d Cir. 2023) ....................................................................12

*Simonson v. Olejniczak*,
 2023 U.S. App. LEXIS 8950 (2d Cir. Apr. 14, 2023) ........................6, 15

*Sonera Holding B.V. v. Cukurova Holding A.S.*,
   750 F.3d 221 (2d Cir. 2014) ...........................................................................7

*Tymoshenko v. Firtash*,
   2013 U.S. Dist. LEXIS 43543 (S.D.N.Y. Mar. 26, 2013) ...........................................13

*Worldwide v. Infomir LLC*,
   2018 U.S. Dist. LEXIS 152237 (S.D.N.Y. Sep. 4, 2018) ...................................10, 11

*Zielinski v. Martuscello*,
   2025 U.S. Dist. LEXIS 75742 (S.D.N.Y. Apr. 21, 2025) ...........................................7

**Statutes**

15 U.S.C. §1125(a)(1)...............................................................................16, 17

28 U.S.C. § 1367 ....................................................................... *passim*

CPLR § 302 ....................................................................... *passim*

**Rules**

Fed. R. Civ. P. 12 ...............................................................................1, 6, 16

Defendant Shield Financial Compliance Ltd. ("Shield Israel") respectfully submits this Memorandum of Law in support of its motion to dismiss plaintiff ZL Technologies, Inc.'s ("ZL") first amended complaint ("FAC") with prejudice. *See* Fed. R. Civ. P. 12(b)(2) and 12(b)(6).[1]

## PRELIMINARY STATEMENT

In a FAC that remains full of conclusory assertions, missing facts, and improper group pleading, ZL alleges that defendants KLDiscovery Ontrack, LLC ("KLD"), Aaron Gardner ("Gardner"), Shield Financial Compliance Inc. ("Shield Delaware"), and Shield Israel misappropriated ZL's architectural software product, and violated the Lanham Act by confusing consumers regarding the origin of the Shield product. The Court should dismiss the FAC with prejudice as to Shield Israel for two independent reasons.

First, there is no personal jurisdiction – general or specific – over Shield Israel in the Southern District of New York. Shield Israel is a software company organized under the laws of Israel, with its principal office located at 7 Jabotinsky Street, Ramat Gan, 5270002, Israel, and it does not engage in a continuous and systematic course of doing business in New York. Thus, the Court lacks general personal jurisdiction over Shield Israel.

Likewise, there is no specific personal jurisdiction over Shield Israel. As explained in the accompanying declarations of Gadi Divald and Shiran Weitzman,[2] Shield activities in this judicial district are conducted by Shield Delaware, a wholly owned Delaware subsidiary formed in 2021

---

[1] Shield Delaware is separately filing a motion to dismiss the FAC as to it. In addition, KLD and Gardner are also filing motions to dismiss ZL's FAC. To the extent applicable, Shield Israel adopts and joins the arguments raised in those three other motions to dismiss.

[2] Gadi Divald is the Chief Financial Officer of Shield Israel. Declaration of Gadi Divald ("Divald Decl.") ¶ 1. Shiran Weitzman is the sole Director of Shield Delaware. Declaration of Shiran Weitzman ("Weitzman Decl.") ¶ 1. In considering a motion to dismiss for lack of personal jurisdiction, the Court may consider "affidavits and other written materials" outside of the pleadings. *See, e.g., MacDermid v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012).

with its headquarters in New York. Thus, the Court lacks specific personal jurisdiction over Shield Israel under New York's long-arm statute, and exercising jurisdiction over it here would offend constitutional due process. In the absence of either general or personal jurisdiction, the Court should dismiss Shield Israel from this litigation with prejudice. *See* Argument, Point I.

Second, the United States Supreme Court has held that the Lanham Act's "use in commerce" language limits the statute's reach to domestic conduct and infringement only. *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 600 U.S. 412, 415 (2023). Thus, Shield Israel's foreign business activities fall outside of territorial reach of the Lanham Act, requiring dismissal with prejudice of ZL's Lanham Act claim against Shield Israel (Count One of the FAC). *See* Argument, Point II. With the sole federal claim dismissed, the Court should exercise its discretion and decline supplemental jurisdiction over the two remaining New York state claims (Counts Two and Three of the FAC) against Shield Israel. *Id.*; 28 U.S.C. § 1367(c)(2), (3).

## STATEMENT OF RELEVANT ALLEGATIONS AND FACTS[3]

Below is a summary of the allegations of ZL's FAC relevant to this motion to dismiss. As many of ZL's allegations are factually incorrect and/or confusingly pled in a group manner, sworn facts are provided correcting the FAC's errors and improper group pleading.

