**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

ZL TECHNOLOGIES, INC.,

                                   Plaintiff,

-against-

SHIELD FINANCIAL COMPLIANCE, LTD.;
SHIELD FINANCIAL COMPLIANCE, INC.;
KLDISCOVERY ONTRACK, LLC and
AARON GARDNER,

                                   Defendants.

---

Case No. 1:25-cv-2673-JPO

**ORAL ARGUMENT
REQUESTED**

 

**MEMORANDUM OF LAW IN SUPPORT OF
KLDISCOVERY ONTRACK, LLC'S MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................1

II.   BACKGROUND ..........................................................................................2

III.  LEGAL STANDARD ....................................................................................4

IV.   ARGUMENT................................................................................................5

    A.    ZL Fails to State a Claim for False Designation of Origin Under the
        Lanham Act. ............................................................................................5

        1.    ZL's Lanham Act claim is barred by the statute of limitations. ......5

        2.    ZL does not allege adequate facts showing a valid mark or a
            likelihood to cause confusion. ........................................................6

            (a)    ZL fails to allege use of a valid mark entitled to protection.
                  ...........................................................................................7

            (b)    ZL fails to adequately allege a likelihood of consumer
                  confusion. .......................................................................9

    B.    ZL's Second Cause of Action Fails to Adequately Allege a
        Misappropriation Theory of Unfair Competition Under New York
        Common Law. ........................................................................................12

    C.    ZL Fails to Adequately Allege a Claim for Causing Confusion of Mistake
        ..............................................................................................................15

    D.    ZL's Breach of Contract Claim Should be Dismissed............................15

        1.    ZL fails to attach the operative contract or describe the provisions
            that were allegedly violated........................................................16

        2.    The PLLA has been expired since April 30, 2018, at the very
            latest....................................................................................18

        3.    Since the PLLA has been expired since April 30, 2018, ZL's
            claims that rely on it must be dismissed. ......................................18

    E.    The AC Should be Dismissed for the Reasons Set Forth in the Motion
        Filed by Defendant Aaron Gardner. .......................................................20

    F.    As ZL Has Already Amended Its Complaint, the AC Should be Dismissed
        with Prejudice. ......................................................................................21

V.    CONCLUSION............................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ................................................................................................. 4

*Atuahene* v. *City of Hartford*,
    10 F. App'x 33 (2d Cir. 2001) ................................................................................ 13

*Ballard* v. *Tingue Mills, Inc.*,
    128 F. Supp. 683 (D. Conn. 1954) ......................................................................... 19

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 4

*Carson Optical, Inc.* v. *Prym Consumer USA, Inc.*,
    No. 11-CV-3677-ARL, 2013 WL 1209041 (E.D.N.Y. Mar. 25, 2013) ..................... 14

*CDC Newburgh Inc.* v. *STM Bags, LLC*,
    692 F. Supp. 3d 205 (S.D.N.Y. 2023) ..................................................................... 12

*Chambers* v. *Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) ..................................................................................... 3

*Charles Atlas, Ltd.* v. *DC*, 112 F. Supp. 2d 330 (S.D.N.Y. 2000) .......................................... 6

*Charles Atlas, Ltd* v. *DC Comics, Inc.*,
    112 F. Supp. 2d 330, 334 (S.D.N.Y. 2000) .............................................................. 6

*Citizens United* v. *Schneiderman*,
    882 F.3d 374 (2d Cir. 2018) ..................................................................................... 4

*Computer Assocs. Int'l Inc.* v. *Computerized Data Mgmt., Inc.*,
    889 F. Supp. 630 (E.D.N.Y. 1995) .......................................................................... 15

*Conopco, Inc.* v. *Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996) ....................................................................................... 5

*deVere Grp. GmbH* v. *Opinion Corp.*,
    877 F. Supp. 2d 67 (E.D.N.Y. 2012) ...................................................................... 11

*In re DNI Holdings Ltd.*,
    77 U.S.P.Q.2d 1435, 2005 WL 3492365 (T.T.A.B. 2005) ........................................ 9

*Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*,
    375 F.3d 168 (2d Cir. 2004) ................................................................................... 16

*Fed. Hous. Fin. Agency* v. *Credit Suisse Holdings (USA), Inc.*,
    11-CV-6200-DLC, 2012 WL 13395966 (S.D.N.Y. Dec. 5, 2012)............................20

*Ferring B.V.* v. *Allergan, Inc.*,
    4 F. Supp. 3d 612 (S.D.N.Y. 2014) .........................................................................14

*Guary* v. *Winehouse*,
    235 F.3d 792 (2d Cir. 2000) ....................................................................................21

*Holborn Corp.* v. *Sawgrass Mutual Ins. Co.*,
    304 F. Supp. 3d 392 (S.D.N.Y. 2018) .....................................................................12

*Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*,
    157 F. Supp. 3d 352 (S.D.N.Y. 2016), *aff'd*, 850 F. App'x 38 (2d Cir.
    2021) ........................................................................................................................17

*Kellner* v. *Kener*,
    209 A.D. 844 (App. Div. 1924), *aff'd*, 147 N.E. 178 (1924) ...............................18, 19

*Lan Sang* v. *Ming Hai*,
    951 F. Supp. 2d 504 (S.D.N.Y. 2013)..................................................................16, 17

*LBBW Luxemburg S.A.* v. *Wells Fargo Sec. LLC*,
    10 F. Supp. 3d 504 (S.D.N.Y. 2014) .......................................................................19

*LVL XIII Brands, Inc.* v. *Louis Vuitton Malletier S.A.*,
    209 F. Supp. 3d 612 (S.D.N.Y. 2016) .....................................................................14

*McKenzie* v. *Artists Rts. Soc'y, Inc.*,
    757 F. Supp. 3d 427 (S.D.N.Y. 2024)....................................................................5, 6

*MidCap Bus. Credit, LLC* v. *MidCap Fin. Tr.*,
    655 F. Supp. 3d 193 (S.D.N.Y. 2023)..................................................................10, 12

