UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

ZL TECHNOLOGIES, INC.,

                      Plaintiff,

    v.

KLDISCOVERY ONTRACK LLC; SHIELD
FINANCIAL COMPLIANCE, LTD.;
SHIELD FINANCIAL COMPLIANCE, INC.
and AARON GARDNER,

                   Defendants.

-------------------------------------------------------------------------x

Case No. 1:25-cv-02673-JPO

**ORAL ARGUMENT
REQUESTED**

**PLAINTIFF ZL TECHNOLOGIES, INC.'S OPPOSITION TO
DEFENDANT AARON GARDNER'S MOTION TO DISMISS
THE AMENDED COMPLAINT**

Table of Contents

PAGE(S)

PRELIMINARY STATEMENT ..................................................................................................1

I.   STANDARDS GOVERNING MOTION TO DISMISS UNDER RULE 12(b)(6) ............2

II.  THE AMENDED COMPLAINT ALLEGES PLAUSIBLE CLAIMS AGAINST
     DEFENDANT GARDNER SUFFICIENTLY DIFFERENTIATED FROM THE OTHER
     DEFENDANTS ...........................................................................................................................3

III. PLAINTIFF'S LANHAM ACT CLAIM IS PLAUSIBLY STATED AGAINST
     DEFENDANT GARDNER .......................................................................................................7

     A. Plaintiff has Established a Plausible Claim for Reverse-Passing Off ...............................8

     B. Defendants Misappropriated More than Ideas, Concepts and Communications.............9

IV.  PLAINTIFF'S MISAPPROPRIATION CLAIM UNDER NEW YORK LAW IS
     PLAUSIBLY STATED AGAINST DEFENDANT GARDNER.......................................12

     A. Defendant Gardner Misrepresents the Allegations of the Amended Complaint............14

     B. Plaintiff is under No Obligation to Recite Defendant Gardner's Technical Expertise ..14

     C. Shield's Inexperience and the Timeline of its Launch Plausibly Demonstrate
        Misappropriation.................................................................................................................15

     D. The Element of Customer Confusion is Fully Supported...............................................16

CONCLUSION...................................................................................................................................18

i

Table of Authorities

PAGE(S)

Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .........................................................................................2, 3, 7

*Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*,
  16-CV-885 (JPO), 2017 WL 74729 (S.D.N.Y. Jan. 4, 2017).............................13, 16

*Cable v. Agence France Presse*,
  728 F.Supp.2d 977 (N.D. Ill. 2010).......................................................................11

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
  150 F.3d 132 (2d Cir. 1998).....................................................................................9

*Cvent, Inc. v. Eventbright, Inc.*,
  739 F.Supp.2d 927 (E.D. Va. 2010) .......................................................................12

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ......................................................................................9, 10, 11

*Data Device Corp. v. W.G. Holt, Inc.*,
  19-CV-4105, 2020 WL 7024312 (E.D.N.Y. Nov. 30, 2020)......................................15

*DFO Global Performance Commerce Limited (Nevada) v. Nirmel*,
  20-CV-6093 (JPO), 2021 WL 3475596 (S.D.N.Y. Aug. 6, 2021) ..............................6

*Experian Marketing Solutions, Inc. v. U.S. Data Corp.*,
  No. 8:09CV24, 2009 WL 2902957 (D. Nebraska Sept. 9, 2009).............................11

*ExpertConnect, LLC v. Fowler*,
  18-CV-4828 (LGS), 2019 WL 3004161 (S.D.N.Y. July 10, 2019) .....................14, 16

*Forschner Grp., Inc. v. Arrow Trading Co.*,
  904 F. Supp. 1409 (S.D.N.Y. 1995), *aff'd*, 124 F.3d 402 (2d Cir. 1997)......................9

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
  409 F.Supp.2d 259 (S.D.N.Y. 2005) .......................................................................10

*General Universal Sys., Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004)..................................................................................12

*Goetz v. Ainsworth Pet Nutrition, LLC*,
  768 F.Supp.3d 645 (S.D.N.Y. 2025) .........................................................................6

*In re Platinum-Beechwood Litig.*,
  427 F.Supp.3d 395 (S.D.N.Y. 2019) .........................................................................5

*Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*,
  64 F.Supp.3d 494 (S.D.N.Y. 2014) .........................................................................16

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,
  58 F.3d 27 (2d Cir. 1995)........................................................................................13

*Kaplan Group Investments, LLC v. A.S.A.P. Logistics Ltd.*,
  694 F.Supp.3d 374 (S.D.N.Y. 2023) ......................................................................3, 5

*Kasser v. 2nd Ave. Delicatessen, Inc.*,
  496 F.3d 229 (2d Cir. 2007)......................................................................................2

*KatiRoll Co., Inc. v. Kati Junction, Inc.*,
  33 F.Supp.3d 359 (S.D.N.Y. 2014) ......................................................................7, 16

