UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x

ZL TECHNOLOGIES, INC.,

                                    Plaintiff,                          Case No. 1:25-cv-02673-JPO

          v.

KLDISCOVERY ONTRACK LLC; SHIELD                                        **ORAL ARGUMENT**
FINANCIAL COMPLIANCE, LTD.;                                            **REQUESTED**
SHIELD FINANCIAL COMPLIANCE, INC.
and AARON GARDNER,

                                    Defendants.

-------------------------------------------------------------------------x


### PLAINTIFF ZL TECHNOLOGIES, INC.'S OPPOSITION TO
### DEFENDANT KLDISCOVERY ONTRACK LLC'S
### MOTION TO DISMISS THE AMENDED COMPLAINT

**Table of Contents**

PAGE(S)

PRELIMINARY STATEMENT ................................................................................................ 1

I.   THE STANDARDS GOVERNING MOTIONS TO DISMISS ....................................... 1

II.  PLAINTIFF'S CLAIM UNDER THE LANHAM ACTION IS TIMELY ....................... 2

III. PLAINTIFF HAS PLAUSIBLY ALLEGED A LANHAM ACT CLAIM UNDER
     SECTION 1125(a) .................................................................................................... 5

     A.   Plaintiff has Shown that Plaintiff Owns a Protectable Mark ................................... 7

     B.   Plaintiff has Shown that Defendants' Conduct is Likely to Cause Confusion........ 8

     C.   Defendant KLDiscovery Relies on Cases that are Wholly Distinguishable........... 8

          1.   ZL is not relying on an unregistered birth name................................. 8

          2.   KLDiscovery wastes the Court's time with its misplaced Polaroid analysis...... 9

IV.  PLAINTIFF HAS PLAUSIBLY ALLEGED MISAPPROPRIATION UNDER NEW
     YORK LAW ............................................................................................................11

     A.   KLDiscovery has Fair Notice of Plaintiff's Claim for Misappropriation..............11

     B.   Plaintiff has Sufficiently Plead KLDiscovery's Bad Faith ................................... 13

V.   PLAINTIFF HAS PLAUSIBLY ALLEGED KLDISCOVERY'S BREACHES OF
     CONTRACT ........................................................................................................... 14

CONCLUSION............................................................................................................... 17

**Table of Authorities**

PAGE(S)

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................ 2

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................ 2

*Charles Atlas, Ltd., v. DC Comics, Inc.,*
    112 F.Supp.2d 330 (S.D.N.Y. 2000) ................................................................. 4, 5

*Conopco, Inc. v. Campbell Soup Co.,*
    95 F.32d 187 (2d Cir. 1996)............................................................................... 3, 4

*Dual Groupe, LLC v. Gans-Mex LLC,*
    932 F. Supp. 2d 569 (S.D.N.Y. 2013) ................................................................... 7

*Elecrolux Corp. v. Val-Worth, Inc.,*
    6 N.Y.2d 556 (1959).............................................................................................. 14

*Franklin v. X gear 101, LLC,*
    No. 17-cv-6452, 2018 WL 3528731 (S.D.N.Y. July 23, 2018) ............................. 6

*Gristede's Foods, Inc. v. Unkechauge Nation,*
    06-cv-1260, 2008 WL 3334032 (E.D.N.Y. Aug. 8. 2008) ..................................... 4

*Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Corp.,*
    64 A.D.3d 85 (2d Dep't 2009) ............................................................................. 16

*In re Platinum-Beechwood Litig.,*
    427 F.Supp.3d 395 (S.D.N.Y. 2019) ................................................................... 13

*ITC, Ltd. v. Punchgini, Inc.,*
    9 N.Y.3d 467 (2007).............................................................................................. 11

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.,*
    58 F.3d 27 (2d Cir. 1995)..................................................................................... 14

*Kaplan v. Old Mut. PLC,*
    526 F. App'x 70 (2d Cir. 2013) ........................................................................... 16

*Kassner v. 2nd Ave. Delicatessen, Inc.,*
   496 F.3d 229 (2d Cir. 2007) ................................................................................. 1

*Laura Laaman & Assocs., LLC v. Davis,*
   No. 16-cv-594 (MPS), 2017 WL 5711393 (D. Conn. Nov. 27, 2017) ....................................... 10

*Locus Techs. v. Honeywell Int'l Inc.,*
   632 F.Supp.3d 341, 355 (S.D.N.Y. 2022) ........................................................... 16, 17

*LoPresti v. Mass. Mut. Life Inc. Co.,*
   30 A.D.3d 474, 820 N.Y.S.2d 275 (2d Dep't 2006) ................................................... 14

*Lowry v. Oppenheimerfunds, Inc.,*
   20-cv-2288 (VSB), 2022 WL 976823 (S.D.N.Y. Mar. 31, 2022) ........................................ 16

*Lundberg v. State,*
   25 N.Y.2d 467 (1969) ....................................................................................... 13

*Mabry v. Neighborhood Def. Serv.,*
   769 F. Supp. 2d 381 (S.D.N.Y. 2011) ....................................................................... 3

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.,*
   127 A.D.3d 48 (1st Dep't 2015) ............................................................................ 14

