UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ZL TECHNOLOGIES, INC.,

                Plaintiff,

v.

KLDISCOVERY ONTRACK LLC; SHIELD
FINANCIAL COMPLIANCE, LTD.;
SHIELD FINANCIAL COMPLIANCE, INC.
and AARON GARDNER,

                Defendants.
-----------------------------------------------------------------x

Case No. 1:25-cv-02673-JPO

**ORAL ARGUMENT
REQUESTED**

**PLAINTIFF ZL TECHNOLOGIES, INC.'S OPPOSITION TO
DEFENDANT SHIELD FINANCIAL COMPLIANCE, LTD'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

## Table of Contents

Page(s)

PRELIMINARY STATEMENT ...................................................................................................1

I. PERSONAL JURISDICTION IS ESTABLISHED UNDER NEW YORK'S
   TRANSACTION OF BUSINESS LONG ARM STATUTE ..............................................3

   A. Shield Israel transacted business in New York State ......................................................3

   B. There is a Nexus Between Shield Israel's Activities in New York and the Causes
      of Action ............................................................................................................................6

   C. Exercising Personal Jurisdiction will not Offend the Due Process Clause.....................7

II. PERSONAL JURISDICTION IS ESTABLISHED UNDER NEW YORK'S
    TORTIOUS CONDUCT LONG ARM STATUTE ............................................................8

   A. CPLR 302(a)(2) also suffices to exercise personal jurisdiction over Shield Israel..8

   B. CPLR 302(a)(3) also suffices to exercise personal jurisdiction over Shield Israel 10

III. SHIELD ISRAEL'S DECLARATIONS DO NOT SUPPORT DISMISSAL OF
     PLAINTIFF'S CLAIMS FOR LACK OF PERSONAL JURISDICTION BUT
     INVITE JURISDICTIONAL DISCOVERY ...................................................................12

CONCLUSION.............................................................................................................................13

# Table of Authorities

Page(s)

**Cases**

*Abitron Austria GmbH v. Hetronic, Int'l, Inc.*,
  600 U.S. 412 (2023) ................................................................................................11

*Ball v. Metallurgie Hoboken-Overpelt, S.A.*,
  902 F.2d 194 (2d Cir. 1990) ......................................................................................3

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ..................................................................................3, 6

*Chrysler Capital Corp. v. Century Power Corp.*,
  778 F. Supp. 1260 (S.D.N.Y 1991) ...........................................................................9

*Citigroup Inc. v. City Holding Co.*,
  97 F. Supp. 2d 549 (S.D.N.Y. 2000) .......................................................................10

*Cont'l Indus. Grp. v. Equate Petrochemical Co.*,
  586 F. App'x 768 (2d Cir. 2014) ...............................................................................3

*Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*,
  No. 23-CV-7106, 2024 WL 1533189 (S.D.N.Y. Apr. 8, 2024) .................................6

*Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) ........................................................................................3

*Eades v. Kennedy PC Law Offices*,
  799 F.3d 161 (2d Cir. 2015) ......................................................................................6

*Emerald Asset Advisors, LLC v. Schaffer*,
  418 F. Supp. 2d 431 (E.D.N.Y. 2012) .......................................................................9

*Ferrante Equip. Co. v. Lasker-Goldman Corp.*,
  26 N.Y.2d 280 (1970) ................................................................................................6

*Fischbarg v. Doucet*,
  9 N.Y.3d 375 (2007) ..................................................................................................5

*Grove Press, Inc. v. Angleton,*
    649 F.2d 121 (2d Cir. 1981) ............................................................................................. 8

*Halas v Dick's Sporting Goods,*
    105 A.D.3d 1411 (4th Dep't 2013) ............................................................................ 11, 12

*Int'l Shoe v. Washington,*
    326 U.S. 310 (1945) ......................................................................................................... 7

*Jazini v. Nissan Motor Co.,*
    148 F.3d 181 (2d Cir. 1998) ............................................................................................. 4

*JCorps Int'l Inc., v. Charles & Lynn Schusterman Fam. Found.,*
    828 F. App'x 740 (2d Cir. 2020) .................................................................................... 11

