UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------x

ZL TECHNOLOGIES, INC.,

                       Plaintiff,

  v.

KLDISCOVERY ONTRACK LLC; SHIELD
FINANCIAL COMPLIANCE, LTD.;
SHIELD FINANCIAL COMPLIANCE, INC.
and AARON GARDNER,

                   Defendants.

----------------------------------------------------------------------------x

Case No. 1:25-cv-02673-JPO

**ORAL ARGUMENT
REQUESTED**

**PLAINTIFF ZL TECHNOLOGIES, INC.'S OPPOSITION TO
DEFENDANT SHIELD FINANCIAL COMPLIANCE, INC.'S
MOTION TO DISMISS THE AMENDED COMPLAINT**

## Table of Contents

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................................... 1

I.   THE SUPREME COURT'S RULING IN DASTAR DOES NOT BAR PLAINTIFF'S
     LANHAM ACT CLAIM ................................................................................................... 2

II.  PLAINTIFF HAS PLAUSIBLY ALLEGED UNFAIR COMPETITION UNDER NEW
     YORK LAW ..................................................................................................................... 7

     A.  What New York Requires and Does Not Require to Show Confusion or Mistake in
         Unfair Competition ................................................................................................... 7

     B.  Plaintiff has Shown Defendants' Bad Faith More than Sufficiently ............................... 9

     C.  Shield Has Failed to Demonstrate that Plaintiff's Misappropriation Claim is
         Implausible on its Face ............................................................................................ 13

CONCLUSION............................................................................................................................ 14

# Table of Authorities

**Page(s)**

**Cases**

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC,*
467 F. Supp. 2d 394 (S.D.N.Y. 2006) ........................................................................................ 5

*Bubble Genius LLC v. Smith,*
239 F. Supp. 3d 586 (E.D.N.Y. 2017) ...................................................................................... 10

*Camelot Assocs. Corp. v. Camelot Design & Dev. LLC,*
298 A.D.2d 799 (3d Dep't 2002)................................................................................................ 8

*Carson Optical, Inc. v. Prym Consumer USA, Inc.,*
No. CV 11-3677 ARL, 2013 WL 1209041 (E.D.N.Y. March 25, 2013) ................................. 10

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.,*
150 F.3d 132 (2d Cir. 1998) ...................................................................................................... 4

*Dastar Corp. v. Twentieth Century Fox Film Corp.,*
539 U.S. 23 (2003)............................................................................................................. passim

*Data Device Corp. v. W.G. Holt, Inc.,*
No. 19-CV-4105, 2020 WL 7024312 (E.D.N.Y. Nov. 30, 2020) ...................................... 11, 12

*Digigan, Inc. v. Ivalidate, Inc,*
No. 02-Civ-420, 2004 WL 203010 (S.D.N.Y. Feb. 3, 2004) ........................................... 6, fn. 3

*Fleming Sales Co., Inc. v. Bailey,*
611 F. Supp. 507 (N.D. Ill. 1985).................................................................................... 11, fn. 5

*Forschner Grp., Inc. v. Arrow Trading Co.,*
904 F. Supp. 1409 (S.D.N.Y. 1995), *aff'd*, 124 F.3d 402 (2d Cir. 1997).................................. 4

*Freeplay Music, Inc. v. Cox Radio, Inc.,*
409 F.Supp.2d 259(S.D.N.Y. 2005) ........................................................................................... 4

*Greenblatt v. Prescription Plan Servs. Corp.,*
783 F. Supp. 814 (S.D.N.Y. 1992) ........................................................................................... 13

*Greene v. Warner Music Group,*
No. 23-civ-1555 (KPF), 2024 WL 3045966 (S.D.N.Y. June 18, 2024)..................................... 5

*I Candy by JW LLC v. Spin Master, Ltd.*,

    No. 17-CV-3131, 2018 WL 11697440 (E.D.N.Y. June 19, 2018) ............................................. 6

*Invista S.a.r.L. v. E.I. DuPont de Nemours & Co.*,

    No. 08-cv-7270, 2008 WL 4865208 (S.D.N.Y. Nov. 3, 2008) .................................................. 6

