UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZL TECHNOLOGIES, INC.,

                            Plaintiff,

-against-

SHIELD FINANCIAL COMPLIANCE, LTD.;
SHIELD FINANCIAL COMPLIANCE, INC.;
KLDISCOVERY ONTRACK, LLC and
AARON GARDNER,

                            Defendants.

Case No. 1:25-cv-2673-JPO

**ORAL ARGUMENT REQUESTED**

---

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
KLDISCOVERY ONTRACK, LLC'S MOTION TO DISMISS
<u>PLAINTIFF'S AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ...........................................................................................1

II. ARGUMENT.......................................................................................................................1

    A. ZL's Lanham Act Claim Is Baseless............................................................................1

        1. ZL concedes that it failed to allege essential elements....................1

        2. ZL fails to demonstrate that it holds a valid, protectable mark. ...................................................................................................2

        3. ZL's purported reverse palming off claim should be dismissed.......................................................................................................3

        4. ZL's Section 1125(a) claim is untimely..........................................6

    B. ZL's Opposition Fails to Revive the Misappropriation Claim. ...................6

    C. ZL Concedes That It Failed to Adequately Plead Confusion. .....................8

    D. ZL's Breach of Contract Claim Is Incurably Deficient................................8

III. CONCLUSION...................................................................................................................10

I.  **PRELIMINARY STATEMENT**

ZL falls well short of meeting the necessary pleading standard to establish viable causes of action. The Opposition fails to rectify these deficiencies and, in fact, contains multiple concessions that, when viewed alongside the inherent shortcomings of the Amended Complaint ("AC"), compel a dismissal with prejudice. *First*, ZL's recognition that it did not plead the *Polaroid* factors effectively signals an abandonment of any trademark infringement claim it asserted. The Lanham Act claim should also be dismissed due to ZL's failure to plead the existence of a valid mark entitled to protection, along with its unsupported theory of reverse palming off that neglects to allege (and cannot allege) that ZL is the actual origin of the product KLDiscovery ("KLD") allegedly passed off—an incurable defect. *Second*, ZL's New York common law unfair competition claims are equally untenable. They fail to specifically attribute wrongful conduct to KLD as distinct from other defendants and do not allege sufficient facts to establish a likelihood of consumer confusion, as underscored by the failure to allege the *Polaroid* factors. *Lastly*, ZL's decision to attach a contract to the amended complaint, to which it is not even a party, is perplexing and is accompanied by a ludicrous explanation that does nothing to overcome the blatant pleading deficiencies. Nor does ZL explain how an expired contract (*i.e.*, the "PLLA") can give rise to live contract claims. Given these factors and ZL's own admissions regarding its pleading deficiencies, the case should be dismissed with prejudice.

II.  **ARGUMENT**

    A.  **ZL's Lanham Act Claim Is Baseless.**

        1.  **ZL concedes that it failed to allege essential elements.**

ZL concedes that it failed to plead the required *Polaroid* factors to properly allege the "likelihood of confusion" prong of a false designation Lanham Act claim. ECF 80 at

15–16. A plaintiff abandons claims if, in opposing a motion to dismiss, it fails to address the defendant's arguments. *See Brandon* v. *City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (collecting cases). Given ZL's admitted failure, the Lanham Act claim should be dismissed to the extent it is premised on KLD's alleged use of the unregistered mark "Unified Archive." Instead, ZL attempts to argue that it did not plead a trademark infringement claim but instead pleaded a "reverse palming off" claim. ECF No. 80 at 16. But as to the use of "Unified Archive," that makes no sense. Simply stated, reverse palming off under the Lanham Act occurs when "A sells B's product under A's name." *Lehrman* v. *Lovo, Inc.*, No. 24-CV-3770-JPO, 2025 WL 1902547, at *7, n.7 (July 10, 2025) (citation modified). Here, KLD allegedly marketed ZL's product as its own but under *ZL's* product name, *i.e.*, Unified Archive. AC ¶ 40. That is infringement, not reverse palming off.[1] *Cf. I Candy by JW LLC* v. *Spin Master Ltd.*, 17-CV-3131-SJF, 2018 WL 11697440, at *20 (E.D.N.Y. June 19, 2018) ("*I Candy*") (stating that the "hallmark" of reverse palming off is "the removal of a competitor's trademark from a product," which distinguishes it from traditional trademark infringement). On this basis and the grounds set forth in the Opening Brief, and in light of ZL's admitted failure to plead all elements, the claim should be dismissed with prejudice.

