UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ZL TECHNOLOGIES, INC., <br><br> Plaintiff, <br><br> - against - <br><br> KLDISCOVERY ONTRACK, LLC; SHIELD FINANCIAL COMPLIANCE, LTD.; SHIELD FINANCIAL COMPLIANCE, INC.; and AARON GARDNER, <br><br> Defendants. | Case No. 1:25-cv-02673-JPO <br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT SHIELD FINANCIAL COMPLIANCE, INC.'S
REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
ITS MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
WITH PREJUDICE PURSUANT TO FEDERAL
RULE OF CIVIL PROCEDURE 12(b)(6)**

**ZEICHNER ELLMAN & KRAUSE LLP**
730 Third Avenue
New York, New York 10017
Telephone: (212) 223-0400

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES................................................................................................ii

ARGUMENT .................................................................................................................... 1

I.       ZL'S LANHAM ACT CLAIM (COUNT ONE OF THE FAC) REMAINS BARRED BY THE SUPREME COURT'S RULING IN *DASTAR* BECAUSE ZL IS NOT THE "ORIGIN" OF SHIELD'S PRODUCT AS A MATTER OF LAW ....................................................................................... 1

II.      THE COURT SHOULD DISMISS ZL'S TWO NEW YORK STATE LAW CAUSES OF ACTION BECAUSE THEY REMAIN IRREPARABLY FLAWED .................................................................................................... 4

      A.    The Court Should Dismiss ZL's Misappropriation Claim (Count Two of the FAC) Because ZL has Not Plausibly Alleged Misappropriation or Bad Faith by Shield Delaware ................................................................. 4

      B.    The Court Should Dismiss ZL's Unfair Competition by Confusion Claim (Count Three of the FAC) Because ZL has Not Plausibly Alleged Customer Confusion or Shield Delaware's Bad Faith ................... 7

CONCLUSION ................................................................................................................. 8

## TABLE OF AUTHORITIES

**Cases**                                                                                                                **Page(s)**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................................5

*Avilan v. Donahoe*,
  483 F. App'x 637 (2d Cir. 2012) ...........................................................................................1

*Baden Sports, Inc. v. Molten USA, Inc.*,
  556 F.3d 1300 (Fed. Cir. 2009) .............................................................................................3

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................................5

*Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*,
  326 F. Supp. 2d 876 (N.D. Ill. 2004) ..................................................................................3, 4

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003) ...................................................................................................... *passim*

*Data Device Corp. v. W.G. Holt, Inc.*
  2020 U.S. Dist. LEXIS 223438 (E.D.N.Y. Nov. 30, 2020) ...................................................6

*Elder Techs., Inc. v. Visone*,
  2025 U.S. Dist. LEXIS 170733 (S.D.N.Y. Sept. 2, 2025) .....................................................5

*Enzo Biochem, Inc. v. Molecular Probes, Inc.*,
  2013 U.S. Dist. LEXIS 183608 (S.D.N.Y. Dec. 6, 2013) ......................................................3

*Gen. Universal Sys. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) .................................................................................................3

*Kt Grp. v. Ncr Corp.*,
  2018 U.S. Dist. LEXIS 240923 (S.D.N.Y. Sept. 29, 2018) ...................................................3

*Lehrman v. Lovo, Inc.*,
  2025 U.S. Dist. LEXIS 131464 (S.D.N.Y. July 10, 2025) ..................................................2, 4

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*,
  209 F. Supp. 3d 612 (S.D.N.Y. 2016) ..................................................................................5, 7

*Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*,
  127 A.D.3d 48 (1st Dept. 2015) .............................................................................................7

*Milton Abeles, Inc. v. Farmers Pride, Inc.*,
  603 F. Supp. 2d 500 (E.D.N.Y. 2009) ...................................................................................5

*Polaroid Corp. v. Polaroid Elecs. Corp.*,
  287 F.2d 492 (2d Cir. 1961) ...................................................................................................8

*RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*,
  527 F. Supp. 3d 305 (E.D.N.Y. 2021) .........................................................................................8

**Statutes**

Lanham Act, § 43(a)(1)(A) ...................................................................................... *passim*

ZL's[1] opposition [ECF No. 83] to Shield Delaware's motion to dismiss [ECF Nos. 62-63]

fails to provide any credible reason to continue this fatally flawed lawsuit. ZL misreads *Dastar*,

fails to plead bad faith, and ignores the relevant contracts. The Court should dismiss the Shield

Defendants with prejudice.[2]