**The Alleged Wrongdoing by**
**Defendants and Related Facts**

ZL brings three causes of action against each of the four captioned defendants: False Designation of Origin in violation of the Lanham Act (Count One); Unfair Competition by Misappropriation under New York law (Count Two); and Unfair Competition by Creating Confusion of Mistake under New York law (Count Three). Count Four (Breach of Contract) is

---

[3] This Statement of Allegations and Facts is supported by the Divald Decl. and the Weitzman Decl., filed contemporaneously herewith.

brought only against KLD. *See* FAC [ECF Dkt. No. 46] ¶¶ 63-101.

ZL alleges it is "in the business of providing 'big data' software services to its clients so that each client can meet standard judicial, regulatory and compliance requirements." FAC ¶ 14. As part of its business, ZL avers it has had a long-standing contractual relationship with defendant KLD and, pursuant to that relationship, disclosed to KLD its proprietary and secret unified architecture technology, incorporated in ZL's "UA (Unified Archive)" product, "now in version 9.1." *Id.* ¶¶ 1, 11, 15, 19, 27-32. "Over the years, ZL and KLD formed a close partnership in the provision of software services to one particular client, a multinational financial institution referred to hereinafter as the 'Client.'" *Id.* ¶ 1. "Client" is a Europe-based financial institution. Divald Decl. ¶ 13; Weitzman Decl. ¶ 12.

Client is a Shield Israel customer and an investor in Shield Israel. *See* FAC ¶¶ 56, 59; Divald Decl. ¶¶ 14-15. Client is not a customer of Shield Delaware. Weitzman Decl. ¶ 13. Rather, Shield Israel sells Shield products to Client in Europe. Divald Decl. ¶ 16.

ZL alleges that, in 2012, defendant Gardner began working for KLD as its "Vice-President Legal Technology Consulting" and, in 2015, was "appointed Vice-President, Compliance, Information Governance and Archiving." FAC ¶¶ 34, 37. In those KLD roles, Gardner allegedly "became privy to ZL's proprietary information, including ZL UA" and "became a point of contact" for Client at KLD. *Id.* ¶ 36.

ZL alleges that, between 2018 and 2020, KLD arranged "multiple demonstrations" in which "ZL's big data capabilities were presented to Shield." *Id.* ¶ 45. ZL does not identify where – in what country or what State – those demonstrations took place. *See id.* Nor does ZL allege these demonstrations were for the purpose of Shield Israel supplying goods or services in New York. *Id.*

ZL alleges that, "in January 2022," Shield Israel hired Gardner "as a Compliance

Strategist" to "gain access to ZL's solutions and architecture." *Id*. ¶¶ 50-51. In fact, "Shield Delaware hired [Gardner] as a Strategic Account Sales Manager in October 2022, and he began working for Shield Delaware in November 2022." Weitzman Decl. ¶ 8. From October 2022 through now, "Gardner has been employed by Shield Delaware and paid by Shield Delaware." *Id*. ¶ 9. "This includes salary, sales commission, the advance he was provided upon being hired, and an October 2023 bonus he received a year later." *Id*.

At Shield Delaware, Gardner "manages sales to certain of Shield Delaware's United States-based clients," and his "sales commissions are based only on his sales to Shield Delaware's United States-based clients." Weitzman Decl. ¶¶ 10-11, 13. Because "Gardner has no business dealings with Client," he "has never received any sales commissions from sales to Client." *Id*. ¶ 14.

ZL alleges that, through Gardner, "Defendants incorporated ZL's intellectual property and specific aspects and data of the ZL UA architecture, including ZL's confidential and proprietary information into Defendants' Nebula platform, and elsewhere." FAC ¶ 76. Thereafter, "Shield Israel and Shield Delaware [began to] palm off ZL's technology solutions as its/their own." *Id*. ¶ 1. ZL alleges that "[t]he Client, following the misappropriation, has begun migrating data from the ZL-KLD partnership, and presumably intends to seek software development and services from KLD and Shield instead." *Id*. ¶ 1. No lost sales or customers are identified by ZL in its FAC other than the Europe-based Client. *See id*. ¶¶ 14-62.