*Patsy's Italian Rest., Inc.* v. *Banas*,
    658 F.3d 254 (2d Cir. 2011) ......................................................................................7

*Playtex Prods., Inc.* v. *Ga.-Pac. Corp.*,
    390 F.3d 158 (2d Cir. 2004) ......................................................................................8

*Polaroid* v. *Polarad Elecs. Corp.*,
    287 F.2d 492 (2d Cir. 1961) ....................................................................................10

*Portkey Techs. Pte Ltd.* v. *Venkateswaran*,
    No. 23-CV-5074-JPO, 2024 WL 3487735 (S.D.N.Y. July 19, 2024).......................10

*Saratoga Vichy Spring Co.* v. *Lehman*,
    625 F.2d 1037 (2d Cir. 1980) ..................................................................................12

*Savin Corp.* v. *Savin Grp.*,
　391 F.3d 439 (2d Cir. 2004) ........................................................................11

*Star Indus., Inc.* v. *Bacardi & Co. Ltd.*,
　412 F.3d 373 (2d Cir. 2005) ........................................................................10

*Starbucks Corp.* v. *Wolfe's Borough Coffee, Inc.*,
　588 F.3d 97 (2d Cir. 2009) ..........................................................................11

*Telebrands Corp.* v. *Del Labs., Inc.*,
　719 F. Supp. 2d 283 (S.D.N.Y.2010) ...........................................................8

*Time, Inc.* v. *Petersen Pub. Co. L.L.C.*,
　173 F.3d 113 (2d Cir. 1999) ......................................................................7, 8

*Travis* v. *Bank of Am., N.A.*,
　2023 WL 4350797 (S.D.N.Y. July 5, 2023).............................................5, 20

*Trombetta* v. *Novocin*,
　414 F. Supp. 3d 625 (S.D.N.Y 2019) ........................................................7, 9

*Turnipseed* v. *Simply Orange Juice Co.*,
　20-CV-8677-NSR, 2022 WL 657413 (S.D.N.Y. 2022) ...............................21

*Twitchell* v. *Town of Pittsford*,
　106 A.D.2d 903 (App. Div. 1984) *aff'd*, 489 N.E.2d 250 (1985) ..............18

*Twohig* v. *Shop-Rite Supermarkets, Inc.*,
　519 F. Supp. 3d 154, 168 (S.D.N.Y. 2021) .................................................21

*United Merch. Wholesale, Inc.* v. *IFFCO, Inc.*,
　51 F. Supp. 3d 249 (E.D.N.Y. 2014) .............................................................8

*Verschleiser* v. *Frydman*,
　22-CV-7909-JGK, 2023 WL 5835031 (S.D.N.Y. Sept. 7, 2013)...................7

*Willis Re Inc.* v. *Herriott*,
　550 F. Supp. 3d 68 (S.D.N.Y. 2021) ...........................................................12

*Xerox Corp.* v. *Loc. 14A, Rochester Reg'l Joint Bd., Xerographic Div.*
　*Workers United*,
　128 F.4th 93 (2d Cir. 2025) .........................................................................18

*XL Specialty Ins. Co.* v. *Fracht FWO Inc.*,
　No. 24-CV-1987-JSR, 2025 WL 1275879 (S.D.N.Y. May 2, 2025) ...........20

**Statutes**

15 U.S.C. § 1125(a) .................................................................................2, 5, 7

**Other Authorities**

Fed. R. Civ. P. 8 ..........................................................................................................13

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 3, 4, 5

Defendant KLDiscovery Ontrack, LLC ("KLD" or "KLDiscovery"; f/k/a "Renew Data Corp.") respectfully submits this memorandum of law in support of its motion, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims asserted by Plaintiff ZL Technologies, Inc. ("ZL" or "Plaintiff"; f/k/a "ZipLip, Inc.").

## I.    PRELIMINARY STATEMENT

ZL's amended complaint again misses the mark and, this time, commits errors that are quite shocking.  After stepping back to amend an initial complaint rife with defects, including a failure to attach the alleged contract that was the subject of its central claims, ZL this time appends contracts that fare no better.  One of the attached contracts has been expired for more than seven years.  The other is an inconsistently and oddly redacted contract between KLDiscovery and an entity not even named in this lawsuit.  This is not the work of a careful plaintiff; it is the product of careless and inadequate pleading.

ZL appears to have filed this case because it is dissatisfied with the direction of a long-standing commercial relationship with KLDiscovery, a global software and technology company.  And instead of accepting the consequences of a changing marketplace, ZL has turned to litigation, relying on an amended complaint (the "AC") that suffers many of the same defects as the original complaint, and more.  The AC should, therefore, be dismissed in its entirety with prejudice.

First, the Lanham Act claim is untimely.  ZL concedes that it should have first been on notice of the alleged trademark infringement more than seven years ago, which is well beyond the six-year statute of limitations.  Regardless, the Lanham Act claim fails to assert a valid mark or a likelihood of confusion, causing this claim to collapse under the weight of Rule 12(b)(6).

1

ZL's misappropriation theory of unfair competition is equally defective. Just as in the original complaint, ZL relies on sweeping, undifferentiated allegations that lump the defendants together. The AC fails to allege any conduct specific to KLDiscovery that would make out non-conclusory bad faith allegations as required for an unfair competition claim under New York law. ZL also fails to plead *any* of the elements required to set forth a causing confusion or mistake theory of unfair competition relating to KLDiscovery—the same defects that plague its Lanham Act claim.

Finally, ZL's breach of contract claim *still* fails to satisfy even the most basic pleading requirement. ZL appends an expired, invalid contract and an agreement that inconsistently redacted the names of the parties to the contract, and clearly *does not* govern a relationship between ZL and KLDiscovery. This error raises eyebrows and is also a fatal omission under New York law.

In sum, the Complaint lacks adequate alleged facts, fails to plead essential elements of the claims, and offers only the thinnest thread of plausibility. Dismissal with prejudice is the only proper course here.