*L& J. Stickley, Inc. v. Canal Dover Furniture, Co.*,
  79 F.3d 258 (2d Cir. 1996)........................................................................................9

*LoPresti v. Mass. Mut. Life Inc. Co.*,
  30 A.D.3d 474, 820 N.Y.S.2d 275 (2d Dep't 2006) ...............................................14

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F.Supp.3d 612 (S.D.N.Y. 2016) .......................................................................17

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,
  2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018)..........................................................16

*Medtech Prod. Inc. v. Ranir, LLC*,
  596 F.Supp.2d 778 (S.D.N.Y. 2008) .......................................................................16

*Milton Abeles, Inc. v. Farmers Pride, Inc.*,
  603 F.Supp.2d 500 (E.D.N.Y. 2009)........................................................................13

*Papasan v. Allain*,
  478 U.S. 265 (1986) ..................................................................................................2

*Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*,
  507 F.3d 117 (2d Cir. 2007) ........................................................................... 2

*Saphirstein v. Mauzone Mania LLC*,
  15-cv-7264, 2017 WL 3278893 (E.D.N.Y. July 31, 2017) ............................. 5

*Shawanaz v. Intellipharmaceutics Int'l, Inc.*,
  348 F.Supp.3d 313 (S.D.N.Y. 2018) ............................................................. 3

*Smartix Intern. Corp. v. MasterCard Intern., LLC*,
  2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008) ................................. 10, 11, 12

*Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*,
  380 F.3d 126 (2d Cir. 2004) ........................................................................ 8, 9

*SS&C Techs., Holdings, Inc. v. Arcesium LLC*,
  22-CV-02009, 2024 WL 5186530 (S.D.N.Y. Dec. 20, 2024) ................... 15, 16

*Steadfast Ins. Co. v. T.F. Nugent, Inc.*,
  513 F.Supp.3d 419 (S.D.N.Y. 2021) ............................................................. 6

*Tilebar v. Glazzio Tiles*,
  723 F.Supp.3d 164 (S.D.N.Y. 2024) ........................................................... 16

*Waldman Publ'g Corp. v. Landoll, Inc.*,
  43 F.3d 775 (2d Cir. 1994) ........................................................................... 8

Federal Statutes

15 U.S.C. § 1125(a) ............................................................................................ 2

15 U.S.C. § 1125(a)(1)(A) .................................................................................. 7

18 U.S.C. § 1836 .............................................................................................. 10

Rules

Fed. R. Civ. P. 12(b)(6) ................................................................................ 2, 18

## PRELIMINARY STATEMENT

Plaintiff ZL Technologies, Inc.'s ("ZL's") Amended Complaint alleges a scheme by Defendants to steal Plaintiff's data and technology in order to wrest away data management and compliance clients from ZL and have those clients instead served by Shield Financial Compliance Ltd. (Shield Israel) and Shield Financial Compliance Inc. ("Shield Delaware"). Since 1999, as alleged, ZL has invested thousands of man hours to develop a singular architecture solution that offers its big-data clients the ability to accurately and efficiently re-create corrupted and unstructured data, minimize redundant data and the ability to manage and analyze data outside of any given archive. Financial institutions are highly-regulated and require solutions offered by ZL to maintain their compliance with necessary regulations. Defendants' theft is destroying the business it took ZL many decades to create.

The scheme could not have been accomplished without the extensive participation of ZL's partner, Defendant KLDiscovery Ontrack LLC ("KLDiscovery") through Defendant Aaron Gardner. ZL and with KLDiscovery as its purported partner, from at least 2006 to the filing of the Complaint, offered big-data software services, including to a multinational financial institution (referred to as the "Client") with a prodigious volume of data. Despite multiple confidentiality agreements between the parties, beginning in 2018, KLDiscovery used its partnership to ultimately deliver ZL's solutions to the Shield Defendant-competitors. KLDiscovery and the Shield Defendants have in fact entered into a partnership for that purpose they have touted since 2022, all of whom have invested in Nebula Intelligent Archive, to offer the same or similar services as ZL.

Defendant Aaron Gardner is a former employee of KLDiscovery, a principal point of contact between KLDiscovery and was a conduit for the misappropriation from Plaintiff. (Dkt. 46, at ¶1.) Defendant Gardner had access to ZL's confidential and proprietary data. In that

capacity, Defendant Gardner had the means, motive and opportunity to assist Shield in developing a comparable, competing architecture solution. As alleged, in 2018, when Defendant Gardner was employed by KLDiscovery, KLDiscovery arranged for multiple demonstrations of ZL capabilities to the Shield Defendants, particularly involving the software related to ZL products Core, ZL Compliance Manager, Post-review, ZL Discovery Manager, Case Management. ZL since joining KLDiscovery as its Vice-President of Legal Technology Consulting in 2012. In 2022, Shield hired Defendant Gardner as its Compliance Strategist. As a direct result of this misappropriation, the Client has extensively migrated the data to the Shield Defendants.