*McKenzie v. Artists Rights Society, Inc.,*
   757 F.Supp.3d 427 (S.D.N.Y. 2024) .................................................................... 4, 5

*MidCap Bus. Credit, LLC v. MidCap Fin. Tr.,*
   655 F. Supp. 3d 193 (S.D.N.Y. 2023) ..................................................................... 10

*Pani v. Empire Blue Cross Blue Shield,*
   152 F.3d 67 (2d Cir. 1998) ............................................................................... 2, 3

*Papasan v. Allain,*
   478 U.S. 265 (1986) ........................................................................................... 2

*Pearl River Union Free Sch. Dist. v. Duncan,*
   56 F.Supp.3d 339 (S.D.N.Y. 2015) .......................................................................... 2

*Polaroid Corp. v. Polarad Elecs. Corp.,*
   287 F.2d 492 (2d Cir. 1961) ............................................................................ 10, 11

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.,*
   507 F.3d 117 (2d Cir. 2007) ................................................................................. 2

*Portkey Techs. Pte Ltd. v. Venkateswaran,*
No. 23-cv-5074 (JPO), 2024 WL 3487735 (S.D.N.Y. July 19, 2024) ............................6, 10, 11

*Professional Golfers Ass'n of Am. v. Bankers Life & Cas. Co.,*
514 F.2d 665 (5th Cir. 1975) ............................................................................................... 6

*Register.com, Inc. v. Verio, Inc.,*
356 F.3d 393 (2d Cir. 2004) ................................................................................................ 16

*Shawanaz v. Intellipharmaceutics Int'l, Inc.,*
348 F.Supp.3d 313 (S.D.N.Y. 2018) .................................................................................... 2

*Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.,*
380 F.3d 126 (2d Cir. 2004) ................................................................................................ 10

*Stapleton v. Barrett Crane Design & Eng'g,*
725 F.App'x 28 (2d Cir. 2018) ............................................................................................. 16

*Star Indus., Inc. v. Bacardi & Co.,*
412 F.3d 373 (2d Cir. 2005) ................................................................................................ 7

*Trombetta v. Novocin,*
414 F. Supp. 3d 625 (S.D.N.Y. 2019) ................................................................................. 9

*Two Pesos, Inc. v. Taco Cabana, Inc.,*
505 U.S. 763 (1992) ............................................................................................................. 8

*Twohig v. Shop-Rite Supermarkets, Inc.,*
519 F. Supp. 3d. 154 (S.D.N.Y. 2021) ................................................................................ 17

*United States Media Corp., Inc. v. Edde Enter, Inc.,*
No. 94-civ- 4849, 1996 WL 520901 (S.D.N.Y. Sept. 12, 1995) ........................................ 13

*Verschleiser v. Frydman,*
No. 22-cv-7909, 2023 WL 5835031 (S.D.N.Y. Sept. 7, 2023) ......................................... 9

*Waldman Pub. Corp. v. Landoll, Inc.,*
848 F. Supp. 498 (S.D.N.Y. 1994), *vacated on other grounds,* 43 F.3d 775 (2d Cir. 1994) ..... 10

*Yarmuth-Dion, Inc. v. D'ion Furs, Inc.,*
835 F.2d 990 (2d Cir. 1987) ................................................................................................ 9

**Statutes**
15 U.S.C.A. § 1114 ................................................................................................................ 6
15 U.S.C.A. § 1125(a)...................................................................................................5, 6, 11

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 1, 2, 17

**Rules**

N.Y. Civ. Prac. L. & R. § 213(8) (2025) ...................................................................... 3, 4

**Secondary Sources**

Trademark Manual of Examining Procedure, § 1209.01 (May 2025)............................................. 7

# PRELIMINARY STATEMENT

KLDiscovery Ontrack LLC's ("KLDiscovery's") motion to dismiss the Amended Complaint is best understood as a caricature of ZL's claims and positions. Defendant KLDiscovery recites the standards for courts in deciding motions to dismiss, then ignores those standards in its analysis. Defendant KLDiscovery mines quotes from dismissals in pro se cases for issues which have nothing at all to do with Plaintiff's claims, i.e., where the pro se plaintiff brought Lanham Act claims for unregistered birth names. Defendant KLDiscovery cites numerous trademark infringement cases—a cause of action which ZL did not bring—where comparative analysis between marks has been set aside as irrelevant in a false designation of origin case such as this one. Defendant KLDiscovery ignores its own extensive performance under its obligations to Plaintiff under the SDLSA and then claims that Plaintiff did not attach the relevant contract to the Amended Complaint when it attached the SDLSA. For Defendant KLDiscovery, the motion is one repeated exaggeration or one distortion after another untethered to facts. None of these shabby tactics would be necessary if Plaintiff's claims were implausibly advanced. The Amended Complaint sets forth solid causes of action against the Defendants, and Defendant KLDiscovery's excessive rhetoric and wholly unpersuasive legal positions cannot undo the allegations of the Amended Complaint. This case should proceed into discovery.