*Lehigh Valley Indus., Inc. v. Birenbaum,*
    527 F.2d 87 (2d Cir. 1975) ............................................................................................... 8

*Metro Life Ins. C. v. Robertson Ceco-Corp.,*
    84 F.3d 560 (2d Cir. 1996) ............................................................................................... 7

*Miller Inv. Tr. v. Xiangchi Chen,*
    967 F. Supp. 2d 686 (S.D.N.Y. 2013) ............................................................................ 11

*Parke-Bernet Galleries v. Franklyn,*
    26 N.Y.2d 13 (1970) ........................................................................................................ 7

*Penguin Group USA, Inc. v. American Buddha,*
    16 N.Y.3d 295 (2011) .................................................................................................... 10

*Scheuer v. Schwartz,*
    42 A.D.3d 314 (1st Dep't 2007) .................................................................................. 5, 7

*Shaffer v. Heitner,*
    433 U.S. 186 (1977) ......................................................................................................... 7

*Simon v. Philip Morris Inc.,*
    124 F.Supp.2d 46 (E.D.N.Y. 2000) ........................................................................ 8, fn. 1

*State v. Vayu,*
   39 N.Y.3d 330 (2023)......................................................................................................5, 6

*Van Lines, Inc. v. Walker,*
   490 F.3d 239 (2d Cir. 2007) ............................................................................................7, 12

*Wafios Mach. Corp. v. Nucoil Indus. Co.,*
   2004 WL 1627168 (S.D.N.Y. July 21, 2004)......................................................................13

*Winston & Strawn v. Dong Won Sees. Co.,*
   2002 WL 31444625 (S.D.N.Y. Nov. 1, 2002).....................................................................12

**Federal Rules**

Fed. R. Civ. P. 12(b)(1) ...........................................................................................................13

**Rules**

N.Y. Civ. Prac. L. & R. § 302(a)(1) ...............................................................................3, 5, 6

N.Y. Civ. Prac. L. & R. § 302(a)(2) ....................................................................................3, 8

N.Y. Civ. Prac. L. & R. § 302(a)(3) ..............................................................................3, 10, 11

N.Y. Civ. Prac. L. & R. § 302(a)(3)(i)....................................................................................10

## PRELIMINARY STATEMENT

Shield Financial Compliance, Ltd. ("Shield Israel") asserts that this Court lacks personal jurisdiction over it, despite Plaintiff's allegation that Shield Israel and the other defendants directly benefited from misappropriation from Plaintiff, through its New York-based purported partner, KLDiscovery Ontrack LLC ("KLDiscovery"). Both Plaintiff and KLDiscovery served the Client, a multinational financial institution through the use of Plaintiff's big data technology and unique architecture under confidentiality restrictions imposed by New York law.

In the Amended Complaint, Plaintiff also alleges that Defendants Shield Delaware and KLDiscovery operate from this judicial district in New York and that a substantial part of the events and omissions giving rise to the claims occurred here. Dkt 46, ¶¶4, 6 & 10. As for Shield Israel, the Amended Complaint details that Shield Israel has substantial contacts with New York, transacts and advertises business here. *Id.* at 10. These allegations are not conclusory. The allegations with respect to personal jurisdiction are well-supported in fact throughout the Amended Complaint.

Shield disagrees. In doing so, Shield uses the same playbook used by all the other Defendants, looking at a few allegations and ignoring others. Treated as a whole, the allegations are anything but conclusory. The Amended Complaint details that Plaintiff entered into multiple confidentiality agreements with New York-based KLDiscovery, the principal agreement of which is governed by New York law. Dkt. 46, section 1.3. The misappropriation of Plaintiff's data from KLDiscovery thus occurred in New York through Defendants Gardner and KLDiscovery for the ultimate benefit of Shield Israel and Shield Delaware, though Plaintiff does not rule out that conduct violative of the Lanham Act occurred elsewhere. *Id.* at ¶¶1, 3-4, 10, 11, 13, 33-58. KLDiscovery made unauthorized use of Plaintiff's Unified Archive mark on a United States