*ITC, Ltd. v. Punchgini, Inc.*,

    9 N.Y.3d 467 (2007) ............................................................................................................... 13

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*,

    58 F.3d 27 (2d Cir. 1995) ....................................................................................................... 13

*Lapine v. Seinfeld*,

    No. 08-civ-128, 2009 WL 2902584 (S.D.N.Y. Sept. 10, 2009) ................................................ 5

*Laura Laaman & Assocs., LLC v. Davis*,

    No. 16-cv-594 (MPS), 2017 WL 5711393 (D. Conn. Nov. 27, 2017) ....................................... 8

*LoPresti v. Mass. Mut. Life Inc. Co.*,

    30 A.D.3d 474, 820 N.Y.S.2d 275 (2d Dep't 2006) .................................................................. 9

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,

    209 F.Supp.3d 612 (S.D.N.Y. 2016) ......................................................................................... 8

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*,

    127 A.D.3d 48 (1ˢᵗ Dep't 2015) ............................................................................................... 9

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,

    2018 WL 6173349 (S.D.N.Y. Nov. 26, 2018).................................................................... 12, 13

*Medtech Prod. Inc. v. Ranir, LLC*,

    596 F.Supp.2d 778 (S.D.N.Y. 2008) ................................................................................. 12, 13

*Milton Abeles, Inc. v. Farmers Pride, Inc.*,

    603 F.Supp.2d 500 (E.D.N.Y. 2009) ...................................................................................... 13

*Morex S.p.A. v. Design Institute Am., Inc.*,

    779 F.2d 799 (2d Cir. 1985) ..................................................................................................... 7

*Portkey Techs. Pte Ltd. v. Venkateswaran*,

    No. 23-cv-5074 (JPO), 2024 WL 3487735 (S.D.N.Y. July 19, 2024) ....................................... 8

*Societe des Hotels Meridien, S.A. v. Lasalle Hotel Operating P'ship, L.P.*,

    380 F.3d 126 (2d. Cir. 2004) .................................................................................................... 9

*SS&C Techs. Holding, Inc. v. Arcesium LLC*,

  No. 22-cv-02009, 2024 WL 5186530 (S.D.N.Y. Dec. 20, 2024) ...................................... 12, 13

*Steadfast Ins. Co. v. T.F. Nugent, Inc.*,

  513 F.Supp.3d 419 (S.D.N.Y. 2021) ......................................................................................... 7

*Waldman Pub. Corp. v. Landoll, Inc.*,

  848 F. Supp. 498 (S.D.N.Y. 1994), *vacated on other grounds*, 43 F.3d 775 (2d Cir. 1994) ..... 8

**Statutes**

15 U.S.C. § 1125(a)(1)(A) ............................................................................................................. 6

15 U.S.C. § 1125(a)(1)(B) ............................................................................................................. 6

18 U.S.C. § 1836 ............................................................................................................... 4, fn. 2

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 14

## PRELIMINARY STATEMENT

Shield Financial Compliance, Inc.'s ("Shield Delaware's") motion to dismiss is divided into three parts.  None are substantive or meritorious.

The first part of the motion consists of a long-winded commentary about a set of contracts Shield Delaware has not entered, and which almost solely concern Plaintiff's relationship with its purported partner, KLDiscovery Ontrack, LLC.  The key issue Shield Delaware should be focused on—Plaintiff's measures to maintain confidentiality—it flubs.

Shield Delaware asserts that contractors may access Plaintiff's software without observing confidentiality.  Shield Delaware Br. at 2.  But contractor access is restricted as is typical for such contracts.  "Neither part shall use, copy, adapt, alter, disclose or part with possession of Confidential Information except solely as strictly necessary to perform its obligations or exercise its rights hereunder…except insofar such Confidential is disclosed to… "contractors…to the extent that such disclosure is reasonably necessary for the purpose of this Agreement…provided that the Recipient [or Supplier] complies with obligations of confidentiality under this Agreement."  *See* Dkt. 46, Ex. 1, sections 9.1(a)(i) & 9.1(a)(ii).  In response to that commentary about which Shield Delaware is without standing, Plaintiff relies on its opposition to KLD's motion to dismiss (Dkt. 80).