## 2. ZL fails to demonstrate that it holds a valid, protectable mark.

ZL fails to meet its burden to show it has a valid and protectable mark. The owner of a descriptive mark, like "Unified Archive," must show that the mark has acquired secondary meaning. *Playtex Prods., Inc.* v. *Ga.-Pac. Corp.*, 390 F.3d 158, 163 (2d Cir.

---

[1] Nor can it be characterized as simple "palming off," because that occurs "when a producer misrepresents his own goods or services as someone else's." *Dastar Corp.* v. *Twentieth Century Fox Film*, 539 U.S. 23, 27 n.1 (2003). ZL has not alleged that KLD attempted to sell its *own* product using ZL's name.

2004) (stating that descriptive marks are protectable only when they acquire a secondary meaning). ZL attempts to do so by conflating its allegations about "ZL UA" with "Unified Archive" to argue that "Unified Archive" is a descriptive mark that has acquired the necessary secondary meaning. ECF No. 80 at 13. As if to underscore this deficiency, the Opposition states that "*ZL* has achieved secondary meaning as an identifier of ZL's architecture and services"—with no mention of the relevant alleged mark, "Unified Archive." ECF No. 80 at 13 (emphasis added). But as the Opening Brief argues (and the Opposition does nothing to dispel), "'ZL UA' is not at issue in this case, nor is there any allegation of confusion with 'ZL UA,' and 'ZL UA' has never been associated with a trademark—cancelled or otherwise." ECF No. 66 at 14. To the extent ZL tries to combine its allegations about the "ZL UA" and "Unified Archive" to argue that "Unified Archive" is a descriptive mark that has acquired a secondary meaning, that, too, must fail because ZL only pleads conclusory allegations. *See* AC ¶¶ 19–23. Thus, ZL fails to allege it has a valid mark entitled to protection.[2]

### 3. ZL's purported reverse palming off claim should be dismissed.

ZL's Opposition tries and fails to demonstrate a properly pled reverse palming off claim as to KLD.[3] Such a claim "requires allegations: (1) that the [product] at issue originated with the plaintiff; (2) that [the] origin of the [product] was falsely designated by the defendant; (3) that the false designation of origin was likely to cause consumer

---

[2] ZL argues that KLD's reliance on *Verschleiser* and *Trombetta* is inapposite or distinguishable. *See* ECF No. 80 at 14–15. But KLD relies on *Verschleiser* for the simple proposition that the "owner of an unregistered mark does not benefit from the presumption of validity created by federally registering the mark" and that "ZL has the burden of proving 'its mark is a valid trademark.'" ECF No. 66 at 13 (quoting 2023 WL 5835031, at *13 (cleaned up)). KLD relies on *Trombetta* for substantially similar reasons, including the clear restatement of the classifications that exist. *Id.* at 13–15.

[3] KLD joined and incorporated by reference Gardner's arguments for dismissing the AC, which persuasively argued that, even construed as a palming off claim, ZL's first cause of action should be dismissed. *See* ECF No. 66 at 26–27.

3

confusion; and (4) that the plaintiff was harmed by the defendant's false designation of origin." *Portkey Techs. Pte Ltd.* v. *Venkateswaran*, No. 23-CV-5074 (JPO), 2024 WL 3487735, at *9 (S.D.N.Y. July 19, 2024) (cleaned up). ZL has failed to adequately allege ZL was the origin of the product at issue, a false designation, or a likelihood of consumer confusion. All three omissions are fatal.

The gravamen of the claim appears to be the allegation that Shield's Nebula Intelligent Archive was nothing more than a product that utilized portions of ZL's technology but was sold under Shield's brand name. AC ¶ 66. *First*, this claim fails the test articulated in *Dastar Corp.*, 539 U.S. at 37, because ZL does not adequately allege the origin of the product at issue. The Supreme Court held that the term "origin" refers to "the producer of the tangible goods that are offered for sale, and *not* the author of any idea, concept or communication embodied in those goods." *Id.* (emphasis added). Here, ZL merely alleges that Defendants used certain "data connectors," "software," and "[a]spects" of ZL's technology in Shield's Nebula Intelligent Archive. AC ¶¶ 52, 54, 60, 66. In other words, the allegedly "reverse palmed off" product contained only components of ZL's technology but was not ZL's product itself. This is fatal because "when a defendant uses a plaintiff's confidential information to manufacture [] products," the plaintiff is not the origin of the product for purposes of the Lanham Act. *Nat'l Lighting Co.* v. *Bridge Metal Indus., LLC*, 601 F. Supp. 2d 556, 564 (S.D.N.Y. 2009) (citing *Dastar Corp.*, 539 U.S. at 37). That is precisely what ZL has alleged here, providing sufficient grounds for the Court to dismiss this claim with prejudice.[4]

---

[4] This same result would apply if the Court interprets the AC as alleging a reverse palming off claim based on the appearance of "Unified Archive" on the KLD website in 2018.