## ARGUMENT

**I.     ZL'S LANHAM ACT CLAIM (COUNT ONE OF THE FAC) REMAINS BARRED BY THE SUPREME COURT'S RULING IN *DASTAR* BECAUSE ZL IS NOT THE "ORIGIN" OF SHIELD'S PRODUCT AS A MATTER OF LAW**

In its moving brief, Shield Delaware explained that *Dastar Corp. v. Twentieth Century Fox*

*Film Corp.*, 539 U.S. 23 (2003) barred ZL's Lanham Act claim as a matter of law. *See* Shield

Delaware's moving brief ("Shield Del. Br.") [ECF No. 63] at 13-15. In response, ZL contends *Dastar*

does not apply here because *Dastar* is essentially limited to copyright, and "left intact the ability to

sue a competitor for the use of materials that go beyond ideas or concepts." ZL Opp. at 3. Having

invented this limitation, ZL then contends its claim fits within it: "the [FAC] does not merely allege

that Shield palmed off 'ideas, concepts or (embodied) communication.' Rather, [it] recites that:

'(s)pecific data connectors and software allowing the reconstruction and life[cycle] management of

data" was taken and "incorporated into Nebula Intelligent Archive, or other products of Shield." ZL

Opp. at 2 (quoting FAC ¶ 66). ZL is wrong – *Dastar* is not so limited, and its holding compels

dismissal of ZL's Lanham Act claim.[3]

---

[1] Unless otherwise defined, defined terms in this Reply shall have the same meaning as those stated in Shield Delaware's moving brief [ECF No. 63].

[2] To the extent applicable, Shield Delaware adopts and joins in the arguments raised in its co-defendants' replies.

[3] In a footnote, ZL implicitly admits its attempt to distinguish *Dastar* fails, asserting it "reserves the right" to bring a claim for "violation of the Defend Trade Secrets Act," if the Court dismisses the Lanham Act claim. ZL Opp. at 4, n.1. First, "a party may not use opposition to a dispositive motion as a means to amend the complaint." *Avilan v. Donahoe*, 483 F. App'x 637, 639 (2d Cir. 2012) (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)). Second, any DTSA

The Lanham Act "does not have boundless application as a remedy for unfair trade practices," *Dastar*, 539 U.S. at 29 (quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (2d Cir. 1974)), but "can apply only to certain unfair trade practices prohibited by its text." *Id.*; *Lehrman v. Lovo, Inc.*, 2025 U.S. Dist. LEXIS 131464, *21 n.5 (S.D.N.Y. July 10, 2025) (same). Thus, to determine whether the activity at issue in *Dastar* – copying a television series, making modifications (arguably minor), and selling it as one's own – fell within the Lahman Act required the Supreme Court to interpret the Lanham Act's statutory text:

> If "origin" refers only to the manufacturer or producer of the physical "goods" that are made available to the public (in this case the videotapes), Dastar was the origin. If, however, "origin" includes the creator of the underlying work that Dastar copied, then someone else (perhaps Fox) was the origin of Dastar's product. *At bottom, we must decide what § 43(a)(1)(A) of the Lanham Act means by the "origin" of "goods."*

*Dastar*, 539 U.S. at 31 (emphasis added).

The *Dastar* court decided the phrase "origin of goods" in Section 43(a)(1)(A) means "the producer of the tangible goods that are offered for sale." 539 U.S. at 37. It explained:

> The dictionary definition of "origin" is "the fact or process of coming into being from a source," and "that from which anything primarily proceeds; source." Webster's New International Dictionary 1720-1721 (2d ed. 1949). And the dictionary definition of "goods" (as relevant here) is "[w]ares; merchandise." *Id.,* at 1079. We think the most natural understanding of the "origin" of "goods" -- the source of wares -- is the producer of the tangible product sold in the marketplace, in this case the physical Campaigns videotape sold by Dastar. … [A]s used in the Lanham Act, the phrase "origin of goods" is in our view incapable of connoting the person or entity that originated the ideas or communications that "goods" embody or contain. Such an extension would not only stretch the text, but it would be out of accord with the history and purpose of the Lanham Act and inconsistent with precedent.

539 U.S. at 31-32.

---

claim would fail. ZL waived its trade secrets protection by licensing its technology to KLD in perpetuity without adequate protective measures. *See* KLD-ZL Private Label License Agreement (FAC, Ex. 2).

Arguably, ZL is trying to protect its "ideas and concepts" – *viz*, a supposed way to solve the problem of "[s]calability [which] is an endemic problem in big data." FAC ¶ 58. If so, *Dastar* unquestionably applies. *See* ZL Opp. at 2-4. But even accepting ZL's conceit that reducing ideas and concepts into "architecture" and "software code" is somehow transformative and creates a different animal, *Dastar* still compels dismissal of ZL's Lanham Act claim.