ZL never alleges that Shield Israel's services to the Client took place in, or will take place in, New York. In fact, Shield Israel conducts its businesses operations from Israel, and it sells Shield products to Client in Europe. Divald Decl. ¶¶ 4, 16. Further, although ZL broadly asserts that Shield Israel "ha[s] advertised in this Judicial District" (FAC ¶ 10), ZL does not allege a single specific advertisement of Shield Israel in New York; what it said; what was false; and to

whom it was made. ZL does not even allege that this supposed Shield "advertising" contained the terms "Unified Archive" or "ZL UA," or "UA" which appear to be the terms ZL contends are entitled to trademark protection under the Lanham Act. *See generally*, FAC ¶¶ 14-62 (Common Facts). ZL's allegations regarding the alleged improper use of "Unified Archive" or "ZL UA" or "UA" pertain solely to KLD. *See* FAC ¶¶ 40-44 and Exs. 3 and 4 (KLD Website pages). The FAC contains no allegation that those terms were ever stated on the Shield website. *Id.*

**Other First Amended Complaint (FAC)**
**Allegations and Facts Relevant to This Motion**

ZL provides specific facts establishing this Court's personal jurisdiction over every defendant but Shield Israel. FAC ¶ 13. As to Shield Israel, ZL merely contends, in purely conclusory, group pled fashion, that this Court "has personal jurisdiction over Defendants by virtue of their acts and omissions which have taken place in the State of New York, which are designed to, and are, causing substantial confusion and deception among consumers in New York." *Id.* No specific "acts or omissions" by Shield Israel are identified. *See, generally, id.* ¶¶ 14-62. Nor are any specific deceived "consumers in New York" identified by ZL. *Id.*

Equally conclusory is ZL's assertion that "Shield Israel and Shield Delaware are doing and transacting business in this Judicial District, have substantial contacts with this Judicial District, and … advertised in this Judicial District." *Id.* ¶ 10. ZL provides no specific facts identifying the business Shield Israel purportedly transacted in New York, Shield Israel's "substantial contacts" in New York, or any advertising by Shield Israel in New York. *See, generally*, FAC ¶¶ 14-62.

It is undisputed that Shield Israel and Shield Delaware are separate corporate entities. It is undisputed that Shield Israel is incorporated and headquartered outside the United States:

> Defendant Shield Financial Compliance, Ltd. is a corporation organized under the laws of Israel, and a resident and citizen of Israel. Its principal place of business is located at Z'butinski 7, Ramat Gan, Tel Aviv, Israel.

FAC ¶ 5; *see also* Divald Decl. ¶ 3 (same).

It is equally undisputed that Shield Delaware is incorporated and headquartered in the United States:

> Defendant Shield Financial Compliance, Inc. is a corporation organized under the laws of the State of Delaware, and upon information and belief is a citizen of the State of Delaware and a resident of New York.

FAC ¶ 6; Weitzman Decl. ¶ 3 (same). Per ZL, Shield Delaware was formed on December 7, 2021, before any of the alleged misappropriation by defendant Gardner at issue in this action. FAC ¶¶ 48, 50-51.

Shield Israel does not have any New York offices or New York employees. Divald Decl. ¶¶ 4-5. Shield Israel does not advertise or market itself in New York. *Id.* ¶ 6. After Shield Delaware was formed, Shield Israel has deliberately removed itself from the U.S. marketplace in favor of Shield Delaware, with the intention that Shield Delaware handle all U.S. clients on a going forward basis. *Id.* ¶¶ 6, 9-10; Weitzman Decl. ¶¶ 4-7. Accordingly, Shield Israel has only three direct relationships left in the U.S., two based in Texas and one based in Florida. Divald Decl. ¶ 9. Shield Israel has never previously sued or been sued in New York. *Id.* ¶ 7.

## ARGUMENT

I. **THE COURT SHOULD DISMISS SHIELD ISRAEL FROM THIS ACTION WITH PREJUDICE UNDER FED. R. CIV. P. 12(B)(2) BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER SHIELD ISRAEL**

On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, ZL "bears the burden of showing that the court has jurisdiction over the defendant." *Simonson v. Olejniczak*, 2023 U.S. App. LEXIS 8950, *2 (2d Cir. Apr. 14, 2023). ZL "cannot survive a motion to dismiss by pleading only conclusory non-fact-specific jurisdictional allegations." *JAPNA, Inc. v. Selfx Innovations Inc.*, 2024 U.S. Dist. LEXIS 52774, *9 (S.D.N.Y. Mar. 22, 2024) (internal citation omitted). Nor may ZL group plead, as it "bears the burden of demonstrating that the court may exercise jurisdiction

*over each defendant*." *King Cnty. v. IKB Deutsche Industriebank AG*, 769 F. Supp. 2d 309, 313 (S.D.N.Y. 2011) (emphasis added). [4] Thus, ZL must plead specific facts sufficient to "make a *prima facie* showing that the Court may exercise personal jurisdiction over [Shield Israel, and] it must establish that (1) jurisdiction is proper under New York State law, and (2) the exercise of personal jurisdiction comports with due process principles." *Merck Eprova AG v. Gnosis S.p.A.*, 2008 U.S. Dist. LEXIS 104712, *7 (S.D.N.Y. Dec. 12, 2008). ZL fails to do so here.