## II.   BACKGROUND

The AC alleges four causes of action: (1) false designation of origin under 15 U.S.C. § 1125(a); (2) unfair competition (misappropriation); (3) unfair competition (confusion or mistake); and (4) breach of contract. *Id.* ¶¶ 63, 72, 83, 88. ZL alleges that, starting in 2006, KLDiscovery and ZL worked together to provide technical services to the (unnamed) "Client." AC ¶¶ 1, 27. The partnership was allegedly governed by a "Software Development License and Services Agreement," which the AC defines as the "SDLSA." *See id.* ¶ 11. As an aside, the original complaint was deficient because it failed to append a copy of the alleged contract between KLDiscovery and ZL, *see generally* ECF No. 4, and

the AC (incredibly) repeats that error. Specifically, despite amending its original complaint to overcome its failure to attach the relevant agreement, ZL has still failed to attach the software license agreement that allegedly governs the relationship between ZL and KLDiscovery. Instead, the agreement that ZL has appended to the AC as Exhibit 1 is, in fact, an agreement between KLDiscovery and the Client.[1] *See* ECF No. 46-1. The AC also appends an expired Private Label License Agreement ("PLLA"), as Exhibit 2. *See* ECF No. 46-2.

The AC also purports to allege facts supporting a Lanham Act claim for an alleged trademark for the words "Unified Archive," but admits that the alleged mark has been "cancelled" since "August 17, 2020." *Id.* ¶ 24.

The AC also alleges that Aaron Gardner, a former KLDiscovery employee, departed KLDiscovery to join Defendant Shield Israel[2] in January 2022 as a "Compliance Strategist." *Id.* ¶ 37. Gardner allegedly had access to ZL's "solutions and architecture" while working for KLDiscovery, and the AC alleges—based on nothing more than

---

[1] When presented with a motion to dismiss under Rule 12(b)(6), the Court may consider documents that are integral to the complaint or are incorporated by reference. *See Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The document defined in the AC as the "SDLSA" is both appended to the AC and incorporated by reference therein. *See, e.g.*, AC ¶¶ 11–12, 27, 29, 31–33, 36–37, 60, 89, 91–93, and 98–99; ECF 46-1. KLDiscovery has filed the unredacted version of Exhibit 1 under seal to show that it is, in fact, not a contract between ZL and KLDiscovery. *See* KLDiscovery Ex. 1.

[2] Although "Shield Delaware" and "Shield Israel" are ZL's shorthand for two named defendants in this matter, Shield Financial Compliance, Ltd. and Shield Financial Compliance, Inc., ZL also confusingly refers to one or both of these parties as "Shield," without more. This makes it difficult to discern, at times, which Shield Defendant is being addressed by ZL. *See, e.g.*, AC ¶¶ 50–51 (alleging that "Shield Israel used its Series A funding to hire Defendant Gardner," and then alleging that "Shield actually hired Defendant Gardner to gain access to ZL's solutions and architecture and appropriate for itself ZL's competitive advantages in the marketplace"). This same issue was also present in ZL's original complaint. *See* Compl. ¶¶ 37–38.

coincidental timing—that Gardner used that knowledge to benefit KLDiscovery and Shield Israel. *See id.* ¶¶ 50–53.

Lastly, the AC alleges that KLDiscovery breached the SDLSA and PLLA. *Id.* ¶¶ 48, 92, 94. On March 26, 2025, ZL purported to terminate the SDLSA. *Id.* ¶ 98.

## III. LEGAL STANDARD

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). While the Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation," or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* at 662, 678 (quoting *Twombly*, 550 U.S. at 555).

"A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory. Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" *Citizens United* v. *Schneiderman*, 882 F.3d 374, 384–85 (2d Cir. 2018) (quoting *Arista Records, LLC* v. *Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)). The critical inquiry is whether ZL has pled sufficient facts to nudge the claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## IV.    ARGUMENT

### A.    ZL Fails to State a Claim for False Designation of Origin Under the Lanham Act.

ZL's first cause of action under the Lanham Act, 15 U.S.C. § 1125(a), for "false designation of origin," AC ¶¶ 63–71, fails because ZL has not adequately alleged sufficient facts to state a claim for a violation of the false designation of origin provision of the Lanham Act ("Section 43(a)" of the Lanham Act).

#### 1.    ZL's Lanham Act claim is barred by the statute of limitations.

False designation of origin claims under the Lanham Act are provided a six-year limitations period, *see Conopco, Inc.* v. *Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996), which begins to run once the plaintiff should have been aware of the facts underlying its cause of action, *see McKenzie* v. *Artists Rts. Soc'y, Inc.*, 757 F. Supp. 3d 427, 438–39 (S.D.N.Y. 2024).

Here, by ZL's *own* admission, it first became aware, or should have known, of the alleged Lanham Act cause of action "on or about August 18, 2018," when "KLDiscovery listed features of [ZL's] big data unified platform and scaled software architectural solutions and technology on KLDiscovery['s] website." AC ¶ 40. ZL also alleges that KLDiscovery's public website "directly referred to ZL's mark" and that "[a]t no time [did] ZL provide[] either permission or authority to KLD to advertise the ZL mark anywhere." *Id.* ¶¶ 41–42. Here, ZL has pled itself out of a claim. *Travis* v. *Bank of Am., N.A.*, 2023 WL 4350797, at *2 (S.D.N.Y. July 5, 2023) ("Additionally, '[a]lthough the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.'") (quoting *Thea* v. *Kleinhandler*, 807 F.3d 492, 501 (2d Cir. 2015)).

In *Charles Atlas, Ltd.* v. *DC Comics, Inc.*, the Court stated that, "in comparable cases involving publications, a plaintiff's claim generally accrues upon publication of the work in question." 112 F. Supp. 2d 330, 334 (S.D.N.Y. 2000). In that case, the defendant's alleged infringement was found to have been open and notorious for eight years prior to Charles Atlas's commencement of the litigation, and "Plaintiff could have, with reasonable diligence, discovered the alleged infringement upon its publication or shortly thereafter." *Id.* Similarly, ZL alleges that the infringement was on KLDiscovery's public website nearly seven years ago. Given the nature of the alleged infringement, as in *Charles Atlas*, the infringement could have (and should have) been discovered with reasonable diligence more than six years before the commencement of this action. *See, e.g.*, *McKenzie*, 757 F. Supp. 3d at 438 (finding that plaintiff should have known about the Lanham Act violation when he had seen public advertising of the disputed copyright). ZL's own allegations show that it was on notice of a potential Lanham Act claim almost seven years before it filed the instant amended complaint. This is outside the statute of limitations, and, for this simple reason, ZL's first cause of action should be dismissed with prejudice.