This conduct was well-pled with respect to Defendant Gardner as False Designation of Origin pursuant to 15 U.S.C. section 1125(a), Unfair Competition (Misappropriation) under New York law, and Unfair Competition (Creating Confusion or Mistake) under New York law. Defendant Gardner's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should be denied. He should be required to provide a substantive answer in the action.

## I.    STANDARDS GOVERNING MOTION TO DISMISS UNDER RULE 12(b)(6)

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true the complaint's factual allegations, as well as those facts incorporated by reference into the complaint, and draw all reasonable inferences in the plaintiff's favor. *Kasser v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions couched as a factual allegation need not be accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The

complaint must state "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The facts should be examined as a whole and not "scrutinized in isolation" to determine whether the plaintiff has met the pleading standard. *Shawanaz v. Intellipharmaceutics Int'l, Inc.*, 348 F.Supp.3d 313, 326 (S.D.N.Y. 2018)(denying motion to dismiss in securities fraud matter).

## II.  THE AMENDED COMPLAINT ALLEGES PLAUSIBLE CLAIMS AGAINST DEFENDANT GARDNER SUFFICIENTLY DIFFERENTIATED FROM THE OTHER DEFENDANTS

According to Defendant Gardner, Plaintiff has alleged what he terms is "nothing more than a stack of inferences" against him. Of course, even if that were true, dismissal is hardly warranted. Inferences are expected in pleadings. On any motion to dismiss, the Court must "draw all reasonable inferences [from the well-pled factual allegations] in the plaintiff's favor." *Kaplan Group Investments, LLC v. A.S.A.P. Logistics Ltd.*, 694 F.Supp.3d 374, 384 (S.D.N.Y. 2023). In any event, the facts ZL alleged are well-anchored and only minimal inferences drawn therefrom. Defendant Gardner was a key player in both KLDiscovery and Shield at exactly the times that his skill, expertise and motivation mattered. There is simply no merit to Defendant Gardner's assertion that the allegations of the Amended Complaint "lump all of the defendants together without distinguishing their conduct." Gardner Br. at 9. To the contrary, the Amended Complaint is quite precise.

As alleged, in 2012, prior to the misappropriation, KLDiscovery hired Defendant Gardner after acquiring Turnstone Solutions where he served as Chief Operating Officer, an executive capacity. Dkt. 46, Amend. Compl. at ¶34. Defendant Gardner became the point of contact for the KLDiscovery relationship with ZL, regularly receiving updates concerning its confidential and proprietary architecture and software. *Id.* at ¶37. In 2015, he was promoted from Vice-President of Legal Technology Consulting, which handled e-discovery issues, to the broader remit of Compliance, Information Governance and Archiving. *Id.* He signed the Amendments to the Software Development and License Agreements ("SDLSA") that KLDiscovery and ZL entered into in 2015 and 2018. *Id.* at ¶12. This promotion and his involvement in the SDLSA amendments is fully consistent with Defendant Gardner's familiarity with the broader data architecture and services that ZL was offering to the Client, and the current services that Shield is offering. *Id.* at ¶¶12 & 36-37.

During the time that Defendant Gardner served as the KLDiscovery contact for ZL and the Client, KLD began misappropriating ZL's technology and the ZL Unified Archive mark. *Id.* at ¶¶1, 40-45. As alleged, KLDiscovery listed features of ZL's unified platform and scaled architecture solutions on the KLDiscovery website, including ZL's compliance monitoring, records management, legal holds and e-discovery and storage management. *Id.* at ¶43 and Ex. 3. The Wayback Machine archive provides that these features were listed on August 18, 2018, following Defendant Gardner's promotion. *Id.* at ¶40. At that time, Unified Archive was registered with the United States Patent and Trademark Office under registration number 3,833,864. *Id.* at ¶24. (ZL continues to use Unified Archive to this day.) KLDiscovery then referred to the mark as "our," which it had no permission to do. *Id.* at ¶42. The following year, in 2019, evidently concerned about revealing what it had been doing, KLDiscovery deleted its infringing use and replaced it

with the title "Nebula Big Data Store." *Id.* at ¶44 and Ex. 4. In the years from 2018-2020, KLDiscovery arranged multiple demonstrations of ZL's capabilities to ZL's competitor Shield directly related to ZL Compliance Manager, Post-review, ZL Discovery Manager, and Case Management products then in use with the Client. *Id.* at ¶45. Shield then introduced products with titles mirroring KLDiscovery's switch from Unified Archive to Nebula Big Data Store, including "Nebula Big Data," "Nebula Archive," and "Nebula Legal Hold." *Id.* at ¶46. Given Defendant Gardner's position at KLDiscovery at this time, it can at least be reasonably inferred that he was aware and involved in this misappropriation. Any doubt would have been dispensed when Shield hired him as a Compliance Strategist in 2022. *Id.* at ¶50. In the same year, Shield Israel announced its partnership with KLDiscovery for the release of another Nebula product, Nebula Intelligent Archive, which offered comprehensive data management services of the type ZL had been offering for years. *Id.* at ¶52. Shield chose Defendant Gardner to trumpet that partnership at ZL's expense. *Id.* Defendant was directly involved, and is directly benefiting from his knowledge of ZL's purloined data, software and technology. The entire new partnership of the Shield Defendants and KLDiscovery will no doubt benefit as well.