## I.     THE STANDARDS GOVERNING MOTIONS TO DISMISS

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true the complaint's factual allegations, as well as those facts incorporated by reference into the complaint, and draw all reasonable inferences in the plaintiff's favor. *Kassner v. 2nd Ave. Delicatessen, Inc.*, 496 F.3d 229, 237 (2d Cir. 2007). The complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon

which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007). The "[f]actual allegations must be enough to raise a right of relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Legal conclusions couched as a factual allegation need not be accepted as true. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). The complaint must state "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Determining whether a complaint states a plausible claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The facts should be examined as a whole and not "scrutinized in isolation" to determine whether the plaintiff has met the pleading standard. *Shawanaz v. Intellipharmaceutics Int'l, Inc.*, 348 F.Supp.3d 313, 326 (S.D.N.Y. 2018)(denying motion to dismiss in securities fraud matter).

## II.   PLAINTIFF'S CLAIM UNDER THE LANHAM ACTION IS TIMELY

Defendant KLDiscovery asserts that ZL's reliance on an archived website page from 2018—a page that an embarrassed Defendant KLDiscovery soon took down—demonstrates that ZL brought a stale Lanham Act claim. Defendant KLDiscovery is wrong on both the facts and the law.

"An affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998). The burden rests solely on the defendant raising the defense, as with all 12(b)(6) motions. *Pearl River Union Free Sch. Dist. v. Duncan*, 56 F.Supp.3d 339, 351 (S.D.N.Y. 2015). And if the facts as stated in

the complaint, which must be taken as true and any reasonable inferences in favor of the plaintiff drawn therefrom, demonstrate the claim is not time-barred, the claim will survive. Dismissal based on an affirmative defense cannot occur unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Mabry v. Neighborhood Def. Serv.*, 769 F. Supp. 2d 381, 395 (S.D.N.Y. 2011). *See, e.g., Pani,* 152 F. 3d at 76 (affirming dismissal of plaintiff's claim where "virtually certain" claims would be barred by the statute of limitations). The parties agree that the applicable statute of limitations for any claim under the Lanham Act in New York is six years, analogizing Lanham Act claims to fraud claims. *Conopco, Inc. v. Campbell Soup Co.*, 95 F.32d 187, 191-92 (2d Cir. 1996); Civil Practice Law and Rules § 213(8).

As alleged in the Amended Complaint, on August 18, 2018, Defendant KLDiscovery listed features of ZL's unified platform and scaled architecture solutions on Defendant KLDiscovery's website, including ZL's compliance monitoring, records management, legal holds and e-discovery and storage management. Dkt. 46 at ¶43 and Ex. 3. The following year, that website page was removed and Defendant KLDiscovery's unauthorized use of ZL's Unified Archive mark may have ceased.[1] *Id.* at 44 & Ex. 4. At no point does the Amended Complaint note when ZL discovered this conduct. What the Amended Complaint does make clear, however, is that a number of years later in the wake of the Shield-KLDiscovery partnership, Defendant KLDiscovery began to act as less of a partner to ZL. For example, ZL alleges that on or about January 17, 2023, a KLDiscovery senior account manager revealed that the Client had requested a proposal for a front-end discovery solution, one that ZL was never informed about. Dkt. 46 at ¶60. And in December of 2023, a

---

[1] At best, such use if it were known, might bar a trademark infringement action for that use six years later. That is not what ZL has pled in the Amended Complaint.

KLDiscovery technical manager separately revealed the same thing, and the manager then went silent. Dkt. 46 at ¶61. Any reasonable inference drawn from the Complaint, taken as a whole, demonstrates that ZL had no idea that Defendant KLDiscovery had been misappropriating from it until after Defendant KLDiscovery stopped acting like ZL's partner and more like its competitor.

A cause of action under the Lanham Act accrues at the time the plaintiff "discovered the fraud, or could with reasonable diligence have discovered it." *See Campbell Soup Co.*, 95 F.32d 187 at* 191-92; Civil Practice Law and Rules § 213(8). In a federal question case, "a plaintiff's cause of action accrues when he discovers, or with due diligence should have discovered, the injury that is the basis of the litigation." *Gristede's Foods, Inc. v. Unkechauge Nation*, 06-cv-1260, 2008 WL 3334032, *3 (E.D.N.Y. Aug. 8. 2008). Unlike a situation where an employee was misappropriating from an employee, Defendant KLDiscovery had been misappropriating from its commercial partner, and concealing that misappropriation. Dkt. 46 at ¶44. Plaintiff did not directly manage Aaron Gardner or any of the other employees of Defendant KLDiscovery and could not reasonably have known what he and Defendant KLDiscovery were doing in the regular course. *Id.* at *4 (declining to dismiss Lanham Act claim based on statute of limitations where amended complaint allowed inference that plaintiff "may not have been reasonably aware of its injury until a later date").