website. Dkt. 46, at ¶40. This information was deleted on a subsequent webpage by 2019. *Id.* at ¶44. KLDiscovery was alleged to have arranged multiple demonstrations of ZL big data capabilities to Shield from 2018 through 2020, i.e., before Shield Delaware existed to sell Shield Israel product to U.S. customers. *Id.* at ¶45 & ¶66. In 2020, Shield was marketing its products to U.S. customers using the same nomenclature, Nebula Big Data, Nebula Archive, and Nebula Legal Hold, that KLDiscovery was using for the same or similar services as Plaintiffs during the period of misappropriation. *Id.* at ¶46. In June 2022, Shield Israel entered a partnership with KLD Discovery for the release of Nebula Intelligent Archive, the product Plaintiff alleges contain specific data and technology improperly purloined from Plaintiff. *Id.* at ¶52.

Shield Israel does not deny that it transacts business here. Nor does it deny that it advertises here. Indeed, the declarations Shield Israel furnishes admit both. Shield Israel submits two declarations in support of its motion: the declaration of Shield Delaware's Director, Shiran Weitzman (Dkt. 60) and Shield Israel's Chief Financial Officer, Gad Divald (Dkt. 59). Both declarations admit that: 1) Shield Delaware is a wholly-owned subsidiary of Shield Israel doing business from this judicial district, 2) that Shield Israel is the original equipment manufacturer for Shield product, sold by Shield Delaware to United States customers, and 3) that Shield Israel continues to conduct business in the United States. *Id.* at Dkt. 59 ¶¶6, 8-9, & 13; Dkt. ¶¶4; 6 & 8. Finally, while the declarations note that the Client—a major subject of the dispute between the parties—is Shield Israel's and not Shield Delaware's, neither declaration speaks to whether Client purchases product or services from Shield Israel for ultimate use in the United States. Rather, the declarations only provide that Shield Israel only deals with the Client in Europe.

Personal jurisdiction is established, certainly on a *prima facie* basis through the allegations of the Amended Complaint and reasonable inferences drawn therefrom. Shield Israel's motion should be denied.

### I. PERSONAL JURISDICTION IS ESTABLISHED UNDER NEW YORK'S "TRANSACTION OF BUSINESS" LONG ARM STATUTE

"The showing a plaintiff must make to defeat a defendant's claims that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013). Before jurisdictional discovery, a plaintiff's prima facie showing of jurisdiction may be established by pleading good-faith allegations. *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990). The allegations must establish jurisdiction with some factual specificity, which cannot be established through conclusory assertions alone. *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014). Plaintiff has done so through the reach of New York's long-arm statute, specifically Civil Practice Law and Rules sections 302(a)(1), (a)(2) and 302(a)(3).

#### A. Shield Israel transacted business in New York State.

Personal jurisdiction in this district may be exercised over a non-domiciliary through New York's long-arm statute ("New York Long-Arm"), if the defendant has transacted business in the State. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010). Civil Practice Law and Rules 302(a)(1) provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." Shield Israel in the motion admits that it is doing business in New York State. Shield Delaware located its headquarters on 1230 Avenue of the Americas, from which Shield Delaware sells "Shield products in the United States to U.S. customers," which of course includes New York State. Dkt. 60 at ¶3-4. The Amended

3

Complaint alleges as much. Dkt. 46, ¶10 (Shield Israel and Shield Delaware are doing and transacting business in this State.)

What's more, as alleged, New York formed the hub of Shield Israel's competitive operations against Plaintiff. KLDiscovery, a New York entity, and for years in partnership with Plaintiff, entered a scheme with Shield Israel to misappropriate from Plaintiff. *Id.* at ¶¶15, 17, 37, 42-57, 60-62. That scheme went on for years, and was orchestrated through Defendant Gardner, a New York resident, working from KLDiscovery's New York office. *Id.* at ¶¶1, 3, & 37. The confidentiality obligations on KLDiscovery and the Client were imposed through a contract relying on New York law. *Id.* at ¶11 & Ex. 1 at §§ 1.3 & 9.1(a)(i). The scheme pre-dated Shield Delaware's existence in New York. *Id.* at ¶¶39-48. Only Shield Israel was in existence when the misappropriation began from New York State. *Id.* at ¶¶39-45. Shield Israel announced its partnership with KLDiscovery in 2022 to take advantage of its misappropriation. *Id.* at ¶52. Such a partnership would have required extensive negotiations with New York based-KLDiscovery. While Shield Israel claims that it never made Defendant Gardner part of the payroll, the Shield Israel declarations are mute on whether Shield Israel played a role in his recruitment.