The second part of Shield's Delaware's could have been to the point, as it relates to the Supreme Court's decision with respect to the Lanham Act in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003).  Instead, Shield Delaware string cites cases where Lanham Act claims were dismissed when paired with heavily-overlapping copyright and patent matters not featured in this case.  None are analogous, and certainly do not suggest that Plaintiff's Lanham claim should be dismissed as a result of *Dastar*.

1

Finally, the third part of the motion concerning unfair competition under New York law reveals nothing more than Shield Delaware's willful blindness about the allegations in the Amended Complaint.  The Amended Complaint goes into substantial detail even in the absence of discovery how the misappropriation was accomplished, and how the Defendants are benefiting. In the cases Shield Delaware cites calling for dismissal, no such facts are pled.  The motion should be denied in all respects, and Shield Delaware made to answer the Amended Complaint.

## I.     THE SUPREME COURT'S RULING IN *DASTAR* DOES NOT BAR PLAINTIFF'S LANHAM ACT CLAIM

Shield alleges that "ZL's allegations are merely that Shield used its claimed innovations" which are "ideas, concepts, or communication embodied" in the goods and services and that there is no confusion about the origin of Shield's product.  Shield Del. Br. at 13-14.  Shield Delaware asserts that the Supreme Court's ruling in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) requires dismissal of Plaintiff's Lanham Act cause of action.  Shield Delaware's assessment of the allegations in Plaintiff's Amended Complaint is mistaken.  Further, Shield Delaware applies *Dastar* and its progency more broadly than required.

First, the Amended Complaint does not merely allege that Shield palmed off "ideas, concepts or [embodied] communication."  Rather, the Amended Complaint recites that: "[s]pecific data connectors and software allowing the reconstruction and lifestyle management of data," (Dkt. 46 at ¶66) were taken without any authority and despite robust confidentiality provisions. Demonstrations as to how this worked in practice were arranged by KLDiscovery for Shield's benefit, and the companies entered a partnership based on the same stolen technology.  *Id*. at ¶52. Specific services offered to the consuming public and the Client, including ZL's Core, ZL Compliance Manager, Post-review, ZL Discovery Manager, and Case Management were compromised, "incorporated into Nebula Intelligent Archive, or other products of Shield and are

being passed off as Shield's rather than ZL's." *Id*. at ¶66. *Dastar* left intact the ability to sue a competitor for the use of materials that go beyond ideas or concepts, which are used for passing-off or reverse-passing off.

Second, Shield Delaware gets the holding in *Dastar* wrong. *Dastar* dealt with the rights to a 26-episode television series based on General Dwight D. Eisenhower's book *Crusade in Europe*, which detailed the liberation of Western Europe from the Axis powers. 539 U.S. at 25. The copyright to the book was renewed but not the series, which then fell into the public domain. *Id*. at 26. 20th Century Fox acquired exclusive television rights to the book. *Id*. The defendant released an edited video version of the series in the public domain at a substantially-reduced cost, without attribution to the earlier series. Plaintiff brought a copyright infringement claim along with Lanham Act claim for reverse-passing off and succeeded with respect to the Lanham Act on summary judgment. *Id*. at 28. The Ninth Circuit affirmed the Lanham Act judgment, but the Supreme Court reversed. *Id*.

The Supreme Court ruled that "origin" within the meaning of the Lanham Act refers not only to geographical origin, but origin of manufacture. *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 30-31 (2003). "The phrase [origin] refers to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept or communication embodied in those goods." *Id*. at 37. Thus, the mere author of ideas or communicative elements that are encompassed within a product or services are not protectible under the Lanham Act. To hold otherwise would allow the use of the Lanham Act to cover copyrighted subject matter. *Id*.