*Second*, to establish the second element of this claim, "the plaintiff must allege an affirmative act in which the defendant falsely represented itself as the product's owner or creator." *I Candy*, 2018 WL 11697440, at *20 (citations omitted). But ZL fails to establish how this claim implicates KLD, at all. There are no well-pled allegations that KLD falsely designated the origin of Nebula Intelligent Archive, as ZL squarely pins that conduct on Shield. *See* ECF No. 80 at 14. The only allegation that comes close to implicating KLD is the vaguely pled allegation that KLD responded to a "request for proposal for a front-end discovery solution" with ZL's "purloined technology." AC ¶ 60. But these "upon information and belief" allegations are woefully insufficient. *I Candy*, 2018 WL 11697440, at *21. ZL would have the Court infer that KLD falsely represented during an unnamed and undated pitch meeting with the Client that Shield's "front-end discovery tool" was made by Shield, not ZL. Here, as in *I Candy*, the alleged "acts took place in the presence of others, *i.e.*, during purported sales pitches." *Id.* Other than ZL's insufficient information-and-belief pleading, there are no alleged facts that there was even a joint KLD-Shield response or that KLD ever falsely represented that either it or Shield was the source of the "front-end discovery solution." *Id.* (dismissing claim based on information-and-belief pleading and stating that "the record is devoid of any factual allegations from which the basis of plaintiff's belief that defendant falsely designated the origin of plaintiff's product, *i.e.*, that defendant sold or "passed off" plaintiff's product as its own, during any such sales pitches may reasonably be inferred").

*Third*, ZL has not adequately alleged likelihood of confusion. As an initial matter, there could not be confusion as to the origin of the product, because Shield was, in fact, the origin of the Nebula Intelligent Archive. *See supra* Section II.A.3. Moreover, the AC

5

lacks sufficient facts to demonstrate the degree of similarity between the Nebula Intelligent Archive and the Unified Archive, which would enable the Court to evaluate potential confusion. *See I Candy*, 2018 WL 11697440, at *20 (finding plaintiff's conclusory allegations that defendant's "wrongful acts have caused . . . confusion" insufficient to find confusion). None of the conclusory alleged facts described in the Opposition support a likelihood of confusion argument. ECF No. 80 at 14.

Lastly, ZL fails to adequately allege how it was harmed by a single pitch meeting about which the AC provides no detail. For all of these reasons, ZL's reverse palming off claim should be dismissed with prejudice.

### 4.  ZL's Section 1125(a) claim is untimely.

ZL concedes that: (1) the statute of limitations period is six years, ECF No. 80 at 9; (2) the earliest alleged Lanham Act violation occurred on August 18, 2018, *id.*; and (3) a cause of action under the Lanham Act accrues at the time the plaintiff "could with reasonable diligence have discovered" the violation, *id.* at 9–10. The only question now is whether ZL could have, with reasonable diligence, discovered the violation. ZL concedes that the alleged infringement occurred on a public website of its business partner. AC ¶¶ 1, 27. The Court should infer that had ZL acted with reasonable diligence, it would have discovered the alleged infringement as early as August 2018.

### B.  ZL's Opposition Fails to Revive the Misappropriation Claim.

ZL's response to KLD's argument that it failed to adequately plead a misappropriation claim begins with a series of irrelevant allegations: KLD and ZL had a near 20-year partnership; KLD hired Gardner more than ten years ago; and Gardner was later promoted at KLD. ECF No. 80 at 17–18. The Opposition next appears to argue that the alleged 2018 appearance of "Unified Archive" on KLD's website constitutes

misappropriation. *Id*. at 18.  This is not clear at all from the AC, but if this is what ZL truly asserts, then the claim is barred by New York's three-year statute of limitations.  N.Y. C.P.L.R. § 214(4); *Arcadia Biosciences, Inc.* v. *Vilmorin & Cie*, 356 F. Supp. 3d 379, 403 (S.D.N.Y. 2019) (applying New York law).  To the extent this claim is premised on the alleged incorporation of ZL's technology into Shield's Nebula Intelligent Archive, this claim is premised on nothing more than a conclusory allegation based on "information and belief." AC ¶ 54.  That ZL is unable to allege corroborating facts for its core allegation is disqualifying.  *Cf. I Candy*, 2018 WL 11697440, at *20–21 (dismissing claims where at least several allegations relied on "information and belief").