The *Dastar* court discussed copyright law because the dispute there involved alleged copyright infringement. *See Dastar*, 539 U.S. 25-27 (dispute background). The Supreme Court's holding, however, was not concerned with copyright, but "what § 43(a)(1)(A) means by the 'origin' of 'goods.'" *Dastar*, 539 U.S. at 31. Thus, federal courts readily apply *Dastar* "beyond ideas or concepts" (ZL Opp. at 3) to physical embodiments, components, and software like the software "code" and "architecture" purportedly at issue here. The statutory phrase "origin of goods" simply does not include any component or function incorporated into the larger tangible product sold in the marketplace. *See, e.g., Enzo Biochem, Inc. v. Molecular Probes, Inc.*, 2013 U.S. Dist. LEXIS 183608, \*23-25 (S.D.N.Y. Dec. 6, 2013) (no 43(a)(1)(A) claim where defendant's Nucleic Acid Labeling Kits contained plaintiff's labeled nucleotide technology); *Kt Grp. v. Ncr Corp.*, 2018 U.S. Dist. LEXIS 240923, at \*57-59 (S.D.N.Y. Sept. 29, 2018) (no 43(a)(1)(A) claim where defendant's self-service grocery kiosk was manufactured using plaintiff's proprietary information); *Baden Sports, Inc. v. Molten USA, Inc.*, 556 F.3d 1300, 1306 (Fed. Cir. 2009) (no 43(a)(1)(A) claim against manufacturer of basketball incorporating plaintiff's "dual-cushion technology" where "Baden has not argued that someone other than Molten produces the infringing basketballs and nothing in the record indicates that Molten is not in fact the producer of the balls"); *Gen. Universal Sys. v. Lee*, 379 F.3d 131, 148-149 (5th Cir. 2004) (no 43(a)(1)(A) claim where defendant "slightly modified" plaintiff's source code and sold it as defendant's product); *Bob Creeden & Assocs., Ltd. v. Infosoft, Inc.*, 326 F. Supp. 2d

3

876, 879 (N.D. Ill. 2004) (no 43(a)(1)(A) claim where Infosoft allegedly sold "an order, capture, reporting and/or commission system directly derived from Creeden's system" while "giving the false impression … that system was its own").

*Dastar*'s wide application makes sense. The Lanham Act does not protect the innovator because "[t]o allow Plaintiffs to protect the downstream uses of their technology merely because Plaintiffs originated them would disrupt the 'carefully crafted bargain' struck by patent and copyright law and 'misuse' the Lanham Act to 'to reward [artisans] for their innovating in creating a particular [work or] device.'" *Lehrman*, 2025 U.S. Dist. LEXIS 131464, at *37 (citing *Dastar*, 539 U.S. at 33-34). *See also Dastar* at 37 (observing that the Lanham Act's "common law foundations … were *not* designed to protect originality or creativity") (emphasis in original).

In addition to the other fatal flaws in ZL's Lanham Act claim discussed in co-defendants' papers, ZL's claim should be dismissed because ZL was not the "producer of the tangible product sold in the marketplace," and is "misusing" the Lanham Act to try to protect its purported innovation. *Dastar*, 539 U.S. at 31-32, 33-34. As a result, § 43(a)(1)(A) of the Lanham Act offers ZL no protection and no claim as a matter of law.

## II. THE COURT SHOULD DISMISS ZL'S TWO NEW YORK STATE LAW CAUSES OF ACTION BECAUSE THEY REMAIN IRREPARABLY FLAWED

### A. The Court Should Dismiss ZL's Misappropriation Claim (Count Two of the FAC) Because ZL has Not Plausibly Alleged Misappropriation or Bad Faith by Shield Delaware

Like the little man behind the curtain in *The Wizard of Oz*, ZL gaslights this Court and asks it to just ignore the two contracts it attached to the FAC. ZL Opp. at 1. Those contracts, however, establish that ZL has no valid claim for Misappropriation. Shield Del. Br. at 8-12, 19-20.