There are two types of personal jurisdiction over corporate defendants: specific personal jurisdiction and general personal jurisdiction. *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016). "Specific jurisdiction is available when the cause of action sued upon arises out of the defendant's activities in a state. General jurisdiction, in contrast, permits a court to adjudicate any cause of action against the corporate defendant, wherever arising, and whoever the plaintiff." *Id.* Neither general nor specific personal jurisdiction exists here as to Shield Israel.

A.     **The Court Lacks General Personal Jurisdiction Over Shield Israel Because Shield Israel Is Neither a New York Corporation Nor Headquartered In New York**

General jurisdiction over a foreign corporation is found if that corporation is engaged in "a continuous and systematic course of doing business in New York that a finding of its presence in New York is warranted." *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 (2d Cir. 2014). In other words, general jurisdiction exists when a foreign corporation is "essentially at home" in the forum state. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In turn, "a corporate defendant is 'essentially at home' only where it is incorporated or

---

[4] ZL's reliance on impermissible group pleading constitutes an independent and sufficient basis for dismissal of the FAC. *See, e.g., Zielinski v. Martuscello*, 2025 U.S. Dist. LEXIS 75742, at *7-8 (S.D.N.Y. Apr. 21, 2025) ("Where a plaintiff lumps all the defendants together in each claim and provides no factual basis to distinguish their conduct…the complaint fails to satisfy this minimum standard and dismissal of each claim, if not the entire complaint, is appropriate").

where it maintains its principal place of business except in a truly 'exceptional' case." *Kee v. Det.*
*Lions, Inc.*, 2025 U.S. Dist. LEXIS 59545, *7-8 (S.D.N.Y. Mar. 30, 2025) (quoting *Brown v.*
*Lockheed Martin Corp.*, 814 F.3d 619, 626 (2d Cir. 2016)). "[W]hen a corporation is neither
incorporated nor maintains its principal place of business in a state, mere contacts, no matter how
'systematic and continuous,' are extraordinarily unlikely to add up to an 'exceptional case.'"
*Brown*, 814 F.3d at 629.

It is undisputed that Shield Israel is an Israeli corporation with its principal place of
business in Ramat Gan, Israel. *See* FAC ¶ 5; Divald Decl. ¶ 3. Nor does ZL allege any facts
supporting an "exceptional case" for exercising personal jurisdiction over Shield Israel. Hence,
general personal jurisdiction does not exist over Shield Israel in this Court.

**B.      The Court Lacks Specific Personal Jurisdiction Over Shield Israel Because ZL
         Cannot Satisfy the Requirements of New York's Long-Arm Statute and Exercising
         Personal Jurisdiction Over Shield Israel Would Offend Due Process**

Specific jurisdiction exists if plaintiff can satisfy both New York's long-arm statute (CPLR
§ 302(a)) and due process under the United States Constitution. *Green Earth Enter., LLC v. Sana*
*Bens., Inc.*, 2025 U.S. Dist. LEXIS 93795, *11 (S.D.N.Y. May 16, 2025). ZL fails to make a *prima*
*facie* showing of either.

New York's long-arm statute sets forth the following criteria for establishing specific
personal jurisdiction over a defendant:

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the
acts enumerated in this section, a court may exercise personal jurisdiction over any non-
domiciliary, or his executor or administrator, who in person or through an agent:

1. transacts any business within the state or contracts anywhere to supply goods or
services in the state; or

2. commits a tortious act within the state, except as to a cause of action for
defamation of character arising from the act; or

3. commits a tortious act without the state causing injury to person or property

within the state, except as to a cause of action for defamation of character arising from the act, if he

> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

> (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

4. owns, uses or possesses any real property situated within the state.

NY CPLR § 302(a).