### 2. ZL does not allege adequate facts showing a valid mark or a likelihood to cause confusion.

The Lanham Act claim fails for additional reasons. Section 43(a) prohibits the use in commerce of:

> [A]ny word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which … is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).  To state a claim, a plaintiff must allege that (1) "it has a valid mark entitled to protection" and (2) "the defendant's use of it is likely to cause confusion" as to the origin of the goods or services.  *See Time, Inc.* v. *Petersen Pub. Co. L.L.C.*, 173 F.3d 113, 117 (2d Cir. 1999) (cleaned up).  The AC falls well short of what is required to state a claim.

**(a)**      **ZL fails to allege use of a valid mark entitled to protection.**

The "owner of an *unregistered* mark does not benefit from the presumption of validity created by federally registering the mark." *Verschleiser* v. *Frydman*, 22-CV-7909-JGK, 2023 WL 5835031, at *14 (S.D.N.Y. Sept. 7, 2013) (emphasis added).  ZL alleges that the mark at issue here—Registration No. 3,833,864 ("Unified Archive")—was registered with the U.S. Patent and Trademark Office ("USPTO") until August 17, 2020, but concedes that the "mark is now cancelled."  AC ¶ 24.  Because the mark is canceled, and therefore unregistered, ZL has no statutory presumption that the mark is valid and protectible. *Patsy's Italian Rest., Inc.* v. *Banas*, 658 F.3d 254, 267 (2d Cir. 2011) (stating that holder of an unregistered mark is "preclude[d] from utilizing the statutory presumptions and other benefits conferred to a mark owner through federal registration").  Accordingly, ZL has the burden of proving that "its mark is a valid trademark." *Verschleiser*, 2023 WL 5835031, at *14 (cleaned up).

To prove that it has a valid trademark, ZL must adequately allege that its unregistered mark, "Unified Archive," is "sufficiently distinctive to distinguish the [mark holder's] goods from those of others." *Id.*  The degree to which a mark is entitled to protection under the Lanham Act depends on whether the mark is classified as (a) generic, (b) descriptive, (c) suggestive, or (d) fanciful or arbitrary.  *See Trombetta* v. *Novocin*, 414

7

F. Supp. 3d 625, 630–31 (S.D.N.Y 2019).  Here, ZL has not even met its basic burden of establishing what classification, if any, that "Unified Archive" should get because it does not allege *any* classification for "Unified Archive." *See id.* (placing the burden on the Plaintiff); *see also Time, Inc.*, 173 F.3d at 117 (same).

To the extent ZL tries to combine its allegations about the "ZL UA" and "Unified Archive" to argue that "Unified Archive" is a descriptive mark that has acquired a secondary meaning, that, too, must fail.  *Playtex Prods., Inc.* v. *Ga.-Pac. Corp.*, 390 F.3d 158, 163 (2d Cir. 2004) (stating that descriptive marks are protectable only when they acquire a secondary meaning).  ZL has not alleged, and indeed cannot allege, that the phrase "Unified Archive" has acquired a secondary meaning.  Instead, it attempts a sleight of hand by alleging that the phrase, "**ZL UA**" has "achieved secondary meaning as an identifier of ZL's architecture and solutions." AC ¶ 23 (emphasis added).  But "ZL UA" is not at issue in this case, nor is there any allegation of confusion associated with "ZL UA," and "ZL UA" has never been associated with a trademark—cancelled or otherwise.  In the very next paragraph, however, ZL admits that it applied and was granted a now-canceled trademark for "**Unified Archive**," not "ZL UA."  *Id.* ¶ 24.  The USPTO status document on the first page lists the word "Archive" next to "Disclaimer,"[3] which means that ZL "admits

---

[3] The Court may take judicial notice of official records of the USPTO, *Telebrands Corp.* v. *Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y.2010), including "screenshots of the USPTO online databases," *United Merch. Wholesale, Inc.* v. *IFFCO, Inc.*, 51 F. Supp. 3d 249, 256 (E.D.N.Y. 2014).  The USPTO history for "Unified Archive" is incorporated into the AC by reference due to the discussion of ZL's trademark application and now-canceled trademark registration, AC ¶ 24, and attached hereto as KLDiscovery Ex. 2.  ZL's allegations in the AC ¶¶ 15-23 relate to ZL's "unified architecture solution [which] is known as ZL UA (Unified Archive)," ¶ 15, and not to ZL's canceled word mark ("Unified Archive") used to promote the software itself.

descriptiveness" for "Archive" and justifies the Court "giving less weight to that word in determining likelihood of confusion." § 19:65. Disclaimer practice—Disclaimer concedes descriptiveness, 2 McCarthy on Trademarks and Unfair Competition § 19:65 (5th ed.); *In re DNI Holdings Ltd.*, 77 U.S.P.Q.2d 1435, 2005 WL 3492365, at *8 (T.T.A.B. 2005) ("[I]t has long been held that the disclaimer of a term constitutes an admission of the merely descriptive nature of that term, as applied to the goods or services in connection with which it is registered, and an acknowledgement of the lack of an exclusive right therein at the time of the disclaimer."). In short, ZL has alleged trademark wrongdoing only with respect to the phrase "ZL UA," *see* AC ¶¶ 41-43, and ZL has not adequately alleged any secondary meaning for "Unified Archive."[4]  *See Trombetta*, 414 F. Supp. 3d at 631 (dismissing a complaint that "[did] not state any of the necessary facts to allege" that the descriptive mark has acquired secondary meaning). Thus, ZL fails to allege it has a valid mark entitled to protection, and this claim should be dismissed.