As noted, a complaint must provide fair notice of what the plaintiff's claim is and the ground on which it rests. *In re Platinum-Beechwood Litig.*, 427 F.Supp.3d 395, 438 (S.D.N.Y. 2019). Such notice would be lacking where the plaintiff failed to provide even basic information necessary to determine which companies and individuals were involved in the wrongful conduct. *See Saphirstein v. Mauzone Mania LLC*, 15-cv-7264, 2017 WL 3278893, at *3 (E.D.N.Y. July 31, 2017)(dismissing complaint naming four defendants and listing 20 anonymous defendants). ZL's Complaint goes well beyond providing fair notice as to Gardner. Complaints have been deemed sufficient with far less detail. For example, in *Kaplan Group*, 694 F.Supp.3d 374, the plaintiff-

5

investment funds alleged a breach of contract against sellers of protective equipment and ammunition. *Id.* at 387. Without attaching the contract to their complaint, the plaintiffs alleged that a contract nonetheless existed and was breached where latex gloves were delivered in lieu of the medical grade nitrile gloves ordered. *Id.* This Court drawing all reasonable inferences in favor of the plaintiffs, found that plaintiff had sufficiently alleged a plausible contract which defendants breached. Similarly, in *Goetz v. Ainsworth Pet Nutrition, LLC*, 768 F.Supp.3d 645, 652 (S.D.N.Y. 2025), a defendant asserted he was entitled to dismissal from a consumer protection case because the Complaint merely asserted he was a distributor of the products and that he acted "jointly" and "in concert" with the other defendants. This Court rejected the motion as mere distribution (where the complaint included a picture of defendant as distributor) was sufficient to subject one to liability were the elements satisfied against the other defendants.

Defendant Gardner also variously complains that the specific information he was involved in misappropriating was not provided, and his access to specific confidential and proprietary information not alleged. None of these assertions have any merit, particularly where they are peculiarly within the possession and control of the defendant. *See Steadfast Ins. Co. v. T.F. Nugent, Inc.*, 513 F.Supp.3d 419, 425 (S.D.N.Y. 2021)(accepting as true allegations upon information and belief that defendant dominated under an alter ego theory). It is never necessary to reveal confidential and proprietary information specifically in a pleading. At the pleading stage, a plaintiff alleging misappropriation must do little more than "describe the [trade] secret with sufficient specificity that its protectability can be assessed." *DFO Global Performance Commerce Limited (Nevada) v. Nirmel*, 20-CV-6093 (JPO), 2021 WL 3475596, *4 (S.D.N.Y. Aug. 6, 2021). As for whether Defendant Gardner was the "driving force," the Amended Complaint specifically alleges that: he and KLDiscovery misappropriated from Plaintiff (Dkt. 46 at ¶¶1 & 37-45); he

6

served as a Vice-President of KLDiscovery (¶¶34-35), was the primary contact with ZL during the years of misappropriation for the services misappropriated, received regular confidential updates from Plaintiff thereby (¶¶36-45), and that he was hired by Shield in the very same role to take advantage of the misappropriation (¶¶50-54.)    Even low-level employees with access to misappropriated confidential information have been held properly-pled as defendants where "they had knowledge of the [misappropriated] products and shared this knowledge with [the competitor]." *See KatiRoll Co., Inc. v. Kati Junction, Inc.*, 33 F.Supp.3d 359, 370 (S.D.N.Y. 2014). Any specifics lacking are the result of the secrecy of the misappropriation as Defendant Gardner was not within ZL's employ.    ZL should have the opportunity to discover any such particulars in the proceeding itself by making requests of KLDiscovery and Gardner.    "Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Twombly*, 550 U.S. at 545.

## III.    PLAINTIFF'S LANHAM ACT CLAIM IS PLAUSIBLY STATED AGAINST DEFENDANT GARDNER

In relevant part, 15 U.S.C. section 1125(a)(1)(A) of the Lanham Act provides that "any person who in connection with any [] services uses any word, term, name symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation, which—is likely to cause confusion, or to cause mistake as to the origin, sponsorship or approval of his services is liable for damages under the Act.    Plaintiff has alleged in the Amended Complaint that the Shield Defendants having secured access to ZL's confidential and proprietary data and information through KLDiscovery and Aaron Gardner, have palmed off that technology and are offering the services ZL spent hundreds of manhours to build as their own.    The claim as alleged is fully sufficient.