Defendant KLDiscovery asserts that dismissal is required under cases such as *Charles Atlas, Ltd., v. DC Comics, Inc.*, 112 F.Supp.2d 330 (S.D.N.Y. 2000) and *McKenzie v. Artists Rights Society, Inc.*, 757 F.Supp.3d 427 (S.D.N.Y. 2024). Neither of those cases have any bearing on the allegations of the Amended Complaint. In *Charles Atlas, Ltd.*, 112 F.Supp.2d 330, the court dismissed plaintiff-publisher's Lanham Act claim on a full record on summary judgment for defendant's publication of a comic book that was open and notorious for 8 years before the suit

was brought. Here, Defendant KLDiscovery, a purported partner of ZL, published an unauthorized use of ZL's mark on one page of its website and then took it down, with no allegations that ZL ever saw it contemporaneously. Dkt. 46 at ¶¶40-44. In contrast, the court in *Atlas* found that as the "industry-leader:" "Atlas cannot now, as a matter of law, profess ignorance of the publication of the very comic book in which it has placed millions of dollars of advertising over several decades. A 'reasonably diligent plaintiff would have been on inquiry' upon [the comic book's publication].'" *Id.* at 335. Similarly in *McKenzie*, 757 F.Supp.3d at 439, the court dismissed plaintiff's Lanham Act under the doctrine of laches holding that the Complaint made clear that plaintiff was aware of issues concerning the image at issue more than 15 years before bringing the claim, and was in fact aware of repeated publications of the image over the years. Nothing in the four corners of the complaint demonstrates any awareness whatsoever of Defendant KLDiscovery's conduct until the filing of the Complaint.

Reasonable diligence certainly would not require ZL to monitor Defendant KLDiscovery webpages on a regular basis. What is clear from the four corners of the Amended Complaint, however, is that Plaintiff had to utilize the Wayback Machine to determine what Defendant KLDiscovery had been up to. The Amended Complaint does not list when Plaintiff utilized the Wayback Machine. If anything, a reasonably diligent plaintiff in ZL's shoes would have begun to investigate as of mid-late 2023, and the evidence will in fact show that following that period, plaintiff became aware of Defendant KLDiscovery's conduct.

### III. PLAINTIFF HAS PLAUSIBLY ALLEGED A LANHAM ACT CLAIM UNDER SECTION 1125(a)

A plaintiff, like ZL, alleging a violation of the Lanham Act under section 1125(a) "must plausibly allege that the defendant (1) used a designation or false designation of origin, (2) in interstate commerce, (3) in connection with goods or services, (4) when the designation was likely

5

to cause confusion, mistake, or deception as to the affiliation, connection, or association of the defendant with another person or the origin, sponsorship, or approval of the defendant's goods, services, or commercial activities by another person; and (5) that the plaintiff has been or is likely to be damaged by those acts." *Portkey Techs. Pte Ltd. v. Venkateswaran*, 23-cv-5074 (JPO), 2024 WL 3487735, at *2 (S.D.N.Y. July 19, 2024). Plaintiff has alleged in the Amended Complaint that the Shield Defendants having secured access to ZL's confidential and proprietary data and information through Defendants KLDiscovery and Aaron Gardner, have palmed off that data and technology and are offering the services ZL spent hundreds of manhours to build as their own. The claim as alleged is fully sufficient.

While it is true that ZL is not suing for federal trademark infringement of a registered mark, ZL has not abandoned its right to sue for unfair competition more broadly under the Lanham Act. ZL alleged violation of the Lanham Act section 1125(a), not section 1114. *See* 15 U.S.C. 1114 (allowing suit for infringement for registered trademarks). "Unfair competition . . . is a more broadly conceived tort than its frequent litigation partner, trademark infringement, and there are some instances where a defendant is guilty of competing unfairly without technically infringed." *Professional Golfers Ass'n of Am. v. Bankers Life & Cas. Co.*, 514 F.2d 665, 671 (5th Cir. 1975). To the extent that Plaintiff is required to demonstrate unfair competition in a non-infringement case based on a mark, Plaintiff has certainly satisfied any requisite standard. See *Franklin v. X gear 101, LLC*, No. 17-cv-6452, 2018 WL 3528731, at *10, n. 7 (S.D.N.Y. July 23, 2018)(holding in infringement case that plaintiff must show "ownership of a valid mark entitled to protection, and that the Defendants' actions are likely to cause confusion as to the origin or sponsorship of the defendant's goods.")

## A. Plaintiff has Shown that Plaintiff Owns a Protectable Mark

To establish ownership over an unregistered trademark, a plaintiff must show "prior use of the trademark." *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013). Further, "an unregistered mark is entitled to protection under the Lanham Act if it would qualify for registration as a trademark." *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 388 (2d Cir. 2005). Plaintiff satisfied both elements in the Amended Complaint. ZL's Unified Archive mark was submitted and registered with the United States Patent and Trademark Office from 2010 through 2020, and it has been in continuous use through the present and will continue as such. Dkt. 46 at ¶24.