To avoid the Court's jurisdiction under this section of the New York Long-Arm, Shield Israel relies principally on *Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998), but *Jazini* is of no help to Shield Israel's position. In *Jazini*, the plaintiffs brought a products liability action against Nissan in this district for an automobile injury to their child that occurred in Iran. *Id.* at 183. The alleged basis for jurisdiction was simply that Nissan "maintains a presence" in New York State through the actions of its subsidiary, Nissan Motor Corporation ("Nissan Motor"). The motions court dismissed the action and the Second Circuit affirmed. The Second Circuit ruled

4

that the allegations that Nissan Motor served as an agent or a mere department were too conclusory to accept on a motion to dismiss. *Id.* at 185-86

Plaintiff has alleged far more than mere presence by Shield Israel in New York, but alleges instead "a continuing relationship with a New York based party," as required under CPLR 302(a)(1). *See State v. Vayu*, 39 N.Y.3d 330, 341 (2023). Indeed, the Amended Complaint alleges two such continuing business relationships with New York-based Defendant Gardner and with KLDiscovery. These contacts were of such a "nature and quality" through which the defendant established a substantial ongoing professional commitment between themselves and plaintiff, governed by the laws of our state, which support long-arm jurisdiction." *See Fischbarg v. Doucet*, 9 N.Y.3d 375, 382-83 (2007).

Shield Israel reached into New York to purloin ZL's data and technology via Defendant Gardner in New York. Dkt. 46, ¶¶1, 3, 10, 13, 33-53. Shield Israel was able to create a strong business relationship with Plaintiff's partner in New York, KLDiscovery, undermining Plaintiff's relationship with that partner governed by New York law. Dkt. 46, ¶¶4, 13, & Ex. 1, §1.3. Shield Israel then secured access to Plaintiff's data and technology, thereafter creating a subsidiary in New York to exploit that data and technology, and arranging the hiring of Defendant Gardner by that subsidiary. *Id.* at ¶¶48, 51-52, & 66. Defendant Gardner was then featured by Shield Israel announcing its partnership with KLDiscovery touting Shield Israel's new-found Nebula Intelligent Archive. *Id.* at ¶52. *See Fischbarg v. Doucet*, 9 N.Y.3d 375, 382 (2007)(hiring and communications with New York attorney to handle contingency action constituted sufficient transaction of business in New York to exercise personal jurisdiction over the non-domiciliary client); *Scheuer v. Schwartz*, 42 A.D.3d 314, 316 (1st Dep't 2007)(personal jurisdiction established with 10 trips to New York over 9 months). "In order to sustain jurisdiction, there must be some

transaction attributable to the one sought to be held *which occurs in New York. Ferrante Equip. Co. v. Lasker-Goldman Corp.*, 26 N.Y.2d 280, 284-85 (1970). Notwithstanding Shield Israel's protests to the contrary, there must have been multiple such New York-based transactions.

### B. There is a Nexus Between Shield Israel's Activities in New York and the Causes of Action.

The second prong of the New York Long-Arm Statute (CPLR 302(a)(1)) is satisfied if the cause of action arises from even a single business transaction. "A suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York. *Creative Photographers, Inc. v. Grupo Televisa, S.A.B.*, No. 23-CV-7106, 2024 WL 1533189, at *7 (S.D.N.Y. Apr. 8, 2024). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloé*, 616 F.3d at 170. Shield Israel's sale of its Nebula product hales back to KLDiscovery's work on the product of the same or similar name in 2019. Dkt. 46 at ¶44. Throughout 2018-2020, New-York based KLD discovery worked with Shield Israel to demonstrate Plaintiff's big data capabilities and providing them to Shield, resulting in an evident breakthrough in 2020. *Id.* at ¶¶45-46 and 66. The parties do not dispute that Shield product, purportedly originating from Shield Israel is alleged to be based on misappropriated data and technology. Shield Israel has thus both "transacted business within the state" with respect to a claim arising from that business activity. *Eades v. Kennedy PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015); *Vayu*, 39 N.Y.3d at 336-37 (court found the second prong for jurisdiction "easily met" based on the sale of two UAVs at issue).