Indeed, the Copyright Act and the Lanham Act cover differing subject matter. Copyright law protects creative expression, *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 138-39 (2d Cir. 1998), whereas the Lanham Act "primarily prevent[s] consumer confusion on the

3

one hand while promoting and rewarding healthy competition on the other," *Forschner Grp., Inc. v. Arrow Trading Co.*, 904 F. Supp. 1409, 1416 (S.D.N.Y. 1995), *aff'd*, 124 F.3d 402 (2d Cir. 1997). *See Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F.Supp.2d 259, 263 (S.D.N.Y. 2005) ("The right to copy creative works, with or without limitation is the domain of copyright, not of trademark or unfair competition. The failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright.") Indeed, the *Dastar* court observed that the plaintiff's complaint in that case would "undoubtedly be sustained" under the Lanham Act if the defendant had purchased the plaintiff's videotapes and merely repackaged them as its own. *Dastar*, 539 U.S. at 31.

Plaintiff's claims do not concern excluding others from ZL's copyrighted expression or copyrighted software, and are not brought under the Copyright Act. Dkt. 46, ¶26 ("ZL's architecture and services are not communicative or expressive components of any work covered by the United States Copyright Act.") Instead, the allegations in the Amended Complaint are squarely related to the Defendants' use of ZL's misappropriated data and repackaging that data as Shield's own to gain an unfair leg up with the same consumers to whom Plaintiff had been selling its services for many years. Plaintiff is the producer of its services and is therefore not barred from *Dastar* from preventing the purloining of its services through misappropriation. Under these circumstances, the proper cause of action for Plaintiff is false designation of origin under the Lanham Act.[1]

---

[1] The Amended Complaint also plausibly alleges facts supporting violation of the Defend Trade Secrets Act, 18 U.S.C. section 1836, et seq. *See* Dkt. 46, ¶¶15-16 (development of big data capabilities offering Plaintiff competitive advantage); ¶¶19, 25, 28-32 (maintained in confidence); ¶¶1, 34-62 (access to which was obtained by improper means). To the extent that the Court dismisses the Plaintiff's Lanham Act Claim, Plaintiff reserves the right to amend and add this federal claim.

4

Shield Delaware cites numerous cases following *Dastar* and asserts that the application of *Dastar* in those cases demonstrates that Plaintiff's Lanham Act claim must fail. But these rulings are fully consistent with the Supreme Court's requirement that the Lanham Act not be used in lieu of a proper copyright claim. Wholly distinguishable, none of these cases bar Plaintiff's Lanham Act claim as alleged. For example, Shield Delaware relies on *Lapine v. Seinfeld*, 08-civ-128, 2009 WL 2902584 (S.D.N.Y. Sept. 10, 2009)in which the plaintiff-author alleged that Jessica Seinfeld (the comedian's wife) copied the author's *Sneaky Chef* book. As with the plaintiff in *Dastar*, the plaintiff-author brought simultaneous copyright and false designation claims. The court dismissed the case, noting that "the mere act of publishing a written work without proper attribution to its creative source is not actionable under the Lanham Act." *Id*. at *15. Indeed, any rights for publishing of a written work is precisely the stuff of copyright, a claim which coincidentally also failed in *Lapine,* as the plaintiff did not make out required element of substantial similarity. *Id*. at *8-11. Shield Delaware next relies on *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 398 (S.D.N.Y. 2006). There too, the plaintiff improperly used the Lanham Act to prosecute her alleged rights in a book character. The *Antidote* court dismissed, noting that "nothing in *Dastar* suggests that communicative products such as novels may be accorded 'special treatment' where no copyright claim is available." *Id*. Shield Delaware's reliance on *Greene v. Warner Music Group*, 23-civ-1555, 2024 WL 3045966 (S.D.N.Y. June 18, 2024) fares no better. There, the plaintiff also alleged a copyright infringement and false designation of origin claim simultaneously. The court dismissed the Lanham Act claim as foreclosed under *Dastar*, as a prohibited claim for "failure to credit copyrightable work under the Lanham Act." *Id*. at *13. Plaintiff is not suing over characters, a cookbook or a song, but rather over architecture and services, neither of which are communicative nor expressive. Dkt. 46, ¶26.