ZL also makes a last-ditch argument that Gardner's conduct implicates KLD under the theory of "respondeat superior." ECF No. 80 at 19.  Not so.  "To state a claim for respondeat superior, a plaintiff must plead facts showing . . . that the tortious conduct causing the injury was undertaken within the scope of the employee's duties to the employer and was thus in furtherance of the employer's interests." *Chau* v. *Donovan*, 357 F. Supp. 3d 276, 290 (S.D.N.Y. 2019) (cleaned up).  The most obvious flaw with ZL's theory is that Gardner was no longer a KLD employee when he allegedly "appropriated his knowledge of ZL's" technology to benefit "his *new* employer, Shield" and thus could not have undertaken the alleged conduct within the scope of his KLD employment.  AC ¶ 53 (emphasis added).  In addition, the Opposition invents allegations that were never alleged in the AC.  For example, ZL argues that "Defendant Gardner did not promote himself in this unauthorized use, he promoted the interests of Defendant KLD, on whose website the unauthorized use appeared." ECF No. 80 at 18.  But that allegation appears nowhere in the AC and is conclusory, in all events.  Indeed, ZL has not provided a citation to this

7

conclusory allegation, nor can it.[5]  Finally, the Opposition does not even attempt to highlight the supposed allegations of bad faith in the AC, likely because there are none. ECF No. 80 at 19–20 (showing no citations to AC).  And to the extent ZL attempts to argue bad faith, it is based on a gross mischaracterization of the AC, claiming that KLD's "two employees in 2023 blurted out the truth inadvertently," *id.* at 20—when the AC alleges no such thing and instead attributes the "inadvertent" revelation to the Client, AC ¶ 61.

### C. ZL Concedes That It Failed to Adequately Plead Confusion.

ZL has not adequately alleged any of the elements used to show "likelihood of confusion."  In the Second Circuit, "[t]he *Polaroid* factors may be used to measure likelihood of confusion for the purpose of a New York unfair competition claim." *Computer Assocs. Int'l, Inc.* v. *AJV Computerized Data Mgmt., Inc.*, 889 F. Supp. 630, 638 (E.D.N.Y. 1995) (citing *Bristol-Myers Squibb Co.* v. *McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1048 (2d Cir. 1992).  ZL concedes in its opposition brief that it did not plead the *Polaroid* factors.  *See* ECF No. 80 at 15–17.  Therefore, this claim should be dismissed for ZL's failure to plead an essential element of the claim.

### D. ZL's Breach of Contract Claim Is Incurably Deficient.

ZL has no answer to the indisputable fact that it appended two contracts to the AC that purportedly govern KLD's relationship with ZL, but neither actually does.

The first is the Software Development License and Services Agreement ("SDLSA") that ZL falsely stated in the AC was executed between ZL and KLD's

---

[5] The cases ZL relies on are inapposite.  *Lundberg* v. *State* dismissed the respondeat superior claim because it failed as a matter of law and is only cited to establish the doctrine of respondeat superior.  25 N.Y.2d 467, 471 (1969).  *U.S. Media Corp., Inc.* v. *Edde Ent., Inc.*, is a motion for summary judgment case that simply does not state the proposition that ZL relies upon it for, which is that "[l]iability of the employer under the Lanham Act may be demonstrated through the action of the employees or principals of that employer as with any tort."  *See* ECF No. 80 at 19 (citing 94-CV-4849-MBM, 1996 WL 520901, at *9 (S.D.N.Y. Sept. 12, 1995)).

8

predecessor, AC ¶ 11, but that it now concedes is "an [a]greement with the Client and KLD," ECF No. 80 at 20. Remarkably, even after KLD filed the unredacted version of the so-called "SDLSA," which states on the cover page and again a few pages later that it is between KLD and the Client, ECF No. 68–1 at 2, 5, ZL double-downs on the specious argument that the "SDLSA" governs the relationship between KLD and ZL, ECF No. 80 at 20–21.[6] ZL also bizarrely alleged that it "terminated the SDLSA," AC ¶ 98, but ZL is not a party to the "SDLSA," and nothing in the "SDLSA" grants ZL termination rights, *see* ECF No. 46–1 at 26.