ZL complains that Shield Israel has replaced it in servicing the Client; ZL pleads no facts showing any other Shield sales or ZL damages. *See* FAC ¶¶ 1, 59-61. The contracts, however,

4

gave KLD and Client (i) perpetual, irrevocable licenses over all ZL intellectual property; (ii) the

right to continue using ZL technology following ZL's scheduled termination in 2018; and (iii) the

right to work with third parties to continue modifying and adapting ZL software as necessary for

Client to use it. *See* FAC, Ex. 1 (SDLSA); FAC, Ex. 2 (PLA); *see also* Shield Del. Br. at 8-12

(discussing SDLSA and PLA contracts). ZL even agreed to provide "transition services" upon its

termination by KLD so KLD could continue servicing its clients, and ZL neither sought nor

obtained any protection for its licensed software following its termination. *Id.* Given these facts,

ZL's conclusory allegations of misappropriation fail to state a plausible claim for relief under

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007).[4] Simply put, the technology ZL now claims – seven years after its own contract terminated

– is being improperly used at Client is not confidential and, as such, could not have been

misappropriated by Defendants. *Compare Elder Techs., Inc. v. Visone*, 2025 U.S. Dist. LEXIS

170733, *37 (S.D.N.Y. Sept. 2, 2025) (stating that a misappropriation claim "must involve

information that is *secret*") (emphasis added); *Milton Abeles, Inc. v. Farmers Pride, Inc.*, 603 F.

Supp. 2d 500, 503 (E.D.N.Y. 2009) (same).

ZL's misappropriation claim also should be dismissed because ZL does not provide the

requisite "additional evidence demonstrating [Shield Delaware's] bad faith" required under New

York law. *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678

(S.D.N.Y. 2016). ZL's few efforts to try to provide that evidence fail as to Shield Delaware.

For example, to try to prove mal-intent, ZL avers that, from 2018 through 2020, "[KLD]

---

[4] Remarkably, ZL gets it precisely backwards, contending that Shield Delaware must
"Demonstrate that Plaintiff's Misappropriation Claim is Implausible on its Face." ZL Opp. at 13.
ZL is wrong. As master of its complaint, ZL has the affirmative burden of alleging facts sufficient
to move its claims from "possible" to "plausible." *Iqbal*, 556 U.S. at 678, citing *Twombly* at 557.

arranged demonstrations as to how [ZL's] technology worked in practice for Shield's benefit." ZL Opp. at 11; FAC ¶ 45. ZL, however, fails to allege these meetings took place in New York; that Gardner participated in them; or that Shield Delaware participated in them. *See id.* Indeed, given that ZL alleges that Shield Delaware was first formed "[o]n or about December 7, 2021" (FAC ¶ 48), Shield Delaware could not have been at those meetings.

Equally unpersuasive is ZL's attempts to portray Gardner's employment at Shield Delaware as nefarious. There is a significant difference between Gardner "having worked with ZL through [KLD] for 10 years" in a sales function (ZL Opp. at 11) and Gardner possessing the skillset or expertise needed to comprehend, misappropriate, and recreate ZL's technology.

In *Data Device Corp. v. W.G. Holt, Inc.*, cited by ZL in its ZL Opp., Sean Sleicher, the employee who went from Data to Holt was a Senior Applications Engineer at Data. 2020 U.S. Dist. LEXIS 223438, *5-7 (E.D.N.Y. Nov. 30, 2020). At Data, Sleicher designed and developed Data's products and had access to its 1553 Driver Library files and "source code files" for the Data products Sleicher allegedly directly recreated at Holt. *Id.* No such facts of expertise, opportunity or implementation by Gardner are alleged by ZL here. *See, e.g.*, Divald Decl. [ECF No. 59] ¶ 12 ("Gardner is not, and was not, involved in developing any of Shield Israel's products.").[5]

ZL also cites *Data Device Corp.* for the proposition that "courts may reasonably infer" misappropriation where "defendant retains plaintiff's employees and launches a competing product shortly thereafter." 2020 U.S. Dist. LEXIS 223438, at *11. However, in *Data*, Holt went from having no product to having a brand-new competing clone of a Data product just a few months after Sleicher arrived. *Id.* By contrast, ZL is not complaining about a new Shield product, but an updated version (from version 3.1 to 3.2) of a pre-existing Shield product.

---

[5] Gadi Divald is the Chief Financial Officer of Shield Israel. Divald Decl. ¶ 1.