"[A] court may exercise [specific] jurisdiction over a foreign defendant pursuant to New York's long-arm statute…when the plaintiff's claim relates directly to the defendant's New York contacts." *Nelson v. Mass. Gen. Hosp.*, 2007 U.S. Dist. LEXIS 70455, *44-45 (S.D.N.Y. Sep. 20, 2007). "[T]here must have been some purposeful activities within [New York State] that would justify bringing the non-domiciliary defendant before the New York courts." *McGowan v. Smith*, 52 N.Y.2d 268, 271 (1981).

ZL attempts to plead a basis under New York's long-arm statute for personal jurisdiction over Shield Israel under CPLR §§ 302(a)(1) and (a)(2) by summarily alleging that Shield Israel transacts business and/or committed a tort within New York. *See* FAC ¶¶ 10, 13.[5] These conclusory FAC allegations, however, are devoid of any specific facts as to Shield Israel. *Id.* Such allegations are insufficient for ZL to meet its *prima facie* burden of proof. *JCorps Int'l, Inc. v. Charles & Lynn Schusterman Family Found.*, 828 F. App'x 740, 746 (2d Cir. 2020) ("'sparse' and 'conclusory' allegations are insufficient 'to make a prima facie showing of personal jurisdiction'"); *JAPNA Inc.*, 2024 U.S. Dist. LEXIS 52774, at *9 (a plaintiff "cannot survive a motion to dismiss by pleading only

---

[5] ZL does not appear to be alleging in its FAC that specific personal jurisdiction over Shield Israel exists under CPLR § 302(a)(3) or § 302(a)(4).

conclusory non-fact specific jurisdictional allegations").

1. **ZL Does Not Satisfy the Requirements of CPLR § 302(a)(1) Because the FAC Does Not Demonstrate Shield Israel Transacts Business or Contracts to Supply Goods or Services Within New York**

CPLR § 302(a)(1) permits a court to exercise personal jurisdiction over a non-domiciliary who "transacts any business within the state or contracts anywhere to supply goods or services in the state," provided the cause of action arises from those New York activities. CPLR § 302(a)(1); *Raad v. Bank Audi S.A.L.*, 2025 U.S. App. LEXIS 10087, *2-3 (2d Cir. Apr. 28, 2025).

As to supplying goods or services in New York, ZL "must allege more than that a defendant offers a product outside New York for sale in New York, if no sale has taken place in New York (or to a New York resident)." *Helio Logistics, Inc. v. Mehta*, 2023 U.S. Dist. LEXIS 502, *23 (S.D.N.Y. Jan. 3, 2023). Additionally, mere "sales into the United States, or to United States subscribers, are insufficient under New York's long-arm statute; the defendant must have transacted business or supplied goods or services 'in New York.'" *Joint Stock Co. Channel One Russ. Worldwide v. Infomir LLC*, 2018 U.S. Dist. LEXIS 152237, *36 (S.D.N.Y. Sep. 4, 2018) (quoting CPLR § 302(a)(1)).

Here, ZL does not allege that Shield Israel (as opposed to Shield Delaware) transacts business or supplied goods or services in New York, or even in the United States. In this regard, the only facts even arguably provided regarding any sale by Shield Israel is a transaction with the Client, which is a European entity. FAC ¶¶ 61-62; Divald Decl. ¶ 13; Weitzman Decl. ¶ 12. Even there, ZL never alleges that the Client transaction(s) took place in New York. Similarly, regarding the purported "demonstrations" between KLD and "Shield" from 2018 through 2020, ZL does not allege these demonstrations took place in New York (or anywhere within the United States), or that the purpose of those demonstrations was to supply Shield goods and services in New York. *See* FAC ¶ 45.

ZL's attempt to treat the actions of Shield Israel and Shield Delaware as one and the same for pleading purposes, or to hold Shield Israel responsible for the actions of Shield Delaware, should be rejected by the Court. It is perfectly proper for a "foreign corporation [to have] carefully structured its business so as to separate itself from the operation of its wholly owned subsidiaries in the United States." *Jazini by Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185-86 (2d Cir. 1998). And personal jurisdiction under CPLR § 302(a)(1) requires that "[e]ach defendant's contacts with the forum … be assessed individually." *AmTrust Fin. Servs. v. Lacchini*, 260 F. Supp. 3d 316, 326-27 (S.D.N.Y. 2017); *accord IKB Deutsche Industriebank*, 769 F. Supp. 2d at 313 (plaintiff "bears the burden of demonstrating that the court may exercise jurisdiction over each defendant"). Hence, ZL's bald, fact-free assertions that "Shield Israel and Shield Delaware" are doing and transacting business, have substantial contacts, and have advertised in this judicial district do not meet ZL's burden as to Shield Israel under New York's long-arm statute.