> **(b)    ZL fails to adequately allege a likelihood of consumer confusion.**

ZL also tries to allege that KLDiscovery's conduct is likely to cause, and has already caused, actual confusion among consumers as to the origin of the ZL services and marks.[5] AC ¶¶ 64–66. Not so. When assessing the likelihood of confusion, courts look

---

[4] KLDiscovery does not concede that ZL has adequately alleged secondary meaning for "ZL UA" or "ZL UA (Unified Archive)." KLDiscovery merely notes that the AC grounds its Lanham Act claim in the Unified Archive mark, which has no secondary meaning.

[5] It is unclear whether the allegations relate to KLDiscovery. ZL alleges that consumers are confused regarding the origins of Shield's services, not ZL's. AC ¶¶ 64–66. ZL alleges Shield's products "are being passed off as Shield's rather than ZL's." *Id.* ¶ 66. Thus, the consumer is allegedly confused into thinking that Shield's product is Shield's when it is in fact ZL's, but the confusion is the origin of Shield's services, not ZL's, and does not include

to the *Polaroid* factors, so named by *Polaroid* v. *Polarad Elecs. Corp.*, 287 F.2d 492, 495

(2d Cir. 1961); *see also Portkey Techs. Pte Ltd.* v. *Venkateswaran*, No. 23-CV-5074-JPO,

2024 WL 3487735, at *4 (S.D.N.Y. July 19, 2024) (Oetken, J.) (applying the *Polaroid*

factors at the motion to dismiss stage). The "analysis is not mechanical, but rather, focuses

on the ultimate question of whether, looking at the products in their totality, consumers are

likely to be confused." *Star Indus., Inc.* v. *Bacardi & Co. Ltd.*, 412 F.3d 373, 384 (2d Cir.

2005). None of the factors are met here.

> In the seminal case, *Polaroid*, Judge Henry Friendly outlined eight considerations:
>
> (1) strength of Plaintiff's mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' areas of commerce; (4) the likelihood that Plaintiff will bridge the gap separating their areas of activity; (5) the existence of actual consumer confusion; (6) whether Defendant acted in bad faith or was otherwise reprehensible in adopting the mark; (7) the quality of Defendants' product; and (8) the sophistication of the relevant consumer group.

*MidCap Bus. Credit, LLC* v. *MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 205 (S.D.N.Y. 2023)

(citing *Polaroid*, 287 F.2d at 496). The "most important" *Polaroid* factors of "strength,

similarity, and proximity" confirm that ZL fails to allege consumer confusion. *See id.*

("The Second Circuit has described 'strength, similarity, and proximity . . . as the most

important *Polaroid* factors in most cases.'").

> The first two factors, "strength of Plaintiff's mark" and "similarity of the parties'

marks" weigh strongly in KLDiscovery's favor because ZL does not properly allege that it

has a valid mark entitled to protection, *see supra* Section IV.A.2.(a). The third factor, "the

proximity of the parties' areas of commerce," also weighs in KLDiscovery's favor because

---

KLDiscovery. However, ZL then sloppily lumps all Defendants together in saying that
Defendants caused this confusion as to the origin of ZL's services.

ZL never alleges that KLDiscovery offers services separate from, and in direct competition with, the services KLDiscovery provides under its alleged licensing agreement with ZL. At most, ZL alleges a vague partnership theory between KLDiscovery and Defendant Shield Israel, but ZL has not adequately alleged how this partnership or the resulting Nebula Intelligent Archive platform are in any way similar to or in competition with ZL's software services. AC ¶¶ 44–45, 52, 54.

The fourth factor, "the likelihood that Plaintiff will bridge the gap separating their areas of activity," similarly weighs in KLDiscovery's favor because ZL does not allege that KLDiscovery intends to provide direct services separate from those it provides through ZL. *See Savin Corp.* v. *Savin Grp.*, 391 F.3d 439, 459–60 (2d Cir. 2004) ("This factor is designed to protect the senior user's interest in being able to enter a related field at some future time." (cleaned up)).

The fifth and sixth factors, "the existence of actual consumer confusion" and "whether Defendant acted in bad faith or was otherwise reprehensible in adopting the mark," weigh in KLDiscovery's favor because ZL does not allege consumer confusion (i.e., lost sales) or plausible allegations regarding bad faith (i.e., injury of goodwill) by KLDiscovery. *See Starbucks Corp.* v. *Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117–18 (2d Cir. 2009); *deVere Grp. GmbH* v. *Opinion Corp.*, 877 F. Supp. 2d 67, 72 (E.D.N.Y. 2012) (dismissing complaint where plaintiff did not "provide[] any allegations of actual consumer confusion" or "bad faith").

Finally, the seventh factor, the "quality of Defendants' product," is neutral as a matter of law because ZL "does not allege that [the infringing services] are inferior," and the eighth factor, "sophistication of the relevant consumer group," weighs in

KLDiscovery's favor because both KLDiscovery and ZL offer their services to sophisticated consumers who are less likely to be confused, including "multinational corporations" and "major financial institutions with global reach, such as the Client." *MidCap*, 655 F. Supp. 3d at 211; AC ¶ 17.

The Court should also dismiss this claim against KLDiscovery because ZL fails to allege a likelihood of consumer confusion.