7

## A. Plaintiff has Established a Plausible Claim for Reverse-Passing Off

Defendant Gardner asserts that the Lanham Act analysis begins with "reverse-passing off," i.e., where "A sees B's product under A's name." *Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 780 (2d Cir. 1994). Reverse-passing under the Lanham Act is established where: 1) the service at issue originated with the plaintiff, 2) the origin of the product was falsely designated by the defendant, 3) that the false designation of origin was likely to cause customer confusion, and 4) the plaintiff was harmed thereby. *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 131 (2d Cir. 2004). Each of these elements was alleged and demonstrated with a set of plausible facts. ZL with massive effort created a singular, unified architecture solution for big data clients, and maintained that as confidential. Dkt. 46, Amend. Compl. ¶¶15; 35; & 37. It developed a mark, Unified Archive, secured trademark protection to the mark and heavily promoted its big-data business throughout the country, earning awards. *Id.* at ¶¶18, 21-24. Shield gained improper access to Plaintiff's solution through KLDiscovery and Gardner. *Id.* at ¶¶1, 40-44. KLDiscovery arranged demonstrations to Shield from 2018-2020 relating to the data and technology supporting ZL's key services. *Id.* at ¶45. Shield used the same and similar name, Nebula fronting for ZL's Unified Archive, as KLDiscovery had improperly adopted. *Id.* at ¶¶43-44. Shield hired Defendant Gardner from KLDiscovery in 2022 in largely the same capacity as he enjoyed at KLDiscovery while working closely with ZL in order to take advantage of the misappropriated confidential and proprietary data. *Id.* at ¶¶50 &53. Shield incorporated ZL's data into Shield's Nebula Intelligent Archive, which it offers to the same customers. *Id.* at ¶¶54 & 64-65. Shield thereupon offered the same type of solutions ZL had offered without legitimate research, development, or validation. *Id.* at 58. Such conduct was likely to mislead consumers. *Id.* at ¶64.

8

Defendant Gardner insists that what is missing from the Amended Complaint is that ZL never specifically alleged that Defendant Gardner used the protected mark—Unified Archive—in commerce without ZL's consent. (Br. at 6.) But use of a protected mark is not a requirement of any reverse passing off claim under the Lanham Act. "The Lanham Act provides a statutory remedy to a party injured by a competitor's 'false designation of origin' of its product [or service], whether or not the party has secured a federally registered trademark." *L& J. Stickley, Inc. v. Canal Dover Furniture, Co.*, 79 F.3d 258, 262 (2d Cir. 1996). In a reverse passing off claim, "it is precisely the removal of a competitor's trademark from a product that is the hallmark of such claims." *Societe*, 380 F.3d at 131 (vacating dismissal of plaintiff's complaint under the Lanham Act for the reverse passing off of hotel services).

### B. Defendants Misappropriated More than Ideas, Concepts and Communications

"Origin" within the meaning of the Lanham Act refers not only to geographical origin, but origin of manufacture. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30-31 (2003). In *Dastar*, the Supreme Court held: "the phrase [origin] refers to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept or communication embodied in those goods." *Id.* at 37. Thus, the mere author of ideas that are encompassed within a product or services are not protectible under the Lanham Act. To hold otherwise would allow the use of the Lanham Act to cover copyrighted subject matter. *Id.* But the two Acts cover differing subject matter. Copyright law protects creative expression, *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 138-39 (2d Cir. 1998), whereas the Lanham Act "primarily prevent[s] consumer confusion on the one hand while promoting and rewarding healthy competition on the other," *Forschner Grp., Inc. v. Arrow Trading Co.*, 904 F. Supp. 1409, 1416 (S.D.N.Y. 1995), *aff'd*, 124 F.3d 402 (2d Cir. 1997). *See Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F.Supp.2d 259, 263

(S.D.N.Y. 2005)("The right to copy creative works, with or without limitation is the domain of copyright, not of trademark or unfair competition. The failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright.") Indeed, the *Dastar* court observed that the plaintiff's complaint in that case would "undoubtedly be sustained" under the Lanham Act if the defendant had purchased the plaintiff's videotapes and merely repackaged them as its own. *Dastar*, 539 U.S. at 31.