Plaintiff has further demonstrated that the Unified Archive mark is inherently distinctive. Unified Archive was registered with the United States Patent and Trademark Office (USPTO) under registration number 3,833,864. *Id.* A trademark examiner reviewing the mark against other marks registered and unregistered determined that the mark was in use and ZL's use was not likely to cause confusion with other marks. Trademark Manual of Examining Procedure, section 1209.01 (marks that are merely descriptive of the services may not be registered on the Principal Register absent a showing acquired distinctiveness.) If there were any doubt, Plaintiff has fully satisfied the elements with the well-pled allegations in the Amended Complaint. There, Plaintiff alleged that it has built goodwill in the United States in the mark after expending substantial resources in developing, advertising or otherwise promoting Unified Archive, a "distinctive mark" that "signifies to its users that the architecture and services come from ZL and are maintained according to ZL's quality standards." Dkt. 46 at ¶22. ZL has achieved secondary meaning as an identifier of ZL's architecture and services. *Id.* at ¶23. In sum, even the mark were never registered, Plaintiff has alleged fully sufficient facts to satisfy these elements. *Two Pesos, Inc. v. Taco Cabana, Inc.*,

505 U.S. 763, 769 (1992)(holding that even if a mark is not inherently distinctive, it may acquire distinctiveness by achieving "secondary meaning" in the relevant consumer market"). A mark has acquired such "secondary meaning" when, "'in the minds of the public, the primary significance of a product feature ... is to identify the source of the product rather than the product itself.'" *Id.* at 766, n. 4.

### B. Plaintiff has Shown that Defendants' Conduct is Likely to Cause Confusion

In the Amended Complaint, ZL further demonstrated that Defendants' actions are likely to cause confusion as to the origin or sponsorship of the defendant's goods. The Shield Defendants gained improper access to Plaintiff's solution through Defendants KLDiscovery and Gardner. *Id.* at ¶¶1, 40-44. Defendant KLDiscovery arranged demonstrations to Shield from 2018-2020 relating to the data and technology supporting ZL's key services. *Id.* at ¶45. Shield used the same and similar name, "Nebula" fronting for ZL's Unified Archive, as Defendant KLDiscovery had improperly adopted. *Id.* at ¶¶43-44. Shield hired Defendant Gardner from Defendant KLDiscovery in 2022 in largely the same capacity as he enjoyed at Defendant KLDiscovery while working closely with ZL in order to take advantage of the misappropriated confidential and proprietary data. *Id.* at ¶¶50 &53. Shield incorporated ZL's data into Shield's Nebula Intelligent Archive, which it offers to the same customers. *Id.* at ¶¶54 & 64-65. Shield thereupon offered the same type of solutions ZL had offered without legitimate research, development, or validation. *Id.* at 58. Such conduct was likely to mislead consumers. *Id.* at ¶64.

### C. Defendant KLDiscovery Relies on Cases that are Wholly Distinguishable

#### 1. ZL is not relying on an unregistered birth name

Defendant KLDiscovery urges dismissal of the Amended Complaint based on cases that are wholly distinguishable. In *Verschleiser v. Frydman*, 22-cv-7909, 2023 WL 5835031 (S.D.N.Y.

Sept. 7, 2023), the pro se plaintiff alleged a "coordinated campaign" against him by defendants who previously worked with plaintiff in a shared real estate venture. Plaintiff's Lanham Act claim against the defendants was unrelated to any mark that had been registered with the USPTO. Instead, plaintiff alleged that the defendants misused his "name, likeness and marks in Youtube videos, websites, domains or subdomains, Internet postings and advertisements." *Id.* at *7. The court therefore required plaintiff to demonstrate the protectability of his unregistered trademark, i.e., his name and likeness and marks of his business with specificity." *Id.* at *14. In stark contrast to the Amended Complaint, the plaintiff had failed to do provide any supporting facts or descriptions, including that he had achieved some kind of celebrity status and the court appropriately dismissed his conclusory allegations. *Id.*, n. 11. Defendant KLDiscovery similarly relies on *Trombetta v. Novocin*, 414 F. Supp. 3d 625 (S.D.N.Y. 2019) but the dismissal of her Lanham Act claim carries as little weight. In *Trombetta*, another pro se plaintiff, an artist, also alleged that her name constituted a protectible mark. The court ruled such a mark descriptive, *id.* at 631, relying on *Yarmuth-Dion, Inc. v. D'ion Furs, Inc.*, 835 F.2d 990, 993 (2d Cir. 1987). But plaintiff failed to provide any information in the complaint that her unregistered descriptive name mark acquired secondary meaning. Without such allegations, the claim was dismissed. Here, Plaintiff is not dealing with a name mark, but with an inherently distinctive mark that had already passed muster with the USPTO. And unlike the *Trombetta* plaintiff, ZL here alleged substantial nonconclusory support, including a heavily-promoted business throughout the United States, and industry awards for its allegation of secondary meaning for Unified Archive. Dkt. 46 at ¶¶17-23.