6

### C. Exercising Personal Jurisdiction will not Offend the Due Process Clause.

The third prong concerns whether the exercise of jurisdiction comports with due process under the Constitution. The Due Process Clause of the Fourteenth Amended operates to limit the power of a State to assert in person jurisdiction. These requirements are satisfied if the defendant has "certain minimum contacts" with New York "such that the maintenance of the suite does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe v. Washington*, 326 U.S. 310, 316 (1945). The goal is to "protect a person without meaningful ties to the forum state from being subjected to binding judgments within its jurisdiction." *Metro Life Ins. C. v. Robertson Ceco-Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). The determination that an entity has "transacted business" for the purposes of CPLR 302(a)(1) will generally satisfy the minimum contacts requirement." *Van Lines, Inc. v. Walker*, 490 F.3d 239, 246-47 (2d Cir. 2007).

When a controversy is, as here, related to or "arises out of" a defendant contacts with the forum, the Supreme Court has said that a "relationship among the defendant, the forum and the litigation" is the essential foundation of personal jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186 (1977)(finding specific personal jurisdiction). Due Process also requires purposeful availment of New York. *Parke-Bernet Galleries v. Franklyn*, 26 N.Y.2d 13 (1970). A substantial relationship between the New York transactions and plaintiff's causes is sufficient to show purposeful availment. *Scheuer*, 42 A.D.3d at 316.

Having shown Shield Israel's purposeful availment of New York, Plaintiff has more than sufficiently demonstrated that Shield Israel should expect to be haled into a New York court for its conduct.

## II. PERSONAL JURISDICTION IS ESTABLISHED UNDER NEW YORK'S "TORTIOUS CONDUCT" LONG ARM STATUTE

### A. CPLR 302(a)(2) also suffices to exercise personal jurisdiction over Shield Israel.

Alternatively, CPLR 302(a)(2) allows for the exercise of personal jurisdiction over a party who, through an agent, commits a tortious act within the state. The Amended Complaint specifically alleges that wrongful conduct occurred in New York State, where Defendant Gardner was employed by KLDiscovery.[1] While Shield Israel was not alleged to have been present in New York State (although discovery may demonstrate it was), the Amended Complaint makes clear that the torts of unfair competition under the Lanham Act and misappropriation certainly occurred in New York State through the actions of Shield Israel's agents, namely Defendant Gardner and KLDiscovery, both of whom directly benefited from the misappropriation and the migrating of data away from Plaintiff. KLDiscovery is now a partner with Shield as of 2022 and Defendant Gardner is now employed, evidently with Shield Delaware. Goods are being sold based on Plaintiff's misappropriated data and technology, including to New York consumers. *Id.* at ¶13. Personal jurisdiction is defined broadly to include not only a defendant's agents, but also under certain circumstances, a defendant's co-conspirators. *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 122 (2d Cir. 1981)(reversing conspiracy finding); *Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 92-94 (2d Cir. 1975).

"To establish a prima facie case for conspiracy under New York law, a plaintiff must allege the primary tort and the following four elements: (1) a corrupt agreement between two or more persons, (2) an overt act in furtherance of the agreement, (3) the parties' intentional participation in the furtherance of a plan or purpose, and (4) the resulting damage or injury. *See Chrysler Capital*

---

[1] Shield asserts that New York has a limited interest in whatever happens in this case. Hardly. New York has a paramount interest in punishing and deterring misconduct in New York, particularly where that misconduct is redressable under its law, as here. *See Simon v. Philip Morris Inc.*, 124 F.Supp.2d 46, 76 (E.D.N.Y. 2000).

*Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1267 (S.D.N.Y 1991). Further, the out of state co-conspirator must be demonstrated to have an awareness of the effects of the activity in New York, (2) that the New York co-conspirators' activity was for the benefit of the out-of-state conspirators, and (3) that the co-conspirators in New York acted at the behest of or on behalf of, or under the control of the out-of-state conspirators. *See id.* at 1269.

Plaintiff has satisfied these standards. The Corrupt Agreement is the scheme to misappropriate from Plaintiff, made possible by the sharing of what Plaintiff thought would be its confidential and proprietary information to Defendant Gardner and KLDiscovery to service the Client and other clients. Dkt. 46 at ¶¶1, 33-38. Overt acts in furtherance of the Corrupt Agreement can be found: 1) in KLDiscovery's misuse of Plaintiff's Unified Archive mark in 2018, which KLDiscovery covered up the following year, *id.* at ¶40, 2) in the multiple demonstrations by KLDiscovery, presumably through Defendant Gardner of Plaintiff's big data capabilities and data to Shield, including related to multiple ZL products, *id.* at ¶45, and 3) the ability to solve problems of scalability, which would have taken many (and likely misdirected) man-hours to figure out in a shorter period of time, *id.* at ¶58. Each of the co-conspirators benefited directly from the Corrupt Agreement, resulting in a new-found partnership with Shield for KLDiscovery, a new job for Defendant Gardner, and a lucrative commercial relationship for Shield with the Client. *Emerald Asset Advisors, LLC v. Schaffer*, 418 F. Supp. 2d 431 (E.D.N.Y. 2012)(finding modest burden for jurisdiction satisfied where agent took action in the state for the benefit of principal and himself with knowledge of the principal).

Shield Israel would well understand that its subversion of a New York-based employee would have consequences in New York. *See, e.g., Chrysler*, 778 F.Supp.2d at 1269 (finding that

9

co-conspirator though not a party to agreements at issue was aware that they were connected to New York).

### B. CPLR 302(a)(3) also suffices to exercise personal jurisdiction over Shield Israel.

For similar reasons, personal jurisdiction is equally clear under CPLR 302(a)(3).[2] This section of the CPLR allows the exercise of long-arm jurisdiction through tortious conduct outside New York State causing injury to person or property within the state if the tortfeasor:

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Plaintiff has already shown by virtue of the scheme that Shield Israel at least from 2018 through 2022 regularly did business with New York-based Defendants Gardner and KLDiscovery. *See id.* at 302(a)(3)(i). Alternatively, even if Plaintiff had not established that Shield Israel did regular business in New York, jurisdiction would still be appropriate under CPLR 302(a)(3) with respect to Plaintiff's intellectual property claims, i.e., for misappropriation and unfair competition. For such claims, personal jurisdiction exists where the intellectual property or the confidential information is held or misappropriated, in this instance in New York where it is governed by New York law. *See Penguin Group USA, Inc. v. American Buddha*, 16 N.Y.3d 295, 306 (2011)(finding that injury inflicted by digital piracy even one committed throughout the United States necessarily includes New York); *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 566-67 (S.D.N.Y. 2000)(trademark infringement occurs where the attempted passing off of an infringing mark occurs for purposes of personal jurisdiction).

---

Shield Israel accepts that damages and witnesses are available in lots of places including New York where Gardner and Shield Delaware are located. Shield Israel Br. at 15. CPLR 302(a)(3) requires determining where the original event leading to injury took place. *Miller Inv. Tr. v. Xiangchi Chen*, 967 F. Supp. 2d 686, 695 (S.D.N.Y. 2013). The Amended Complaint is clear that the situs of the original event was in New York, which governed the parties' confidentiality with respect to the client and where Defendants first secured access to Plaintiff's Confidential and Proprietary Information. "[T]he sit[us] of a commercial injury is not where the economic loss is felt, but where the critical events associated with the dispute took place." *JCorps Int'l Inc., v. Charles & Lynn Schusterman Fam. Found.*, 828 F. App'x 740, 744 (2d Cir. 2020).