5

Of even less significance is Shield Delaware's reliance on *Invista S.a.r.L. v. E.I. DuPont de Nemours & Co.*, 08-cv-7270, 2008 WL 4865208 (S.D.N.Y. Nov. 3, 2008) for the general observation that the Lanham Act does not protect the person or entity that originated the ideas or communications that the goods embody. *Id*. at *3. But, as noted, the Amended Complaint alleges that Shield did more than simply embody ideas and in any event did not embody communications. *See supra* at 2. In contrast, the issue that faces this Court was not even before the *Invista* court. The plaintiff there did not bring a false **designation** claim under the Lanham Act, 15 U.S.C. section 1125(a)(1)(A), but rather a false **advertising** claim under 15 U.S.C. section 1125(a)(1)(B). Id. The Amended Complaint does not allege false advertising.[2]

Finally, Shield Delaware relies on a dismissal of a plaintiff-manufacturer's Lanham Act claim in *I Candy by JW LLC v. Spin Master, Ltd.*, 17-CV-3131, 2018 WL 11697440 (E.D.N.Y. June 19, 2018). But the faulty information and belief allegations in that case appear to be the principal reason that triggered the dismissal. "The record is devoid of any factual allegations from which the basis of plaintiff's belief the defendant falsely designated the origin of plaintiff's product, i.e., the defendant sold or "passed off" plaintiff's product as its own, during any sales pitches may reasonably be inferred." *Id*. at *21. There, the plaintiff-manufacturer of a flotation toy (the Designer Noodle) alleged, on information and belief, that the defendant, a global seller of recreational water products supplied samples of its Designer Noodle to defendant only to have defendant claim in pitches to "large retailers" that the samples were actually defendant's product, not plaintiff's. *Id*. at *20-21. The court noted plaintiff's ability to secure witnesses to the pitches (the allegations are "not peculiarly within the possession and control of defendant" but "occurred

---

[2] For good measure, Shield Delaware throws in a dismissal of a Lanham Act claim where the plaintiff alleged that the defendant falsely stated they owned a patent, which formed part of plaintiff's collateral. *Digigan, Inc. v. Ivalidate, Inc*, 02-Civ-420, 2004 WL 203010 (S.D.N.Y. Feb. 3, 2004). But *Digigan* has nothing to do with the allegations in this one. The case may appear simply because *Dastar* was cited, but importantly without analysis. *Id*. at *4.

in the presence of others," *id*. at \*21). The court thus found that the plaintiff had not plausibly stated a claim that this misrepresentation was made. "To the contrary, the factual allegations indicate that the product that defendant manufactured, marketed and distributed was its own; not that the defendant passed off its product as the plaintiff's Designer Noodle or reverse passed off the Designer Noodle as its product." While *Dastar* is cited, the court does so to provide the High Court's definition of "origin" of the goods under the Lanham Act. In contrast, the allegations in the Amended Complaint are supported by direct allegations, and by exhibits demonstrating unlawful conduct, Dkt. 46, ¶40-45; 66, Exs. 3-4. Only where information is peculiarly in Shield's possession is the allegation based on information and belief. *See*, *e.g.*, ¶54 (alleging incorporation into Nebula product). *Steadfast Ins. Co. v. T.F. Nugent, Inc.*, 513 F.Supp.3d 419, 425 (S.D.N.Y. 2021)(accepting domination issue as true based on allegation with information and belief).

## II. PLAINTIFF HAS PLAUSIBLY ALLEGED UNFAIR COMPETITION UNDER NEW YORK LAW

### A. What New York Requires and Does Not Require to Show Confusion or Mistake in Unfair Competition.

Shield Delaware asserts that the Court should assess Plaintiff's confusion or mistake cause of action under New York law in the same manner as the court would assess a federal Lanham Act claim. Of course, however, "the elements of an unfair competition claim and Lanham Act claim are different." *Morex S.p.A. v. Design Institute Am., Inc.*, 779 F.2d 799, 801 (2d Cir. 1985). "[C]auses of action alleging unfair competition or trademark infringement both require a demonstration 'that the public is likely to confuse the defendant's product or service with that of the plaintiff[,]'" plus bad faith, while a trademark infringement claim must "also show that the