As a last resort, ZL argues that it "is a named subcontractor of the SDLSA" and, therefore, "privity exists between ZL and KLD." ECF No. 80 at 22. Nonsense. That fleeting reference to ZL (on page 40 of a 41-page contract) hardly shows that ZL and KLD are in privity on a contract with the provisions that the AC alleges are in breach. In fact, ZL misapplies *Stapleton* v. *Barrett Crane Design & Eng'g*, 725 Fed. App'x 28 (2018) (summary order). In that case, the court entertained the idea that a non-signatory could be in privity with the signatories to an agreement as to *that* agreement. Here, ZL argues that a passing reference in the KLD-Client agreement adequately alleges the existence of a separate, unnamed, unalleged agreement. Put simply, the SDLSA attached to ZL's complaint is not a contract between ZL and KLD and therefore cannot form the foundation of the AC's breach of contract claim. The Opposition does nothing to cure this fatal defect.

The second agreement—the PLLA—has been, on its face, expired since April 30, 2018, at the latest, and ZL makes no non-conclusory allegations or arguments otherwise.

---

[6] ZL's about-face on the SDLSA is concerning because ZL manually redacted the "SDLSA" it now concedes is not actually between KLD and itself, so it must have known that it was not an agreement between itself and ZL, yet it represented it as such in its AC.

*See* ECF No. 66 at 24. Instead, ZL makes two confusing arguments as to why the PLLA still governs. First, ZL argues that sections 4.1 and 4.2 "explicitly recognized that all IP previously owned by ZL, and otherwise created pursuant to" the PLLA "will continue to be so." ECF No. 80 at 21. While that may be the case, it is of no moment: The PLLA's discussion of the continued ownership of certain IP rights merely clarifies that ZL has granted KLD a license but has not transferred ownership. Nothing discussed therein extends the life of the contract.

ZL also argues that it continued to abide by the PLLA, and, therefore, the parties modified the contract "by another agreement, by course of performance, or by conduct amounting to waiver or estoppel." ECF No. 80 at 22 (quoting *Kaplan* v. *Old Mut. PLC*, 526 F. App'x 70, 72 (2d Cir. 2013) (summary order)). But ZL has not alleged sufficient facts to support its argument that the PLLA was modified by course of performance, and ZL only now raises it in a brief reference in the Opposition. And the cited paragraphs of the AC that purport to underlay this argument actually refer to the "SDLSA," *not* the PLLA, AC ¶ 32, or refer to actions taken *before* the PLLA expired, *id.* ¶ 37.

Lastly, ZL fails to respond to, and thus concedes, the Opening Brief's arguments that all claims based on the expired PLLA must fail because no rights or obligations exist, and, to the extent alleged breaches are based on 2018 conduct, the claim is barred by the statute of limitations. *See* ECF No. 66 at 25–27.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant KLD's motion to dismiss the Amended Complaint with prejudice.

10

| | |
|---|---|
| Dated: New York, New York<br>September 8, 2025 | Respectfully submitted,<br>/s/ Joshua Hill<br>PAUL, WEISS, RIFKIND,<br>  WHARTON & GARRISON LLP<br>Joshua Hill<br>jhill@paulweiss.com<br>Mohamed Light<br>mlight@paulweiss.com<br>1285 Avenue of the Americas<br>New York, NY 10019-6064<br>Tel: (628) 432-5123<br>Fax: (628) 232-3090<br><br>Marc Price Wolf (*Pro Hac Vice*)<br>mpricewolf@paulweiss.com<br>535 Mission Street, 25th Floor<br>San Francisco, CA 94105<br>Tel: (628) 432-5167<br>Fax: (415) 276-8963<br><br>*Attorneys for Defendant KLD Ontrack, LLC* |

## **CERTIFICATION**

I, Joshua Hill, hereby certify that the foregoing Memorandum of Law complies with Local Civil Rule 7.1 and the Court's Individual Rule 4.C in that the total number of words in this memorandum of law, exclusive of the caption, table of contents, table of authorities, and the signature block, is 3,370 words according to Microsoft Word.

/s/ *Joshua Hill*

Joshua Hill