6

Moreover, the Shield Israel version update happened before Gardner began working for Shield Delaware in the United States. Shield Delaware hired Gardner as a Strategic Account Sales Manager in the United States in October 2022 (with work commencing November 2022). Weitzman Decl. [ECF No. 60] ¶ 8.[6] Shield Israel, in Israel, released Version 3.1 of its software on June 8, 2022[7]; "was in a position to release version 3.2 of its software" in October 2022 (FAC ¶ 55); and released version 3.2 of its software on October 4, 2022[8], all before Gardner joined Shield Delaware in the United States.[9]

### B.    The Court Should Dismiss ZL's Unfair Competition by Confusion Claim (Count Three of the FAC) Because ZL has Not Plausibly Alleged Customer Confusion or Shield Delaware's Bad Faith

ZL, not Shield Delaware, is confused about the requirements for a New York unfair competition claim. "The essence of an unfair competition claim under New York law is (1) actual confusion or a likelihood of confusion; and (2) defendant's bad faith." *LVL XIII Brands, Inc.*, 209 F. Supp. 3d 612, 671 (S.D.N.Y. 2016). ZL has failed to adequately plead facts as to either element.

ZL claims to have identified "two instances" of actual confusion (FAC ¶ 65) – *viz*, the two Client RFPs "responded to by [KLD] in conjunction with Shield." *Id.* ¶¶ 60-61. ZL provides no actual evidence, however, of Client being confused, and the facts are contrary. Client is not just a

---

[6] Shiran Weitzman is the sole Director of Shield Delaware. Weitzman Decl. ¶ 1.

[7] https://www.shieldfc.com/resources/news/shield-launches-new-version-with-robust-ediscovery-capabilities-empowering-compliance-teams-to-work-better/

[8] https://www.shieldfc.com/resources/news/version-3-2-shield-unveils-infobarriers-its-newest-ai-capability-for-data-leak-protection/

[9] Also readily distinguishable is *Macy's Inc. v. Martha Stewart Living Omnimedia, Inc.*, 127 A.D.3d 48, 53 (1st Dept. 2015), cited by ZL as an example of bad faith. ZL Opp. at 9. In *Martha Stewart*, the "retailer *induced* Martha Stewart to break exclusivity and share plaintiff's confidential information." *Id.* (emphasis added). Here, unlike Stewart, ZL had no exclusivity agreement with KLD or the Client, nor any right to confidentiality under the PLA.

Shield Israel client, it is a Shield Israel investor as well as being a large, sophisticated European financial institution. Hence, ZL has made no factual showing that Client was actually confused or likely to be confused, because the actual facts demonstrate otherwise.

Similarly missing in the FAC is any facts supporting a "likelihood of confusion." Whether a likelihood of confusion exists is shown through the eight *Polaroid* factors (*see Polaroid Corp. v. Polaroid Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961)), all of which militate against a finding of likely confusion here. *See* Shield Del. Br. at 15-17. Notably, ZL never provides its own *Polaroid* analysis, either in opposition to the motions to dismiss or in the FAC, and thus fails to show a likelihood of confusion. In a vain effort to paper over its failure to apply *Polaroid*, ZL contends those factors are only considered "when evaluating a Lanham Act trademark infringement claim." ZL Opp. at 8. ZL is wrong. *See, e.g., RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, 527 F. Supp. 3d 305, 322 (E.D.N.Y. 2021) ("To assess the likelihood of confusion, the same [*Polaroid*] factors relevant to a federal Lanham Act claim may be used ... *for the purposes of a New York unfair competition claim*.") (emphasis added).

Finally, ZL cannot show bad faith for purposes of its third claim, just as it cannot show bad faith for purposes of its second claim. *See* Point II.A, *supra*.

**CONCLUSION**

For the reasons herein and in the other dismissal papers defendants submitted, the Court should (i) dismiss ZL's FAC against Shield Delaware with prejudice, and (ii) grant Shield Delaware such other relief as the Court deems just.

Dated:    September 12, 2025
        New York, New York         Respectfully submitted,

                                */s/ Yoav M. Griver*
                                Yoav M. Griver
                                Scott B. Brenner
                                ZEICHNER ELLMAN & KRAUSE LLP

8

730 Third Avenue
New York, New York 10017
*Attorneys for Defendants Shield Financial
Compliance, Ltd. and Shield Financial Compliance,
Inc.*

## CERTIFICATE OF COMPLIANCE WITH
## TYPEFACE AND WORD COUNT LIMITATIONS

This document complies with the type-volume limit of EDNY-SDNY Joint Local

Rule 7.1 because, excluding the parts of the document exempted by that rule, it contains **2746**

words.

This document complies with the typeface requirements of EDNY-SDNY Joint

Local Rule 7.1 because it has been prepared with one-inch margins in a proportionally spaced

typeface using Microsoft Word in 12-point font in Times New Roman type style.

Dated:  September 12, 2025
        New York, NY

                                        */s/ Yoav M. Griver*
                                         Yoav M. Griver