Nor has ZL met its burden of alleging facts showing "an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York." *Infomir LLC*, 2018 U.S. Dist. LEXIS 152237, at *36. Because ZL asserts no facts showing that Shield Israel transacted business in, or sold goods or services to, New York, *a fortiori*, ZL cannot show it suffered injury arising from any New York activities by Shield Israel.

### 2. ZL Does Not Satisfy the Requirements of CPLR § 302(a)(2) Because the FAC Does Not Demonstrate Shield Israel Committed Any Tortious Act Within New York

CPLR § 302(a)(2) permits courts to exercise personal jurisdiction over a non-domiciliary "who in person or through an agent...commits a tortious act within the state." *Bonhac World Corp. v. Mellin Works LLC*, 2023 U.S. Dist. LEXIS 10309, *14 (S.D.N.Y. Jan. 20, 2023); CPLR § 302(a)(2). "[T]he Second Circuit continues to adhere to the traditional, stricter rule … that a defendant's physical presence in New York is a prerequisite to jurisdiction under § 302(a)(2)." *Id.*

ZL fails specifically to allege any tortious act by Shield Israel in New York, or that Shield Israel was physically present in New York. *See generally*, FAC. Unlike Shield Delaware and Gardner, who reside in New York, Shield Israel resides in Israel. *Id.* ¶ 5; Divald Decl. ¶ 3. Shield Israel has no (i) New York offices; (ii) New York employees; (iii) direct New York business operations; or (iv) New York advertisements or marketing intended to create sales for Shield Israel in New York. Divald Decl. ¶¶ 4-6, 8-9. Indeed, "Shield Delaware was incorporated to sell Shield products in the United States in U.S. customers." *Id.* ¶ 8. Under these circumstances, and in the absence of pled facts showing a tortious act *by Shield Israel* in New York, there is no basis for the exercise of personal jurisdiction over Shield Israel pursuant to CPLR § 302(a)(2).

### 3. Exercising Personal Jurisdiction Over Shield Israel Would Violate Due Process Because Shield Israel Has No Minimum Contacts With New York and Doing So Would Be Unreasonable

"Because New York's long-arm statute does not authorize personal jurisdiction over [Shield Israel] in this action, [this court] need not decide whether exercising such jurisdiction would comport with constitutional due process" and should simply dismiss the FAC against Shield Israel. *Nat'l Union Fire Ins. Co. of Pitt., P.A. v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66, 73 (2d Cir. 2023). But if the Court conducted such an analysis, ZL has not alleged sufficient facts to establish that exercising personal jurisdiction over Shield Israel would accord with constitutional due process.

Due process requires that defendants have "certain minimum contacts with the forum state such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Bergrin v. U.S.*, 2022 U.S. Dist. LEXIS 56029, *29 (S.D.N.Y. Mar. 28, 2022) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Minimum contacts exists "where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir.

2018). "The inquiry for whether exercising jurisdiction comports with fair play and substantial justice relies on five "reasonableness" factors: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 574 (2d Cir. 1996). This "reasonableness" due process inquiry is akin to a sliding scale: "the weaker the plaintiff's showing on minimum contacts, the less a defendant need to show in terms of unreasonableness to defeat jurisdiction." *Tymoshenko v. Firtash*, 2013 U.S. Dist. LEXIS 43543, *14-16 (S.D.N.Y. Mar. 26, 2013). "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 115 (1987). "[T]hose who live or operate primarily outside a State have a due process right not to be subjected to judgment in its courts as a general matter." *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 881 (2011).

### (i)    ZL Cannot Demonstrate Shield Israel has Minimum Contacts with New York

ZL cannot satisfy the "minimum contacts" prong as it has alleged no facts showing that Shield Israel "purposefully avail[ed] itself of the privilege of doing business" in New York, and "could foresee being haled into court there." *Charles Schwab*, 883 F.3d at 82. To the contrary, in 2021, before the asserted wrongdoing ZL pleads here, Shield Israel established a wholly owned subsidiary, Shield Delaware, "to sell Shield products in the United States to U.S. customers." Divald Decl. ¶ 8; Weitzman Decl. ¶ 4. The Second Circuit recognizes that what Shield Israel did – structure its business to separate its operations from its U.S. operations – is rational and reasonable. *Jazini by Jazini*, 148 F.3d at 185-86. Since 2021, Shield Israel conducts all its

operations exclusively from Israel and maintains no office, employees, or direct customers in New York. Divald Decl. ¶¶ 4-6, 8-9. New York business activities are the province of Shield Delaware. Weitzman Decl. ¶¶ 3-7.