**B.    ZL's Second Cause of Action Fails to Adequately Allege a Misappropriation Theory of Unfair Competition Under New York Common Law.[6]**

Under New York law, a plaintiff asserting a misappropriation theory of an unfair competition claim must show two things: first, "the defendant has misappropriated the labors and expenditures of another," and second, that it did so in "bad faith." *See Saratoga Vichy Spring Co.* v. *Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *see also CDC Newburgh Inc.* v. *STM Bags, LLC*, 692 F. Supp. 3d 205, 226 (S.D.N.Y. 2023) (same). ZL's AC does not plausibly allege either. It does not allege *any* facts showing that KLDiscovery knew of Shield's or Gardner's alleged conduct, let alone plausible allegations that KLDiscovery

---

[6] ZL's second and third claims—for common law unfair competition—should be governed by New York state law. AC ¶ 11 ("[E]ach of the claims is governed under New York law"). New York's choice of law rules compel this result, as New York maintains a reasonable relationship to the parties and dispute, and the application of its law would not contravene any fundamental public policy. *See Willis Re Inc.* v. *Herriott*, 550 F. Supp. 3d 68, 95 (S.D.N.Y. 2021) (recognizing a sufficient basis for applying New York law where an employee, having departed the plaintiff employer for a competing firm, had reported to a supervisor based in New York during his tenure); *Holborn Corp.* v. *Sawgrass Mutual Ins. Co.*, 304 F. Supp. 3d 392, 400 (S.D.N.Y. 2018) (given a conflict between New York and Florida law, applying New York choice of law rules to determine that New York law governs tort counterclaims because "the actual tortious conduct alleged in [defendant's] counterclaims occurred in New York," even though defendant "suffered injury in Florida where it is domiciled").

acted in bad faith to misappropriate ZL's proprietary information. *See CDC Newburgh Inc.*, 692 F. Supp. 3d at 226 (dismissing misappropriation claim partially because plaintiff did not plausibly allege facts that show that the defendant acted with knowledge and, by extension, bad faith).

The AC fails to connect KLDiscovery to the conduct it alleges constitutes misappropriation, instead engaging in group pleading that fails to distinguish KLDiscovery. *See Atuahene* v. *City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (summary order) (affirming that each defendant was not given fair notice because the plaintiff "lump[ed] all the defendants together in each claim and provid[ed] no factual basis to distinguish their conduct"). When not lumping the defendants together, the AC focuses on the conduct of other defendants, *not* KLDiscovery. *See, e.g.*, AC ¶ 51 ("Shield actually hired Defendant Gardner to gain access to ZL's solutions and architecture and further appropriate for itself ZL's competitive advantages in the marketplace."); ¶ 53 ("Gardner in fact appropriated his knowledge of ZL's unified platform in attempt to achieve the same or similar results for KLDiscovery and his new employer, Shield."); ¶¶ 54–58 (Shield's conduct); ¶¶ 73–77 (Shield and Gardner's actions). ZL has not alleged (and cannot possibly allege) that Gardner should not have had access to updates and information regarding ZL's software while he was employed by KLDiscovery. *See* AC ¶ 37. Accordingly, ZL must do more to set out how KLDiscovery engaged in misappropriation than the vague and undifferentiated allegations in the AC. Where a complaint "lump[s] all the defendants together in each claim and provid[es] no factual basis to distinguish their conduct, [it] fail[s] to satisfy [Rule 8's] minimum standard." *Atuahene*, 10 F. App'x at 34.

Moreover, ZL fails to identify which, if any, allegations in the AC constitute bad faith and, in all events, fails to plead this critical element.  In fact, the AC pleads the opposite of bad faith: Whereas the AC attempts to impugn bad motives to KLDiscovery's response to a request for proposal ("RFP") from the Client, ZL alleges that a KLDiscovery employee actually disclosed to ZL that it had responded to the Client's request for proposal. AC ¶ 60.  If KLDiscovery were acting in "bad faith" or with a "dishonest purpose," it would presumably not have disclosed its response at all.  While ZL attempts to infer bad motives from an interaction with a Client employee who "inadvertently revealed" the existence of the RFP and then "switched the subject," *id.* ¶ 61, the AC says nothing about KLD's conduct or motives, *see Ferring B.V.* v. *Allergan, Inc.*, 4 F. Supp. 3d 612, 628–30 (S.D.N.Y. 2014) ("The proposed [complaint] does not even include a conclusory assertion that [defendant] acted with 'bad faith'—let alone factual allegations that would support such a finding or even that [defendant] was aware of" improper taking or misuse of confidential information).

ZL's "vague statements fail to articulate specific acts of misappropriation and thus do not satisfy the pleading standards." *See id.* (stating that plaintiff's conclusory allegations failed because it did not identify what "innovations or developments that were allegedly misappropriated") (cleaned up); *see also Carson Optical, Inc.* v. *Prym Consumer USA, Inc.*, No. 11-CV-3677-ARL, 2013 WL 1209041, at *6 (E.D.N.Y. Mar. 25, 2013) (dismissing "conclusory" unfair competition claims that failed to identify the specific wrongful conduct underlying the claim).

14

### C.    ZL Fails to Adequately Allege a Claim for Causing Confusion of Mistake

Just as the Lanham Act claim fails, the third cause of action in the AC also inadequately alleges that KLDiscovery caused confusion or mistake.  To prevail on an unfair competition claim based on confusion or mistake, New York common law requires "(1) actual confusion or a likelihood of confusion; and (2) the defendant's bad faith." *LVL XIII Brands, Inc.* v. *Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678 (S.D.N.Y. 2016).

ZL has not adequately alleged any of the elements used to show "likelihood of confusion."  To assess the likelihood of confusion, the same factors relevant to a federal Lanham Act claim "may be used . . . for the purposes of a New York unfair competition claim." *Computer Assocs. Int'l Inc.* v. *Computerized Data Mgmt., Inc.*, 889 F. Supp. 630, 638 (E.D.N.Y. 1995).  As discussed above, *see supra* Section IV.A.2.(b), the AC does not adequately plead facts that satisfy the *Polaroid* factors.  In particular, ZL has not pled any allegations concerning factors 1 (strength of the trademark), 2 (similarity), 4 (bridging the gap), 5 (actual consumer confusion), 7 (respective quality of the products), or 8 (sophistication of consumers in the relevant market), nor has ZL pled any allegations concerning 3 (proximity and competitiveness) as it relates to KLDiscovery.  With respect to the sixth factor (bad faith), as discussed above, ZL's allegations of bad faith are perfunctory and conclusory.  This cause of action should be dismissed.

### D.    ZL's Breach of Contract Claim Should be Dismissed.

ZL's breach of contract claims are based on the agreements defined in the AC as the PLLA and the SDLSA, but neither of those contracts supports a breach of contract claim.