Plaintiff's claims do not concern excluding others from ZL's copyrighted expression or copyrighted software. Dkt. 46, ¶26 ("ZL's architecture and services are not communicative or expressive components of any work covered by the United States Copyright Act.") Instead, the allegations in the Amended Complaint are squarely related to the Defendants' use of ZL's misappropriated data, repackaging that data as Shield's own, to gain an unfair leg up with the same consumers to whom Plaintiff had been selling its services for many years. Plaintiff is the producer of its services and is therefore not barred from *Dastar* from preventing the purloining of its services through misappropriation. Under these circumstances, the proper cause of action for Plaintiff is false designation of origin under the Lanham Act.[1]

Defendant Gardner places great emphasis on the ruling in *Smartix Intern. Corp. v. MasterCard Intern., LLC*, No. 06-cv-5174 (GBD), 2008 WL 4444554 (S.D.N.Y. Sept. 30, 2008), which he holds bars Plaintiff's claim under the Lanham Act. In *Smartix*, plaintiff alleged that its employee stole materials related to a sports marketing program, which he provided to credit card companies. These companies were alleged to have then replicated and used the materials in some

---

[1] The Amended Complaint also plausibly alleges violation of the Defend Trade Secrets Act, 18 U.S.C. section 1836, et seq. *See* Dkt. 46, ¶¶15-16 (development of big data capabilities offering Plaintiff competitive advantage); ¶¶19, 25, 28-32 (maintained in confidence); ¶¶1, 34-62 (access to which was obtained by improper means). To the extent that the Court dismisses the Plaintiff's Lanham Act Claim, Plaintiff reserves the right to amend and add this federal claim.

fashion to "fuel" their own affinity card programs. *Id.* at *6. The court dismissed the complaint as beyond the scope of the Lanham Act, citing *Dastar*. But as noted, *Dastar* does not require that result and the *Smartix* court's analysis as to why *Dastar* did was at best limited, particularly as the plaintiff there was also a producer of the programs he alleged were replicated.

A number of courts facing similar cases producer-plaintiffs have brought under the Lanham Act have allowed the claim to proceed, and this Court should do so as well. The first such court to do so in the wake of *Smartix* was *Experian Marketing Solutions, Inc. v. U.S. Data Corp.*, 8:09CV24, 2009 WL 2902957 (D. Nebraska Sept. 9, 2009). In *Experian*, the plaintiff was the owner of an information database used for consumer credit reporting. *Id.* at 1. The defendant competed with the plaintiff for the same consumers. *Id.* The plaintiff alleged that the defendant was in the possession of unauthorized data files containing the plaintiff's marks. *Id.* Considering *Dastar*, the motions court allowed the plaintiff's Lanham Act false designation of origin claim to proceed, noting that what was at issue was the unauthorized use of data files, not the ideas and concepts behind the files. *Id.* at *10.

The question was taken up the following year by the United States District Court for the Northern District of Illinois in *Cable v. Agence France Presse*, 728 F.Supp.2d 977 (N.D. Ill. 2010). In that case, the plaintiff-photographer had entered an agreement with defendant-news agency to distribute his photos. Instead, the agency removed the photographer's photo credit and copyright notice. Despite *Dastar* and the plaintiff's simultaneous cause of action under the Copyright Act, the motions court allowed the case to proceed, referring to the basis for the *Dastar* ruling and noting that the defendant "took the plaintiff's photos and repackaged them as their own without revision." *Id.* at 981.

11

A few months later, the United States District Court for the Eastern District of Virginia decided *Cvent, Inc. v. Eventbright, Inc.*, 739 F.Supp.2d 927 (E.D. Va. 2010). In *Cvent*, the plaintiff-event planner alleged that the defendant-competitor "scraped" the plaintiff's website, reformatted it, and posted it as its own. The Cvent court specifically considered the sparse ruling in *Smartix* and found that the plaintiff had "the better of the argument" as the defendant has re-branded and re-packaged its product (the CSN venue database) and sold it as its own." *Id*. at 936. *Cf. General Universal Sys., Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004)(affirming summary judgment rejection of Lanham Act claim but noting that "GUS has not accused HAL of taking tangible copies of its software, removing its trademarks, and selling them as its own").

The Amended Complaint details that what was taken from ZL and palmed off as Shield's own included more than any ideas, designs or concepts. "Specific data connectors and software allowing the reconstruction and lifestyle management of data," (Dkt. 46 at ¶66) were taken without any authority and despite robust confidentiality provisions. Demonstrations as to how this worked in practice were arranged by KLDiscovery for Shield's benefit, and the companies entered a partnership based on the same technology. *Id*. at ¶52. Specific services offered to the consuming public, including ZL's Core, ZL Compliance Manager, Post-review, ZL Discovery Manager, and Case Management were compromised, "incorporated into Nebula Intelligent Archive, or other products of Shield and are being passed off as Shield's rather than ZL's." *Id*. at ¶66.

## IV.    PLAINTIFF'S MISAPPROPRIATION CLAIM UNDER NEW YORK LAW IS PLAUSIBLY STATED AGAINST DEFENDANT GARDNER

Defendant asserts that its claim against Gardner under New York law is based on "blatant conjecture," and that Plaintiff has failed to carry its burden to show that he engaged in misconduct. But Plaintiff taking all inferences in its favor has without doubt plausibly stated a claim for misappropriation under New York law.