## 2. **KLDiscovery wastes the Court's time with its misplaced Polaroid analysis**

Defendant KLDiscovery also asserts that the issue of customer confusion is best assessed by examining the eight factors arising from *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492,

495 (2d Cir. 1961). *Polaroid* has little relevance on a motion to dismiss the Amended Complaint. As this Court observed in *Portkey Techs.*, "the Second Circuit has held 'repeatedly' held that district courts are to consider the eight Polaroid factors when evaluating a Lanham Act *trademark infringement claim*." 2024 WL 3487735, at *2 (emphasis added). Here, Plaintiff does not allege unregistered trademark infringement. Nor does it allege use by the Shield Defendants of Plaintiff's mark. In a reverse passing off claim, "it is precisely the removal of a competitor's trademark from a product that is the hallmark of such claims." *Societe Des Hotels Meridien v. LaSalle Hotel Operating P'ship, L.P.*, 380 F.3d 126 (2d Cir. 2004)(vacating dismissal of plaintiff's complaint under the Lanham Act for the reverse passing off of hotel services). Thus, a *Polaroid* analysis of the "similarity of the marks," the "senior user's bridging of the gap," "sophistication of the consumer in distinguishing similar marks" and "evidence of use an imitative marks" does not offer much promise in assessing customer confusion. "As a general matter, however, courts have concluded that a party's attempt to pass off another party's product as its own satisfies the confusion requirement of the Lanham Act for an obvious reason — it represents a direct attempt to confuse a consumer about the origin of a product." *Laura Laaman & Assocs., LLC v. Davis*, 16-cv-594, 2017 WL 5711393, at *6 (D. Conn. Nov. 27, 2017). "Reverse passing off does not require that form of analysis [based on *Polaroid*]. *Waldman Pub. Corp. v. Landoll, Inc.*, 848 F. Supp. 498, 503 (S.D.N.Y. 1994), *vacated on other grounds*, 43 F.3d 775 (2d Cir. 1994). "It is inherent in Landoll's conduct that purchasers of the Landoll adaptations of these classic works will, as the result of Landoll's deceitful marketing, mistakenly believe that Landoll created the adaptations. That is a sufficient showing of impact upon consumers to justify injunctive relief." *Id.* at 504. *Compare MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, 655 F. Supp. 3d 193, 211 (S.D.N.Y. 2023)(plaintiff's allegations of trademark infringement under 15 U.S.C. section 1114 where analysis of the

comparable strength and similarity of the marks important). When this Court took up the issue in *Portkey Techs.*, the Court appropriately applied the *Polaroid* factors to the question of trademark infringement but not to the plaintiff's allegation of reverse passing off under the Lanham Act under 15 U.S.C. 1125(a). 2024 WL 3487735, at *9-10 (holding that plaintiff had not alleged reverse passing off but trademark infringement given potential association of confusion with the asserted trademarks). For the same reason, the Court should decline KLDiscovery's invitation to a *Polaroid* rabbit-hole.[2]

## IV. PLAINTIFF HAS PLAUSIBLY ALLEGED MISAPPROPRIATION UNDER NEW YORK LAW

### A. KLDiscovery has Fair Notice of Plaintiff's Claim for Misappropriation

A claim for unfair competition requires a plaintiff to demonstrate bad faith misappropriation of a property right or commercial advantage which belonged to the plaintiff. *ITC, Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007). Plaintiff has sufficiently alleged such misappropriation by both Defendant KLDiscovery and its then Vice-President of Compliance, Information Governance and Archiving, Defendant Aaron Gardner.

Defendants KLDiscovery and Gardner, each point to the other and allege that they have been improperly lumped into the same claim. KLDiscovery Br. at 14. Nonsense. As alleged, Plaintiff as part of its partnership with Defendant KLDiscovery (Dkt. 46 at ¶¶1 & 38) entered into multiple confidentiality agreements with Defendant KLDiscovery, the terms of which of course bound all employees, including Defendant Gardner. E.g., Dkt. 46 at ¶¶28-32; Ex. 2 at section 3. In 2012, prior to the misappropriation, Defendant KLDiscovery hired Defendant Gardner after acquiring Turnstone Solutions where he served as Chief Operating Officer, an executive capacity.

---

[2] With respect to Plaintiff's third cause of action, Defendant KLDiscovery moves to dismiss on nothing more than its Lanham Act assertions, all of which are meritless whether considered in relation to the Lanham Act cause of action or the New York mistake or confusion unfair competition cause of action.

*Id.* at ¶34. Defendant Gardner became the point of contact for the KLDiscovery relationship with ZL, regularly receiving updates concerning its confidential and proprietary architecture and software. *Id.* at ¶37. In 2015, he was promoted from Vice-President of Legal Technology Consulting, which handled e-discovery issues, to the broader remit of Compliance, Information Governance and Archiving. *Id.*

During the time that Defendant Gardner served as the KLDiscovery contact for ZL and the Client, KLD began misappropriating ZL's technology and the ZL Unified Archive mark. *Id.* at ¶¶1, 40-45. As alleged, Defendant KLDiscovery listed features of ZL's unified platform and scaled architecture solutions on the Defendant KLDiscovery website, including ZL's compliance monitoring, records management, legal holds and e-discovery and storage management. *Id.* at ¶43 and Ex. 3. The Wayback Machine archive provides that these features were listed on August 18, 2018, following Defendant Gardner's promotion. *Id.* at ¶40. Defendant Gardner did not promote himself in this unauthorized use, he promoted the interests of Defendant KLDiscovery, on whose website the unauthorized use appeared. The "our" in the unauthorized use is KLDiscovery, as the page refers to the "KLDiscovery approach" to data. *Id.* at Ex. 3 at 4. Defendant KLDiscovery removed this website, and replaced it with a product called Nebula Big Data Store, that was part of an eventual package offered through ZL's competitor Shield. *Id.* at ¶¶44 & 46. Shield later introduced products with titles mirroring Defendant KLDiscovery's switch from Unified Archive to Nebula Big Data Store, including "Nebula Big Data," "Nebula Archive," and "Nebula Legal Hold." *Id.*