While it is currently unknown whether Shield Israel took steps outside of the country, it seems equally plausible that given Shield Israel's continued presence/relationships in the United States, that Shield may have committed such actions from the United States. Therefore, the Supreme Court's ruling in *Abitron Austria GmbH v. Hetronic, Int'l, Inc.*, 600 U.S. 412, 415 (2023) hardly compels dismissal under the circumstances, particularly as where Shield Delaware is alleged selling misappropriated technology in the United States as its own. Dkt. 46 at ¶¶13, 51, 53-54; & 64-66.

Section 302(a)(3) requires that plaintiff demonstrate the foreseeability of harm in New York state. This is easily demonstrated. Shield Israel stood the most to gain from stealing Plaintiff's client and revenue, underscored only the more by having to share the profits with agents-Defendants KLDiscovery and Gardner. Shield Israel certainly reasonably foresaw therefore the effects of its misappropriation in New York. *Halas v Dick's Sporting Goods*, 105 A.D.3d 1411, 1412-13 (4th Dep't 2013). "Defendant sold [the tree stand] to a company that distributes products to states across the country, including New York…defendant could have reasonably foreseen that

11

its product would have any impact in any state where Dick's distributed the product, including New York. *Id.* In light of its "website" and "exclusive distributorship agreement," "the exercise of jurisdiction over defendant comports with due process." *Id.* Similar factors support the exercise of jurisdiction here over Shield Israel.

Defendant Shield Israel would likely not dispute that it is earning substantial revenue at least from international commerce. Its revenue is demonstrable from its ability to secure Series A and then Series B funding within months, the latter of which latter was 20 million dollars. *Id.* at ¶¶55-56. Even a small portion of damages (that from the Client and allocable to Plaintiff) was nearly 5 million dollars. *Id.* at ¶100.

### III. SHIELD ISRAEL'S PROFFERRED DECLARATIONS DO NOT SUPPORT DISMISSAL OF PLAINTIFF'S CLAIMS FOR LACK OF PERSONAL JURISDICTION BUT INVITE JURISDICTIONAL DISCOVERY

Mr. Weitzman declares that New York business activities are the province of Shield Delaware, but this statement is not exclusive. *Id.* at ¶7. New York may also be the ***shared*** province of Shield Israel. Mr. Divald does not speak to that subject at all, only noting that Shield Israel does not have offices or employees in New York. Dkt. 60, at ¶¶4-5. But "a non-domiciliary defendant need not be physically present in New York to "transact business," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Walker,* 490 F.3d at 247.

In general, a district court may allow discovery to aid in determining whether it has personal jurisdiction over a defendant. *Winston & Strawn v. Dong Won Sees. Co.,* 2002 WL 31444625, at *5 (S.D.N.Y. Nov. 1, 2002). Such discovery "should be permitted where the facts necessary to establish personal jurisdiction and proprietary of venue lie exclusively within the

defendant's knowledge. *Id.* For example, in *Wafios Mach. Corp. v. Nucoil Indus. Co.*, 2004 WL 1627168, at *5 (S.D.N.Y. July 21, 2004), one of the defendants submitted an affidavit containing several alleged facts that were within its exclusive knowledge, including that it allegedly did not target a New York market. Because the affidavit contained facts within the defendant's exclusive control and raised "further questions which [we]re not answered by the affidavit," the court allowed limited jurisdictional discovery concerning the defendant's New York contacts. *Id.* If the Court is inclined to find that Plaintiff has not alleged a sufficient *prima facie* case authorizing personal jurisdiction over Shield Israel, Plaintiff should be entitled to engage in jurisdictional discovery, the scope of which can be worked out between counsel for Plaintiff and Shield Israel.

## CONCLUSION

Wherefore, Plaintiff ZL Technologies, Inc. requests that this Court deny Defendant Shield Israel's motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, order the parties to conduct further jurisdictional discovery as appropriate or alternatively to allow Plaintiff to replead its Complaint to conform to the Court's ruling.

Dated:    September 2, 2025

WUERSCH & GERING LLP

*/s/ Kevin Murphy*

Kevin Murphy
88 Pine Street Wall Street Plaza
20th Floor
New York, NY 10005

13