trade name has acquired a secondary meaning."[3]  *Camelot Assocs. Corp. v. Camelot Design & Dev. LLC*, 298 A.D.2d 799, 800 (3d Dep't 2002) ((citing cases).  Actual confusion is not required to be shown under New York law, while it is preferred under the Lanham Act.  *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F.Supp.3d 612, 671 (S.D.N.Y. 2016) (although "actual confusion need not be shown to prevail under the Lanham Act, there can be no more positive or substantial proof of the likelihood of confusion)(citation omitted).  Third, a comparison of the strength and use of the marks by junior and senior users is helpful in a trademark infringement case but neither helpful nor required in a false designation of origin case like this one that does not allege such infringement.  *Portkey Techs. Pte Ltd. v. Venkateswaran*, 23-cv-5074 (JPO), 2024 WL 3487735, at *2 (S.D.N.Y. July 19, 2024)("the Second Circuit has 'repeatedly' held that district courts are to consider the eight *Polaroid Polaroid* factors when evaluating a Lanham Act ***trademark infringement claim***." 2024 WL 3487735, at *2 (emphasis added).  "As a general matter, however, courts have concluded that a party's attempt to pass off another party's product as its own satisfies the confusion requirement of the Lanham Act for an obvious reason — it represents a direct attempt to confuse a consumer about the origin of a product."  *Laura Laaman & Assocs., LLC v. Davis*, 16-cv-594, 2017 WL 5711393, at *6 (D. Conn. Nov. 27, 2017).  "Reverse passing off does not require that form of analysis [based on *Polaroid*].  *Waldman Pub. Corp. v. Landoll, Inc.*, 848 F. Supp. 498, 503 (S.D.N.Y. 1994), *vacated on other grounds*, 43 F.3d 775 (2d Cir. 1994). "It is inherent in Landoll's conduct that purchasers of the Landoll adaptations of these classic works will, as the result of Landoll's deceitful marketing, mistakenly believe that Landoll created the

---

[3] Like Defendant KLDiscovery, Shield Delaware makes much of secondary meaning, which in fact Plaintiff did pled in the Amended Complaint although this is not a trademark infringement case.  The issue is a red herring in false designation of origin case without trademark infringement allegations.

adaptations. That is a sufficient showing of impact upon consumers to justify injunctive relief." *Id*. at 504.

Shield is simply mistaken that it can skirt misappropriation under New York law because Plaintiff did not allege use by Shield of the ZL UA or Unified Archive mark.   In a reverse passing off claim, "it is precisely the removal of a competitor's trademark from a product that is the hallmark of such claims."  *Societe des Hotels Meridien, S.A. v. Lasalle Hotel Operating P'ship, L.P.*, 380 F.3d 126, 131 (2d. Cir. 2004)(vacating dismissal of plaintiff's complaint under the Lanham Act for the reverse passing off of hotel services).

### B.  Plaintiff has Shown Defendants' Bad Faith More than Sufficiently.

To act in bad faith, one must exploit some "commercial advantage which belonged exclusively to [another]." *LoPresti v. Mass. Mut. Life Inc. Co.*, 30 A.D.3d 474, 820 N.Y.S.2d 275, 277 (2d Dep't 2006); *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 127 A.D.3d 48, 57 (1st Dep't 2015)(affirming finding of bad faith where retailer induced Martha Stewart to break exclusivity and share plaintiff's confidential information.)  The facts as pled in the Amended Complaint demonstrate intentional copying to confuse customers and thus bad faith, by the Defendants.

Shield Delaware asserts that Plaintiff's allegations of bad faith are plead with "ipse dixit assertions" and "self-serving and unsupported speculation." Not so.  In fact, the allegations are well-supported by facts cited throughout the Amended Complaint.  All legal allegations depend upon the preceding factual paragraphs of the Amended Complaint. *See*, *e.g.*, Dkt. 46, at ¶¶63, 72, 83 & 88.  In sum, Plaintiff has alleged that after much time and effort, Plaintiff developed the ability to handle large volumes of data for its multinational corporate customers, allowing among other things the accurate and efficient re-creation of corrupted data, making data storage and