### (ii) Exercising Jurisdiction Over Shield Israel Would Not Comport with Traditional Notions of Fair Play and Substantial Justice

As ZL cannot establish Shield Israel has minimum contacts with New York, this Court need not assess whether exercising personal jurisdiction over Shield Israel comports with traditional notions of "fair play and substantial justice." If it did, each of the five "reasonableness" factors for determining "fair play and substantial justice" strongly weigh in favor of dismissing Shield Israel from this action.

First, exercising jurisdiction would impose a substantial burden on Shield Israel by forcing it to defend a suit in New York. *See Kernan v. Kurz-Hastings, Inc.*, 175 F.3d 236, 244 (2d Cir. 1999) ("There would, of course, be a substantial burden imposed on Navitas, a Japanese manufacturer, if it is forced to defend a suit in New York"). Shield Israel is an Israeli company, and its employees are located in Israel. Divald Decl. ¶¶ 3-5. It operates in Israel, has no physical presence in New York, and has not sued or been sued in New York. *Id.* ¶¶ 3-5, 7. Accordingly, this factor, which is given "significant weight in assessing the reasonableness of extending personal jurisdiction over national borders," weighs sharply in favor of dismissal. *Asahi*, 480 U.S. at 105.

Second, New York has no substantial interest in the dispute, which involves a California plaintiff (ZL); a Minnesota defendant (KLD); a Delaware defendant (Shield Delaware); an Israeli defendant (Shield Israel); and a European Client. FAC ¶¶ 2, 4-6. "Because [plaintiff ZL] is not a [New York] resident, [New York]'s legitimate interests in the dispute have considerably diminished." *Asahi*, 480 U.S. at 114. Where, as here, the pending litigation has slight, if any,

practical import to the citizens of New York, this factor favors dismissal. *Id.* at 114-16.

Third, in considering the plaintiff's interest in obtaining convenient and effective relief, the courts focus on whether the plaintiff is a citizen of the chosen forum. *Metro. Life Ins. Co.*, 84 F.3d at 574. Here, ZL is not a New York company, but a California company located in California. *See* FAC ¶ 2.

Fourth, in considering the efficient administration of justice, a court "generally considers where witnesses and evidence are likely to be located." *Kravitz v. Binda*, 2020 U.S. Dist. LEXIS 10893, *28 (S.D.N.Y. Jan. 21, 2020). Indeed, "[t]he site where the injury occurred and where the evidence is located usually will be the most efficient forum." *Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc.*, 1 F.3d 848, 852 (9th Cir. 1993). Witnesses and documents are likely to be found in California (ZL), Minnesota (KLD), Israel (Shield Israel), and Europe (Client), in addition to New York (Gardner and Shield Delaware) (FAC ¶¶ 2, 4-5), and the purported injury occurred where the alleged victim, products, and/or customers are located (California, Israel, and Europe).

Fifth, "public policy" involves "the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction" in the Southern District of New York. *Asahi*, 480 U.S. at 115. ZL, who carries the burden of proof on a challenge to personal jurisdiction (*see Simonson*, 2023 U.S. App. LEXIS 8950, at *2; *IKB Deutsche Industriebank*, 769 F. Supp. 2d at 313), identifies no New York public policy that would be offended if the Court were to decline to exercise personal jurisdiction over Shield Israel. Further, a "foreign nation presents a higher sovereignty barrier than another state within the United States" as "the risk of conflict with a foreign sovereignty may undermine the reasonableness of personal jurisdiction." *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*, 916 F. Supp. 1324, 1336 (S.D.N.Y. 1996). Thus, this last factor, like the previous four, supports dismissing Shield Israel from this litigation.

For all the foregoing reasons, the Court should not exercise personal jurisdiction over Shield Israel. Instead, the Court should dismiss Shield Israel from this action with prejudice under Fed. R. Civ. P. 12(b)(2).

**II.    THE COURT SHOULD DISMISS ZL'S LANHAM ACT CLAIM AGAINST SHIELD ISRAEL (COUNT ONE OF THE FAC) WITH PREJUDICE UNDER RULE 12(b)(6) BECAUSE ZL FAILS TO ALLEGE FACTS SHOWING THAT SHIELD ISRAEL COMMITED ACTS OF INFRINGEMENT IN THE UNITED STATES, AND THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE TWO REMAINING NEW YORK STATE CLAIMS**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 553-54 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S at 678. "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do.'" *Twombly*, 550 U.S. at 555. ZL cannot assert a plausible Lanham Act claim against Shield Israel because ZL has not, and cannot, allege facts showing that Shield Israel committed acts of infringement in the United States.