15

1.      **ZL fails to attach the operative contract or describe the provisions that were allegedly violated.**

After failing to adequately plead the breach of contract in the original complaint, ZL does no better this time around. ZL fails to meet the notice pleading standard because it still has not identified the provisions of the so-called SDLSA that KLDiscovery is alleged to have breached. To state a claim for breach of contract under New York common law, a Plaintiff must plead "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Eternity Glob. Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (applying New York law).

More importantly, as this Court stated in *Lan Sang* v. *Ming Hai*, "a plaintiff alleging a breach of contract must, at a minimum, allege the terms of the contract, each element of the alleged breach and the resultant damages." 951 F. Supp. 2d 504, 527 (S.D.N.Y. 2013) (Oetken, J.) (cleaned up). In *Lan Sang*, the plaintiff alleged that "she entered into a contractual relationship" and that the defendant "breached his contractual duties." *Id.* This Court dismissed the breach of contract claim because it failed to "allege which specific terms of the parties' contract [d]efendants breached," explaining that "[w]ithout stating which specific terms of the contract have been breached, a complaint fails to provide the defendant with sufficient notice to defend the claim[, as] required by Rule 12(b)(6) and Rule 8." *Id.*

The AC's deficiencies are even more egregious. ZL alleges that KLDiscovery "breached the terms of the SDLSA," AC ¶ 100, and purportedly refers to the contract attached to the AC as Exhibit 1. However, Exhibit 1 is *not* a contract between ZL and KLDiscovery—and is certainly not what is purported to be the "SDLSA." As detailed in the unredacted version of ZL's Exhibit 1, *see* KLDiscovery Ex. 1, ZL's Exhibit 1 is, in fact,

a contract between KLDiscovery and a third party, not ZL.[7]  While ZL voluntarily withdrew the original complaint, in part, because it failed to attach *any* copy of the operative contract, this time, ZL fails to attach a valid agreement.  The result is the same: These allegations fall well short of what is required to satisfy notice pleading standards. At a minimum, ZL must allege the specific provisions of the contract that KLDiscovery allegedly breached to properly plead a claim for breach of contract—not point to a completely unrelated agreement, as ZL does here.  *Lan Sang*, 951 F. Supp. 2d at 527. Moreover, the AC fails to explain where the allegedly breached provision is found in the actual contract between ZL and KLDiscovery and should be dismissed, on that basis alone.

These allegations, therefore, amount to no more than vague and conclusory statements characterizing ZL's interpretation of the parties' Agreement, which are insufficient to plausibly state a claim for breach of contract.  *See Lan Sang*, 951 F. Supp. 2d at 527 (dismissing breach of contract claim because plaintiff only alleged that defendant "breached his contractual duties" by not being "forthcoming" and "failing in 'his duty of diligence,'" without "stating which specific terms of the contract have been breached"). This claim should be dismissed because ZL failed to plead breach of contract with the requisite specificity to meet notice pleading standards.

---

[7] Indeed, given the redactions to the filed copy of Exhibit 1, ECF No. 46-1, it would not be immediately apparent to the uninitiated reader that the agreement attached by ZL is completely irrelevant.  However, because ZL presumably went through the trouble of redacting the document, it should have been obvious to ZL that it was not the "SDLSA."

### 2. The PLLA has been expired since April 30, 2018, at the very latest.

The second agreement upon which ZL relies for its deficient breach of contract claim is the PLLA, which expired long before the relevant conduct in the AC. Whether a written agreement has expired by a specific date is a question of law that can be resolved at the motion to dismiss stage. *Cf. Int'l Techs. Mktg., Inc.* v. *Verint Sys., Ltd.*, 157 F. Supp. 3d 352, 364–65 (S.D.N.Y. 2016) (granting a motion to dismiss where a breach of contract relied on a contract that had expired), *aff'd*, 850 F. App'x 38 (2d Cir. 2021). Here, ZL incorrectly asserts that the PLLA's "confidentiality provisions" govern the "[d]isclosure of ZL's technology to KLDiscovery," AC ¶¶ 12, 30, and substantially relies on the PLLA for its breach of contract claim, *see id.* ¶¶ 89–91.

The PLLA, by its own terms, was entered into and effective starting April 30, 2008. *See* PLLA at 1. Then, Section 2 of the PLLA unambiguously states that:

> This Agreement shall commence on the Effective Date and shall continue in force for a period of five years from the date that [KLDiscovery] accepts from [ZL] the private label user interface (in accordance with Schedule D) for the Hosted Archive ("Initial Term"). . . . Following the end of the Initial Term, this Agreement shall be automatically renewed for up to five additional one-year terms (each, an "Additional Term"), contingent upon [ZL] receiving at least $1,000,000 in Net Revenues from [KLDiscovery] in the 12 months immediately preceding each Additional Term, failing which, this Agreement shall automatically terminate.

PLLA, § 2. Schedule D was also executed on the same day. *Id.* at 5. Accordingly, even assuming every condition was met, the contract unambiguously expired no later than April 30, 2018—but perhaps even sooner.

### 3. Since the PLLA has been expired since April 30, 2018, ZL's claims that rely on it must be dismissed.

Under New York law, "[w]hen a contract is terminated, such as by expiration of its own terms, the rights and obligations thereunder cease." *Twitchell* v. *Town of Pittsford*,

106 A.D.2d 903, 904 (App. Div. 1984) *aff'd*, 489 N.E.2d 250 (1985).  That's because an "expired contract is[] generally unenforceable." *Xerox Corp.* v. *Loc. 14A, Rochester Reg'l Joint Bd., Xerographic Div. Workers United*, 128 F.4th 93, 101 (2d Cir. 2025).  And where a plaintiff relies on an invalid or an expired, unenforceable contract to make out allegations in a complaint, that "complaint fails to state facts sufficient to constitute a cause of action." *Kellner* v. *Kener*, 209 A.D. 844, 845 (App. Div. 1924), *aff'd*, 147 N.E. 178 (1924); *see also Ballard* v. *Tingue Mills, Inc.*, 128 F. Supp. 683, 687 (D. Conn. 1954) ("The complaint should be dismissed because the contract upon which it is based is unenforceable.").