12

As this Court noted in *Bobcar Media, LLC v. Aardvark Event Logistics, Inc.*, 16-CV-885 (JPO), 2017 WL 74729, *8 (S.D.N.Y. Jan. 4, 2017), misappropriation under New York law is "a capacious tort." "The essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchase as to the origin of goods." *Id., quoting Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995). Misappropriation of confidential information, even business confidential information such distribution lists, support a claim for unfair competition under New York law. *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F.Supp.2d 500, 503 (E.D.N.Y. 2009)(denying motion for summary judgment).

As noted, Defendant Aaron Gardner was the principal point of contact between KLDiscovery and ZL after joining KLDiscovery as its Vice-President of Legal Technology Consulting in 2012. Dkt. 46 at ¶¶34-37. Defendant Gardner had complete access to ZL's confidential and proprietary data and was directly involved in the Compliance, Information Governance and Archiving business at the heart of the case. *Id.* at ¶37. Defendant Gardner signed the Amendments to the Software Development and License Agreements ("SDLSA") that KLDiscovery and ZL entered into in 2015 and 2018. *Id.* at ¶12. He served in that capacity when KLDiscovery wrote without any authorization on its website that ZL's Unified Archive was "our" solution to handle big data challenges, and when KLDiscovery arranged multiple demonstrations of ZL's capabilities to Shield, despite confidentiality protections prohibiting such demonstrations. *Id.* at ¶45. He used that position to misappropriate from Plaintiff from 2018 through 2002. Id. at ¶¶1, 35-58. That is why he was hired and continues to serve as Shield's Compliance Strategist and is assigned to speak to Shield's new-found capabilities in public press releases. *Id.* at ¶52.

13

## A. Defendant Gardner Misrepresents the Allegations of the Amended Complaint

According to Defendant Gardner, Plaintiff failed to assert that Defendants substituted their technology for Plaintiff's in the Amended Complaint. Def. Gardner Br. at 11. That assertion is plainly mistaken. *See* Dkt. 46 at ¶¶40-44 (alleging KLDiscovery publicly asserted it at least in part owned ZL technology and capabilities, then removed the assertion in the next webpage); ¶53 (alleging that Defendant Gardner appropriated his knowledge of the platform to achieve similar results for Shield), ¶54 (alleging that the incorporation of ZL data and architecture into Shield's Nebula Intelligent Archive); ¶58 (alleging the impossibility of Shield achieving big data solutions in less than a year); ¶76 (alleging that the incorporation of specific aspects and data of the ZL UA architecture into the Nebula platform); 77 (alleging that Defendants did not act to create a better platform but purloin information). Defendant Gardner claims that any allegation that he acted in bad faith is conclusory. But bad faith is clearly demonstrated by his actions in presiding and participating in the misappropriation of confidential materials from Plaintiff, then benefiting from that misappropriation. This is the essence of bad faith. To act in bad faith, one must exploit some "commercial advantage which belonged exclusively to [another]." *LoPresti v. Mass. Mut. Life Inc. Co.*, 30 A.D.3d 474, 820 N.Y.S.2d 275, 277 (2d Dep't 2006).

## B. Plaintiff is under No Obligation to Recite Defendant Gardner's Technical Expertise

Defendant Gardner also complains that he does not have the wherewithal to understand how to purloin ZL's technology. But that is a matter of proof for Gardner to offer on summary judgment, and does not stand in the way of a plausible claim at the pleadings stage. *See, e.g.*, *ExpertConnect, LLC v. Fowler*, 18-CV-4828 (LGS), 2019 WL 3004161, at *6 (S.D.N.Y. July 10, 2019)(sufficiently alleging misappropriation where employee downloaded a document ***unrelated*** to the scope of her employment, then tried to conceal the download). In any event, Plaintiff has

14

alleged that Defendant Gardner was well aware of ZL's technology having worked with ZL through KLDiscovery for 10 years, including on an executive level, with respect to the very services that are the heart of the dispute, and now continues to work with Shield with respect to the same technology, only recently launched.  "Courts may reasonably infer that the defendant used plaintiff's trade secret where the defendant retains plaintiff's employees and launches a competing product shortly hereafter." *Data Device Corp. v. W.G. Holt, Inc.*, 19-CV-4105, 2020 WL 7024312, at *4 (E.D.N.Y. Nov. 30, 2020).