The Amended Complaint further alleges that Defendant KLDiscovery arranged multiple demonstrations of ZL's big data capabilities to Shield, involving specific ZL products and services: ZL Compliance Manager, Post-review, ZL Discovery Manager, and Case Management products

then in use with the Client. *Id.* at ¶45. *Id.* at ¶¶45. Defendant KLDiscovery and Shield announced their partnership in June 2022. *Id.* at ¶52. KLD's employees—not Defendant Gardner—withheld critical commercial information directly relating to the Client from ZL throughout 2003. *Id.* at ¶¶60-61.

Acts by Defendant Gardner to assist KLDiscovery, a partner with Shield, were directly alleged, but are alternatively satisfied under the vicarious theory of liability of *respondeat superior*. An employee acts within the scope of his employment when: 1) the employer is, or could be, exercising some control, directly or indirectly, over the employee's activities, and 2) the employee is doing something in furtherance of the duties he owes his employer. *See Lundberg v. State*, 25 N.Y.2d 467, 470 (1969). Liability of the employer under the Lanham Act may be demonstrated through the action of the employees or principals of that employer as with any tort. *See, e.g., United States Media Corp., Inc. v. Edde Enter, Inc.*, 94-civ- 4849, 1996 WL 520901, \*9 (S.D.N.Y. Sept. 12, 1995)(holding that the overall impression conveyed by the packaging and credits is that defendant corporation was liable for false designation of origin along with principals).

In short, Plaintiff alleges that Defendant KLDiscovery was directly involved, and is now directly benefiting from Shield's ZL's purloined data, software and technology. KLDiscovery certainly has fair notice of what the plaintiff's claim is and the ground on which it rests. *In re Platinum-Beechwood Litig.*, 427 F.Supp.3d 395, 438 (S.D.N.Y. 2019)

### B. Plaintiff has Sufficiently Plead KLDiscovery's Bad Faith

Unfair competition encompasses a wide range of conduct including simply "endeavoring to reap where (one) has not sown." *Int'l News Services v. Assoc. Press*, 248 U.S. 215, 239 (1918). "The essence of unfair competition . . . is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of

goods." *Id.*, *quoting Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995) Participating, and taking advantage of, the sharing of ZL's confidential information to its competitor on multiple occasions certainly suffices to demonstrate bad faith. To act in bad faith, one must exploit some "commercial advantage which belonged exclusively to [another]." *LoPresti v. Mass. Mut. Life Inc. Co.*, 30 A.D.3d 474, 820 N.Y.S.2d 275, 277 (2d Dep't 2006); *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 127 A.D.3d 48, 57 (1st Dep't 2015)(affirming finding of bad faith where retailer induced Martha Stewart to break exclusivity and share plaintiff's confidential information.) Defendant KLDiscovery insists that the Amended Complaint has not demonstrated bad faith because its two employees in 2023 blurted out the truth inadvertently, and would not have done so in bad faith. Defendant KLDiscovery's weak attempted justification isolates and ignores Plaintiff's many other allegations in the Amended Complaint that set forth the scheme and intent in detail. As the Court of Appeals observed, it is "fruitless to examine each individual step in the scheme for actionable wrong. They are so dependent on one another one can only say that its entirety is an unfair method of direct competition. The various aspects of a plan or scheme, when considered singly, may very well appear innocent. The true nature of the plan or scheme is revealed only when the various aspects are viewed as a totality." *Elecrolux Corp. v. Val-Worth, Inc.*, 6 N.Y.2d 556, 571 (1959).

## V.     PLAINTIFF HAS PLAUSIBLY ALLEGED KLDISCOVERY'S BREACHES OF CONTRACT

The Amended Complaint alleges that two enforceable contracts existed between ZL and KLDiscovery and are evidenced by Exhibits 1 and 2 of the Amended Complaint. Exhibit 1 is an Agreement with the Client and KLDiscovery, which specifically names ZL as a subcontractor providing data management services to the Client through the Supplier KLDiscovery, and reflecting other obligations owed by KLDiscovery to ZL. In particular, as alleged, the Plaintiff

14

was expected to provide to the common client a software license and a unified solution for the management of over 22,000 employee email boxes. Dkt. 46, at ¶27 and Ex. 1 at 26, 36 & 38 (naming the ZL license and cost). ZL's personnel was named as a Service Manager under the SDLSA to assume operational responsibility for Supplier's obligations. *Id.*, Ex. at 40. "Developed software" and "software" to be protected from any breach of confidentiality included ZL "third party components or products," and "sub-contractor" providing elements of Services and Software to Supplier. *Id.* at Ex. 1 at 5 & 6. Defendant KLDiscovery supplied ZL's services, and when paid by the Client, in turn paid ZL under the SDLSA. *See* Ex. 1, section 5.2(a). Defendant KLDiscovery agreed to confidentiality and ownership of ZL's rights in the SDLSA. *Id.* at section 6.3 & 9.1(a)(i)(no use of Confidential Information apart from that set forth to perform obligations under the Agreement.