9

recovery easier by minimizing redundancy and obsolete data and allowing data management outside of a given archive. *Id*. at ¶¶15 & 17. Plaintiff heavily promoted its capabilities and its mark throughout the United States, achieving business awards and secondary consideration in the minds of consumers. *Id*. at ¶¶20-24. Defendant Gardner had complete access to ZL's confidential and proprietary data and was directly involved in the Compliance, Information Governance and Archiving business at the heart of the case. *Id*. at ¶37. Plaintiff has further alleged but for the misappropriation the Shield Defendants did not have Plaintiff's capability, in particular the scaling of large volumes of data, and are now touting within a very short time that they do. *Id*. at ¶¶42-57. Multiple demonstrations of Plaintiff's capabilities were arranged for Shield's benefit of specific ZL products. *Id*. at ¶45. Plaintiff has alleged that its valuable multinational Client has begun migrating data away from ZL, presumably to the Shield Defendants through the connivance and benefit and Defendants KLDiscovery and Gardner. Dkt. 46, at 1, ¶¶60-62. Plaintiff alleges two instances of customer confusion. *Id*. at ¶65.

Urging dismissal of the claim, Shield Delaware relies on *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 602 (E.D.N.Y. 2017) and *Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11-3677, 2013 WL 1209041 (E.D.N.Y. March 25, 2013), but the amended complaints in those cases bear little resemblance to the Amended Complaint here. In *Bubble Genius*, plaintiff failed to allege "any fact that would lead to the plausible inference of actual or likelihood of confusion of that defendant acted in bad faith." *Id*. at 602. Instead, conclusory language such as "willfully, wantonly, oppressively, and maliciously" was employed with "no facts" supporting such statements. *Id*. Similarly, in *Carson Optical,* 2013 WL 1209041, the court appropriately dismissed plaintiff's Lanham Act and Unfair Competition claim under New York law because plaintiff's allegations that defendants sold "knock-off products" were insufficient without "any facts to make

10

that conclusion plausible." *Id*. at *8. Here, in stark contrast to the threadbare allegations in those cases, the Amended Complaint is replete with facts supporting each of its legal conclusions.

Joining Defendant Gardner, Shield Delaware complains that Plaintiff has not adduced facts showing that Gardner had the skills or expertise to recreate Plaintiff's technology for Shield. (Shield Delaware Br. at 18.)  But the Amended Complaint alleges that KLDiscovery arranged demonstrations as to how Plaintiff's technology worked in practice for Shield's benefit, and the companies entered a partnership based on the same stolen technology. Dkt. 46 at ¶52.  Further, Plaintiff alleged that Defendant Gardner was well aware of ZL's technology having worked with ZL through KLDiscovery for 10 years, including on an executive level, with respect to the very services that are the heart of the dispute, and now continues to work with Shield with respect to the same technology, only recently launched.  "Courts may reasonably infer that the defendant used plaintiff's trade secret where the defendant retains plaintiff's employees and launches a competing product shortly hereafter." *Data Device Corp. v. W.G. Holt, Inc.*, 19-CV-4105, 2020 WL 7024312, at *4 (E.D.N.Y. Nov. 30, 2020).[4]  Shield asserts that in the absence of a restrictive covenant, an employee should be able to compete with his principal.  (Shield Delaware Br. at 19.) While that may be so conceptually with an honest employee, here Shield, KLDiscovery and Gardner, the former principal of KLDiscovery are all benefiting together from Plaintiff's purloined technology.  The premise has zero-weight under these circumstances.

Shield asserts that its truncated development of Nebula—less than 11 months— and hiring of Gardner from KLDiscovery does not render the allegation of bad faith misappropriation any

---

[4] On this issue, Shield Delaware's relies on *Fleming Sales Co., Inc. v. Bailey*, 611 F. Supp. 507 (N.D. Ill. 1985), a case from the Northern District of Illinois decided under Indiana law, on summary judgment, not on a motion to dismiss.  In *Fleming*, the defendant had demonstrated that the customer lists that were claimed to be misappropriated were actually available through proper means. *Id*. at 513.  While it permissible to build an organization to hire from a competitor, the court recognized that it would not be permissible through an independent tort. *Id*. at 513-14. Plaintiff has alleged just that.

more plausible. As noted, *Data Device* holds differently. *Data Device Corp.*, 2020 WL 7024312, at *4. Suggesting against common sense that development timelines do not really matter in a misappropriation case, Shield Delaware like Defendant Gardner cites to the court's ruling in *SS&C Techs. Holding, Inc. v. Arcesium LLC*, 22-cv-02009, 2024 WL 5186530 (S.D.N.Y. Dec. 20, 2024). Like Defendant Gardner, Shield Delaware gets the holding wrong.