In *Abitron Austria GmbH v. Hetronic Int'l, Inc.*, the U.S. Supreme Court held that Lanham Act claims, including those under 15 U.S.C. §1125(a)(1), do not extend to extraterritorial conduct. 600 U.S. 412, 415 (2023). The Court explained that the phrase "use in commerce" in the statute meant that the Lanham Act "extend[s] only to claims where the claimed infringing use in commerce is domestic." *Id. Abitron* involved foreign defendants selling products bearing allegedly infringing marks primarily outside the United States, and the Court concluded that those foreign sales were outside the Lanham Act's reach. *Id.*

Subsequently, in *Celine S.A. v. Hongkong CSSBuy E-Commerce Co.*, 2024 U.S. Dist. LEXIS 197474, *11 (S.D.N.Y. Oct. 30, 2024), this Court addressed the territorial scope of a preliminary injunction sought by plaintiffs against an online platform defendant (whose business activities were all in China) facilitating the sale of counterfeit goods. Plaintiffs alleged, *inter alia*, the defendant's activities infringed upon their trademarks under §1125(a)(1) of the Lanham Act. *Id.* at *3. This Court found that, although defendant's direct sales to U.S. customers constituted domestic conduct actionable under §1125(a)(1) of the Lanham Act, the injunction could not extend beyond defendant's sales to U.S. customers in the United States, rejecting a worldwide injunction. *Id.* at *14-15.

ZL has not alleged any facts showing that Shield Israel has committed acts of infringement in the United States. *See* Statement of Relevant Allegations and Facts, *supra*. ZL's allegation of "actual confusion" in two instances (FAC ¶ 65) lacks any specification that such actions or confusion occurred in the United States or were caused by Shield Israel's actions. Similarly, the Divald Declaration confirms that its sales to Client, a Europe-based financial institution, occur in Europe. Divald Decl. ¶ 16. Any alleged confusion or palming off is therefore extraterritorial and outside the Lanham Act's scope. *Abitron*, 600 U.S. 412, 422-23. ZL's failure to plead specific facts tying its allegations concerning Shield Israel to U.S. commerce renders ZL's Lanham Act claim under §1125(a)(1) implausible (*Iqbal*, 556 U.S. at 678), and ripe for dismissal. *See Abitron, supra; Celine, supra*.

With the federal claim dismissed, the Court should exercise its discretion and decline supplemental jurisdiction over the two remaining New York state claims against Shield Israel. This is certainly true if the Court dismisses the Lanham Act claim against all the defendants, for the many reasons stated in their respective motions to dismiss. *See* 28 U.S.C. § 1367(c)(3). But even if the

Lanham Act claim survive dismissal as to any other defendant, the Court should still decline supplemental jurisdiction over the New York state claims against Shield Israel, as those state claims predominate in this action. *See* 28 U.S.C. § 1367(c)(2). A plain reading of the FAC demonstrates that ZL's primary allegations involve a breach of contract against KLD and unfair competition rather than any federal Lanham Act claim. Thus, the Court should decline supplemental jurisdiction here.

## CONCLUSION

For the foregoing reasons, and those set forth in the co-defendants' motions to dismiss, the Court should (i) dismiss the FAC as to Shield Israel with prejudice, and (ii) grant Shield Israel such other and further relief as the Court deems just and proper.

Dated: August 7, 2025
      New York, New York

Respectfully submitted,

*/s/ Yoav M. Griver*
Yoav M. Griver
Scott B. Brenner
ZEICHNER ELLMAN & KRAUSE LLP
730 Third Avenue
New York, New York 10017

*Attorneys for Defendants Shield Financial Compliance, Ltd. and Shield Financial Compliance, Inc.*

**CERTIFICATE OF COMPLIANCE WITH
TYPEFACE AND WORD COUNT LIMITATIONS**

1. This document complies with the type-volume limit of EDNY-SDNY Joint Local Rule 7.1 because, excluding the parts of the document exempted by that rule, it contains **5815** words.

2. This document complies with the typeface requirements of EDNY-SDNY Joint Local Rule 7.1 because it has been prepared with one-inch margins in a proportionally spaced typeface using Microsoft Word in 12-point font in Times New Roman type style.

Dated: August 7, 2025
New York, NY

*/s/ Yoav M. Griver*
Yoav M. Griver