Here, ZL relies on the PLLA throughout the AC for allegations that the PLLA's confidentiality provisions govern the disclosure and use of ZL's technology by KLDiscovery after the PLLA expired.  *See, e.g.*, AC ¶¶ 12, 30, 60.  Those allegations served as a substantial basis for ZL's misappropriation theory of unfair competition claim, *see id.* ¶ 76 ("Defendants incorporated ZL's intellectual property and specific aspects and data of the ZL UA architecture, including ZL's confidential and proprietary information into Defendants' Nebula platform, and elsewhere."), and ZL's breach of contract claim, *see id* ¶¶ 90–92 (90. "KLD agreed to preserve ZL's confidential and proprietary information in the strictest confidence. . . . 91.   In 2018, KLDiscovery began to misappropriate ZL's confidential proprietary information, breaching the terms of the SDLSA and the [PLLA]. 92. Beginning in 2023, as a result of the misappropriation of ZL's confidential proprietary information, . . . KLDiscovery . . . allowed the ultimate use of ZL's confidential and proprietary information by the Shield Defendants.").  ZL even concedes that the advertising on KLDiscovery's website was after the PLLA expired on April 30, 2018. *See id.* ¶¶ 40, 44.

Accordingly, ZL's claims and those allegations or causes of action that rely on an invalid contract must fail because no rights or obligations exist. *See LBBW Luxemburg S.A. v. Wells Fargo Sec. LLC*, 10 F. Supp. 3d 504, 513 (S.D.N.Y. 2014) (Oetken, J.) ("To establish breach of contract under New York law, Plaintiff must plead the existence of a valid contract."); *see also Kellner*, 209 A.D. at 845 (holding that because "the contract set forth in the complaint [is] invalid," the "complaint fails to state facts sufficient to constitute a cause of action"). At the very least, ZL's claim for a breach of the PLLA should be dismissed for failure to allege the existence of a valid contract.

Finally, to the extent the alleged breaches of the SDLSA and PLLA are premised on 2018 conduct, *see* AC ¶ 91, the claims are barred by New York's six-year statute of limitations. *See Travis* v. *Bank of Am., N.A.*, 22-CV-10102-JPO, 2023 WL 4350797, at *2 (S.D.N.Y. July 5, 2013) (Oetken, J.).

### E.    The AC Should be Dismissed for the Reasons Set Forth in the Motion Filed by Defendant Aaron Gardner.

KLDiscovery also joins in and incorporates by reference the arguments for dismissing the AC made in the brief filed by Defendant Aaron Gardner. *See* ECF No. 57. Courts in this district have recognized the incorporation of co-defendants' arguments by reference. *See, e.g.*, *Fed. Hous. Fin. Agency* v. *Credit Suisse Holdings (USA), Inc.*, 11-CV-6200-DLC, 2012 WL 13395966, at *1 (S.D.N.Y. Dec. 5, 2012) ("[T]he Court considered all arguments made by the defendants in the body of their briefs as well as any arguments incorporated by reference that were made in support of the motion to dismiss."); *XL Specialty Ins. Co.* v. *Fracht FWO Inc.*, No. 24-CV-1987-JSR, 2025 WL 1275879, at *2 (S.D.N.Y. May 2, 2025) ("Because the Evergreen defendants incorporate CMA's arguments by reference, the Court begins by considering CMA's motion to dismiss and

then proceeds to consider the Evergreen defendants' cross-motion for judgment on the pleadings.").

**F.    As ZL Has Already Amended Its Complaint, the AC Should be Dismissed with Prejudice.**

Finally, the AC should be dismissed with prejudice and without leave to amend, because ZL has already amended its complaint and further amendment would be futile. The Second Circuit has held that "[a] district court has broad discretion" to deny leave to amend where the plaintiff has previously amended the complaint. *See Guary* v. *Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000).

In *Twohig* v. *Shop-Rite Supermarkets, Inc.*, the court denied the plaintiff's leave to amend its false advertising claims because "plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend." 519 F. Supp. 3d 154, 168 (S.D.N.Y. 2021). Those are precisely the circumstances here. ZL has not addressed the deficiencies in its original complaint, even after having the benefit of the motions to dismiss that complaint, which were filed by *multiple* defendants, including KLDiscovery. *See Turnipseed* v. *Simply Orange Juice Co.*, 20-CV-8677-NSR, 2022 WL 657413, at *8 (S.D.N.Y. 2022) (denying leave to amend where the plaintiff "has already amended once, after having the benefit of a pre-motion letter from Defendant stating the grounds on which it would move to dismiss"). Therefore, the Court should dismiss the AC with prejudice.

**V.    CONCLUSION**

For these reasons, KLDiscovery respectfully requests that the Court grant this motion to dismiss with prejudice.

Dated: New York, New York

August 7, 2025

Respectfully submitted,

/s/ Joshua Hill
PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP
Joshua Hill
jhill@paulweiss.com
Mohamed Light
mlight@paulweiss.com
1285 Avenue of the Americas
New York, NY 10019-6064
Tel:  (628) 432-5123
Fax: (628) 232-3090

Marc Price Wolf (*Pro Hac Vice*)
mpricewolf@paulweiss.com
535 Mission Street, 25th Floor
San Francisco, CA 94105
Tel:  (628) 432-5167
Fax: (415) 276-8963

*Attorneys for Defendant KLDiscovery
Ontrack, LLC*

**CERTIFICATION**

I, Joshua Hill, hereby certify that the foregoing Memorandum of Law complies with Local Civil Rule 7.1 and the Court's Individual Rule 2.A in that the total number of words in this memorandum of law, exclusive of the caption, table of contents, table of authorities, and the signature block, is 6594 words and 22 pages according to Microsoft Word, and therefore does not exceed either 8,750 words or 25 pages. I further certify that the foregoing Memorandum of Law complies with the formatting requirements set forth in Local Civil Rule 11.1.

/s/ *Joshua Hill*

Joshua Hill