### C. Shield's Inexperience and the Timeline of its Launch Plausibly Demonstrate Misappropriation

Defendant Gardner asserts that Plaintiff's assertion of the timeline leading to the launch of Shield's products are insufficient "barebones allegations," citing the court's reasoning in *SS&C Techs., Holdings, Inc. v. Arcesium LLC*, 22-CV-02009, 2024 WL 5186530 (S.D.N.Y. Dec. 20, 2024). But *Arcesium* is wholly distinguishable. In *Arcesium*, both parties submitted declarations and based on these declarations, not the pleading, the court dismissed the complaint. *Id.* at 11. The declarations made clear that the truncated timeline involved not the development of competing technology but the difficulty of switching from one platform to another. *Id.* Indeed, the *Arcesium* court specifically found that an unusually short time for independent development typically results in a reasonable inference of misappropriation. "Courts in this district have drawn a reasonable inference of misappropriation where a plaintiff alleged that a defendant lacked the technical expertise or requisite experience in the market such that defendant's development of its competing product would be implausible."  Plaintiff has alleged just such an unusually short time for development by the Shield Defendants. *See* Dkt. 46 at ¶15 (alleging that ZL invested hundreds of thousands of man hours from April 1999 to develop its unified architecture); ¶¶57-58 (alleging that Shield was able to develop its own architecture within the short time frame of less than one

(1) year, too little time to use either its Series A or Series B funding, absent misappropriation). *See Medtech Prod. Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 790 & 805 (S.D.N.Y. 2008)(misappropriation plausible where defendant had "no experience in the . . .market, [yet] was able to rush a [product] to the market, without going through any development process" in only seven months instead of the normal years of experimenting."); *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018)(misappropriation plausible where defendant introduced competing products in record time despite defendant's lack of experience in developing clinical trial management software). Notably, both the *Medtech* and *Medidata* cases appear and are analyzed in the *Arcesium* decision Defendant Gardner mistakenly relies on.

Many cases of comparable or less pleading strength have been deemed sufficiently plausible to survive a motion to dismiss. *See, e.g., Tilebar v. Glazzio Tiles*, 723 F.Supp.3d 164, 194 (S.D.N.Y. 2024)(accepting misappropriation claim where employee downloaded confidential materials, then deleted the files); *Fowler*, 2019 WL 3004161; *Bobcar Media*, 2017 WL at *8 (accepting misappropriation claim described through the use of plaintiff's trade dress); *Katiroll*, 33 F.Supp.3d. at 371 (denying motion to dismiss where plaintiff developed "unique flavor profile" and inferring that defendants used the recipes of their former employer to unfairly compete); *Int'l Diamond Importers, Inc. v. Oriental Gemco (N.Y.), Inc.*, 64 F.Supp.3d 494, 524 (S.D.N.Y. 2014)(finding allegations sufficient that Defendant with intent to exploit recognition of Plaintiff's trade dress made and sold copies of jewelry with trade dress).

### D. The Element of Customer Confusion is Fully Supported

Defendant Gardner asserts that Plaintiff's allegations of customer confusion are pled in a conclusory and/or duplicative fashion, but that is hardly the case. In fact, the allegations are well-supported by factual allegations throughout the Amended Complaint. All legal allegations depend

upon the preceding factual paragraphs of the Amended Complaint. *See, e.g.*, Dkt. 46, at ¶¶63, 72, 83 & 88.  In sum, Plaintiff has alleged that after much time and effort, Plaintiff developed the ability to handle large volumes of data for its multinational corporate customers, allowing among other things the accurate and efficient re-creation of corrupted data, making data storage and recovery easier by minimizing redundancy and obsolete data and allowing data management outside of a given archive. *Id.* at ¶¶15 & 17.  Plaintiff heavily promoted its capabilities and its mark throughout the United States, achieving business awards and secondary consideration in the minds of consumers. *Id.* at ¶¶20-24.  Plaintiff has further alleged but for the misappropriation the Shield Defendants did not have that capability, in particular the scaling of large volumes of data, and are now touting that they do. *Id.* at ¶¶42-57.  Plaintiff has alleged that its valuable multinational Client has begun migrating data away from ZL, presumably to the Shield Defendants through the connivance and benefit and Defendants KLDiscovery and Gardner. Dkt. 46, at 1, ¶¶60-62.  These and other facts plausibly allege that Defendants' conduct has "caused confusion with, and have been mistaken for ZL's activities and achievements in the mind of the public, and are likely to cause such confusion or mistake." *Id.* at 84.  Indeed, Defendants' conduct has caused at least two instances of customer confusion, though that element need not be shown with respect to unfair competition. *Id.* at ¶65. *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612, 671 (S.D.N.Y. 2016)(although "actual confusion need not be shown to prevail under the Lanham Act, there can be no more positive or substantial proof of the likelihood of confusion)(citation omitted).

## CONCLUSION

Wherefore, ZL Technologies, Inc. requests that this Court deny Defendant Gardner's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively to allow Plaintiff to replead its Complaint to conform to the Court's ruling.

Dated: August 21, 2025

**WUERSCH & GERING LLP**

Kevin Murphy
88 Pine Street Wall Street Plaza
20th Floor
New York, NY 10005
(212) 509-6311

*Attorneys for Plaintiff ZL Technologies, Inc.*

18