Defendant KLDiscovery for years used the Agreement as the basis to pay ZL for its services to the Client. *Id.* at ¶90. Although amended, none of the amendments altered KLDiscovery's confidentiality obligations under the Agreement. *Id.* at ¶32. Exhibit 2 is an essentially contemporaneous private label agreement entered into between the parties whereby the parties acknowledged that the data shared between them was confidential, and not to be disclosed to third parties without the express written agreement of the other party. As alleged, Defendant KLDiscovery has breached both agreements. *See* Dkt. 46 at ¶¶1, 12, 28-32; 35-45; 90-92 (breach of confidentiality); ¶¶93-97 (breach of payment obligations) after ZL's provision of services under the SDLSA. While KLDiscovery asserts that the Private Label Agreement has come to an end, the parties explicitly recognized that all IP previously owned by ZL, and otherwise created pursuant to the Private Label Agreement will continue to be so. Ex. 2 at 4.1-4.2. Even if those explicit provisions did not exist and the Agreement was terminated—with which ZL does not

15

agree—ZL continued to abide by the terms as confidential information continued to flow through from ZL to KLD under both agreements for the benefit of the Client. *See id.* at ¶¶32, 37-38. "Parties may modify a contract by another agreement, by course of performance, or by conduct amounting to waiver or estoppel. *Kaplan v. Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013); *Locus Techs. v. Honeywell Int'l Inc.*, 632 F.Supp.3d 341, 355 (S.D.N.Y. 2022)(accepting as true allegations that the parties continuously abided by the Order Form's preferential pricing terms, and only agreed to limited changes to the Order Form's billing structure, this Court concludes that Plaintiff has sufficiently alleged a course of conduct that could have modified the Order Form's express expiration date).

In New York, "a plaintiff claiming a breach of contract must allege: (i) the formation of a contract between the parties, (ii) performance by the plaintiff, (iii) failure of the defendant to perform, and (iv) damages. *Lowry v. Oppenheimerfunds, Inc.*, 20-cv-2288 (VSB), 2022 WL 976823, at *4 (S.D.N.Y. Mar. 31, 2022). "To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004). As ZL is a named subcontractor of the SDLSA, privity exists between ZL and KLDiscovery. *Stapleton v. Barrett Crane Design & Eng'g*, 725 F.App'x 28, 30-31 (2d Cir. 2018), *quoting Hamlet at Willow Creek Dev. Co. v. Ne. Land Dev. Corp.*, 64 A.D.3d 85 (2d Dep't 2009)(even if the plaintiff is not a party to the underlying contract, the claim may accrue upon completion where the plaintiff not a "stranger to the contract" and the relationship between the plaintiff and the defendant is the "functional equivalent of privity"). Exhibits 1 and 2 evidence the existence of the contracts at issue. The Amended Complaint specifically details ZL's performance and defendant's failure to pay the invoices issued pursuant to the SDLSA. Dkt. 46 at ¶¶93-94. Plaintiff has pled a sufficient claim for breach of contract

under New York law. *See Locus Techs.*, 632 F.Supp.3d at 355 (accepting report and recommendation noting Court's acceptance that the Order Form of the parties governed payment terms for invoices).

The Amended Complaint goes well beyond providing fair notice as to the breach of contract claims. Complaints have been deemed sufficient with far less detail. For example, in *Kaplan Group*, 694 F.Supp.3d 374 (S.D.N.Y. 2023) , the plaintiff-investment funds alleged a breach of contract against sellers of protective equipment and ammunition. *Id.* at 387. Without attaching the contract to their complaint, the plaintiffs alleged that a contract nonetheless existed and was breached where latex gloves were delivered in lieu of the medical grade nitrile gloves ordered. *Id.* This Court drawing all reasonable inferences in favor of the plaintiffs, found that plaintiff had sufficiently alleged a plausible contract which defendants breached.

## CONCLUSION

Wherefore, ZL Technologies, Inc. requests that this Court deny Defendant KLDiscovery's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively to allow Plaintiff to replead its Complaint to conform to the Court's ruling.[3]

Dated:     August 27, 2025

WUERSCH & GERING LLP

Kevin Murphy
88 Pine Street Wall Street Plaza
20th Floor
New York, NY 10005

---

[3] KLDiscovery invites the Court to dismiss with prejudice, asserting that *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d. 154, 168 (S.D.N.Y. 2021) justifies this result. Not so. In *Twohig*, the fundamental basis for the consumer fraud claim the plaintiff brought was flawed. *Id.* at 165. In the typical case, leave to amend should be freely granted and only properly denied when there are "repeated failure to cure deficiencies by amendments previously allowed, or futility of amendment." KLD's brief on the moot Complaint is hardly equivalent to an order from this Court or observations as in *Twohig* from the bench.

(212) 509-6311
*Attorneys for Plaintiff ZL*
*Technologies, Inc.*