In *Arcesium*, both parties submitted declarations and based on these declarations, not the pleading, the court dismissed the complaint. *Id*. at 11. The declarations made clear that the truncated timeline involved not the development of competing technology but the difficulty of switching from one platform to another. *Id*. Indeed, the *Arcesium* court specifically found that an unusually short time for independent development typically results in a reasonable inference of misappropriation. "Courts in this district have drawn a reasonable inference of misappropriation where a plaintiff alleged that a defendant lacked the technical expertise or requisite experience in the market such that defendant's development of its competing product would be implausible." Plaintiff has alleged just such an unusually short time for development by the Shield Defendants. *See* Dkt. 46 at ¶15 (alleging that ZL invested hundreds of thousands of man hours from April 1999 to develop its unified architecture); ¶¶57-58 (alleging that Shield was able to develop its own architecture within the short time frame of less than one (1) year, too little time to use either its Series A or Series B funding, absent misappropriation). *See Medtech Prod. Inc. v. Ranir, LLC*, 596 F.Supp.2d 778, 790 & 805 (S.D.N.Y. 2008)(misappropriation plausible where defendant had "no experience in the . . .market, [yet] was able to rush a [product] to the market, without going through any development process" in only seven months instead of the normal years of experimenting."); *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 2018 WL 6173349, at *4 (S.D.N.Y. Nov. 26, 2018)(misappropriation plausible where defendant introduced competing products in record

12

time despite defendant's lack of experience in developing clinical trial management software). Notably, both the *Medtech* and *Medidata* cases appear and are analyzed in the *Arcesium* decision both Defendants Shield Delaware and Gardner mistakenly rely on.

### C. Shield Has Failed to Demonstrate that Plaintiff's Misappropriation Claim is Implausible on its Face.

Shield Delaware chose not to address substantively Plaintiff's misappropriation claim under New York law, limiting itself to commentary. A claim for unfair competition requires a plaintiff to demonstrate bad faith misappropriation of a property right or commercial advantage which belonged to the plaintiff. *ITC, Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 478 (2007). Plaintiff has alleged that its development of Unified Archive took thousands of manhours, and provided its substantial commercial advantage in the marketplace. That commercial advantage was undermined and turned over improperly to Shield through the actions Defendants KLDiscovery and Gardner, who are also benefiting in the bargain. Plaintiff has certainly alleged what is required to demonstrate misappropriation. *Greenblatt v. Prescription Plan Servs. Corp.*, 783 F. Supp. 814, 825 (S.D.N.Y. 1992)("unfairness and an unjustifiable attempt to profit from another's expenditure of time, labor and talent" required to show unfair competition).

That Plaintiff showed its technology under license to third parties under the SDLSA pursuant to confidentiality restrictions as Shield Delaware asserts does not excuse Shield's copying and use of that technology to achieve commercial advantage. That is the "essence of unfair competition." *Id*., *quoting Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34-35 (2d Cir. 1995). Misappropriation of confidential information, even business confidential information such distribution lists, support such a claim for unfair competition. *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F.Supp.2d 500, 503 (E.D.N.Y. 2009)(denying motion for summary judgment).

13

Shield Delaware's various denials repeated throughout its brief have no place in a Rule 12(b)(6) motion.  They should instead be pled in an Answer.

## <u>CONCLUSION</u>

Wherefore, ZL Technologies, Inc. requests that this Court deny Defendant Shield Delaware's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or alternatively to allow Plaintiff to replead its Complaint to conform to the Court's ruling.

Dated:    September 2, 2025

**WUERSCH & GERING LLP**

s/*Kevin Murphy*_____
Kevin Murphy
88 Pine Street Wall Street Plaza
20th Floor
New York, NY 10005
(212) 509-6311

*Attorneys for Plaintiff ZL
Technologies, Inc.*

14